# EXHIBIT 1

# The Law Office of Patrick A. Nielson, P.C.

Admitted in:
California
Florida
Nevada

February 12, 2016

Mr. Jacob Appelsmith
Chief Campus Counsel
University of California, Davis
One Shields Avenue
Davis, CA 95616-3400

        Re: Jacob Appelsmith Letter of January 26, 2016 to Dr. Douglas V. Shaw, Professor
        Emeritus of UC Davis

Dear Jacob,

Dr. Doug Shaw asked me to respond to your letter to him of January 26, 2016.  Please send to me and not to Dr. Shaw any future correspondence from you regarding the matters that you raise in your letter.  As you know from our previous contact, I represent Dr. Shaw in these matters.

Before addressing your letter, first let me inform you that Dr. Shaw and Dr. Kirk Larson have made an assignment of all their rights to California Berry Cultivars, LLC ("CBC"), a California LLC of which they are members along with several California growers and businesses.  (The only exception to this assignment is the royalties that the UC pays annually to Drs. Shaw and Larson for their patents that have been commercialized by the UC.)  In regard to the assignment, I would like to ask if you can confirm that at least one complete copy of all of the germplasm that Drs. Shaw/Larson left in the custody and control of UC Davis is still being maintained in accordance with the December 12, 2013 letter jointly signed by the Chair of the Department of Plant Sciences, Chris Van Kessel, and Dr. Shaw?  I also represent CBC and I act as its general counsel.

Secondly, I want to make clear that Drs. Shaw and Larson remain prepared and willing to complete their work on the 'transition cultivars'.  They have a right to complete that work under past UC Davis policy and practice.  Under federal patent law, Drs. Shaw and Larson had nearly completed the necessary tasks to reduce to practice their conception and discovery of the 'transition cultivars' and they should be allowed to complete this important work.  Dr. Shaw has previously estimated that there are at least two and maybe as many as eight (and probably four) cultivars in this material that are eligible for patent.

==We are again fast approaching the April deadline for putting plants in the ground.  Losing yet another year means additional loss of royalties for both the UC and Drs. Shaw/Larson.  It also means that California's growers, in very challenging times of both agronomic and climate change, will be deprived==

of the benefit of access to these transition cultivars.  There is no justifiable reason for denying Drs. Shaw/Larson access to the material they created and now need to continue their work.

Jacob, we have a simple way forward that can achieve both party's objectives and resolve this dispute over use and ownership rights:  license the material that Drs. Shaw/Larson need to complete their transition cultivars use that material for breeding.  We have been and are open to sitting down and negotiating a fair license agreement in time to meet the April planting deadline.  Perhaps a mediator or facilitator could help us get to a fair result.  Everyone would significantly benefit—the UC, Dr. Knapp's program, Drs. Shaw/Larson/CBC, California's growers, and the public.

Such a license would enable the cooperation and communication that Dr. Stephen Knapp sought in his original email and letter to Dr. Shaw of November 17, 2015 and Dr. Shaw's email response to Dr. Knapp of November 25, 2015 (not 17 as you state in your letter).  Until Dr. Shaw's rights are acknowledged—at least through this simple license of this limited set of material—and not denied, as you do in your letter and have consistently done previously, what reason does Dr. Shaw have to cooperate and disclose his research and inventions to Dr. Knapp?

Regarding your letter, first let me address your comments about the UC Davis's handling of Drs. Shaw/Larson's *invention* of the "core strawberry germplasm for breeding".  In their presentation to the UC Davis Department of Plant Sciences Committee on Cultivar Release ("Committee"), Drs. Shaw/Larson requested the Committee to approve and recommend either that the *invention* be approved for a utility patent or licensed as a tangible research product under UCOP Guideline #10.  The Committee recommended a license as the best way for the UC to protect its and the inventors rights and interests in the *invention*.  Such a license would have yielded immediate, significant royalty benefits for the UC and for Drs. Shaw/Larson.

The UC Davis's newly arrived Dean Dillard's March 24, 2014 letter to Department Chair, Chris Van Kessel, however, rejected both the Committee's recommendation to license the *invention* and applying for a patent.  Dean Dillard's letter took an extraordinary and unprecedented third course of action for which neither she nor the UC have the right nor the authority to take under law or UC policy.  Dean Dillard's letter purports to generate new patents on a tenured faculty's research for which the research is neither eligible for plant patent nor which was disclosed by the faculty member for plant patent or license.  The UC Davis's subsequent filing for a provisional plant patent on 169 genotypes was made without a standard UC disclosure and record of invention form and is, as one of the Committee members later stated, 'logistically absurd'.  There is no good faith effort to obtain a plant patent for these 169 genotypes because these genotypes are not eligible for plant patent and the faculty inventors never disclosed nor sought a patent nor have they ever generated the detailed information and data that is required to secure a valid plant patent.  Dean Dillard's authority surely cannot extend so far as to 'invent' on her own out of a faculty member's research.  Furthermore, having rejected both a patent and a license for Drs. Shaw/Larson's *invention*, you and UC Davis have denied that Drs. Shaw/Larson have any rights in this *invention* and have denied them access and use of it.

At the same time, however, Dr. Knapp is using this *invention* in his program without authority and without any compensation or benefit for the inventors, Drs. Shaw/Larson.

Jacob Appelsmith                                                                                                February 12, 2016

The balance of your letter attempts to cast fault on Dr. Shaw for not reaching an agreement or cooperating with Dr. Stephen Knapp. Dean Delaney's March 23, 2015 email to A.G. Kawamura, however, speaks for itself in abruptly cutting off AG Kawamura's efforts to help the parties reach agreement on a license in time for April 2015 planting. Your subsequent emails were also clear in denying Drs. Shaw/Larson access to their material, both for completing their work on the transition cultivars and use of their invention for breeding.

Finally, separate from our urging resolution of this rights dispute through a license agreement to complete the transition cultivars, we urge the UC to license Drs. Shaw/Larson's *invention* of the 'core strawberry germplasm for breeding' for a reasonable, market rate royalty and on a non-discriminatory basis to any qualified person or entity in California. The licensing of this *invention* will best serve the public interest and ensure its preservation and utility for California's strawberry industry and consuming public while generating significant royalties for both Drs. Shaw/Larson and the UC.

Sincerely,

*Patrick A. Nielson*

Patrick A. Nielson