UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA BERRY CULTIVARS, LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>             Defendant. | Case No. 16-cv-02477-VC<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 19 |

The plaintiff's application for a temporary restraining order is denied.  First, the fact that CBC delayed in seeking the TRO weighs against issuing it.  *See Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1097 (N.D. Cal. 2012).  CBC has known since at least June 2014 that the University was taking the position that it owned the Core Strawberry Germplasm and was seeking patent protection on it, and that the University has been refusing to transfer any of the strawberry cultivars (including the CSG cultivars) to Dr. Shaw or CBC since at least March 2015.  That CBC waited until May 2, 2016 to bring this suit, and then to seek relief by way of a TRO in this rather complicated matter, severely undermines its argument that it is entitled to the kind of extraordinary emergency relief it seeks.

Additionally, CBC has not shown a likelihood of success on the merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008))).  It appears the University has ownership rights in the CSG and that Dr. Shaw and Dr. Larsen violated their obligations under the patent agreements to assign their intellectual property interests in the CSG to the University.  And assuming for the sake of argument that the University has any obligation

under the patent agreements to attempt to generate revenue from patented inventions, it does not follow that the University must attempt to generate revenue at this time – particularly given that patents have not even issued on the 168 cultivars yet.  Nor does there appear to be any basis for the assertion in the complaint that the University has an obligation to generate revenue through licensing the cultivars specifically to CBC.

CBC also hasn't shown a likelihood of irreparable harm.  At most it has shown that it might miss out on the 2016 growing and breeding season, but any resultant monetary harm to CBC will be measurable and compensable in damages.  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  And CBC's case for future irreparable harm based on the assertion that CSG cultivars could be unavailable unless the University is required to turn them over to an "escrow grower" is far too speculative.

Finally, the balance of equities does not tip in CBC's favor.  The University has shown that it would be quite burdensome for it to unfreeze five copies each of the cultivars at issue, when it already has a very small number of these back-up copies in cold storage, which the University retains for safekeeping.  *See Winter*, 555 U.S. at 26.  While there could theoretically be harm to CBC if the TRO does not issue, assuming CBC has any success on the merits, which appears doubtful, the harm to the University from issuance of the requested TRO at this time is concrete, such that the balance of equities tilts in the University's favor.

Given the above analysis, it is unnecessary to consider whether issuing a TRO would be in the public interest.  *See, e.g.*, *Garcia*, 786 F.3d at 746.

**IT IS SO ORDERED.**

Dated: May 13, 2016

_____
VINCE CHHABRIA
United States District Judge