UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>            Plaintiff,<br><br>    v.<br><br>CALIFORNIA BERRY CULTIVARS, LLC, DOUGLAS SHAW, AND KIRK LARSON,<br><br>           Defendants. | Case No.  16-cv-02477-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 145, 162 |
| CALIFORNIA BERRY CULTIVARS, LLC,<br><br>           Cross-Complainant,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>           Cross-Defendant. | |

For over twenty years, Douglas Shaw led the University of California's strawberry breeding program.  The goal of the program is to develop new strawberry varieties.  In collaboration with Kirk Larson, a fellow UC professor, Shaw developed many new and distinctive strawberry varieties over the years.  Some of these varieties have been patented, others are subject to a currently-pending patent application, and the remaining varieties are unpatented.

In 2014, Shaw and Larson retired from UC and joined a private venture – California Berry Cultivars, LLC ("CBC") – where they have continued developing new strawberry varieties.  In 2016, they assigned to CBC any rights they possessed in the varieties they developed at UC, causes of action arising from those rights, and royalties flowing from licenses of the patented varieties.  This case is mostly about CBC's right to use the patented and unpatented strawberry varieties Shaw and Larson developed during their time at UC.

For the reasons discussed below, the cross-motions for summary judgment are decided as follows:

As to UC's declaratory judgment claim, summary judgment is granted to UC and denied to CBC insofar as UC is the present owner of tangible property rights in the Core Strawberry Germplasm and Transition Cultivars currently in its possession.  It is granted to CBC and denied to UC insofar as UC does not presently own any intellectual property rights that may exist in the Core Strawberry Germplasm, and presently lacks any patent-law right to exclude.  Summary judgment is granted to UC on its claim for a declaratory judgment that CBC is not a bona fide purchaser.

Summary judgment is granted to UC on its claim for breach of contract arising from Shaw and Larson's failure to assign their rights to the Core Strawberry Germplasm and Shaw's failure to furnish complete information regarding the same.

With respect to UC's infringement claims, summary judgment is granted to UC and denied to CBC to the extent CBC is using UC's patented plants for "benchmarking."  Summary judgment on non-infringement is granted to CBC with respect to breeding activities in Spain.  It is denied to CBC with respect to CBC's importation of seeds.

Summary judgment is granted to UC on CBC's claims for breach of contract, conversion,

and breach of fiduciary duty.

UC's motion for summary judgment is denied with respect to CBC's claim that UC breached the implied covenant of good faith and fair dealing by filing a patent application on the Core Strawberry Germplasm to prompt assignments from Shaw and Larson.  Summary judgment on the breach of implied covenant claim is granted to UC in all other respects.

Summary judgment is denied to UC on CBC's unfair competition claim.

## I.

CBC and UC dispute who owns the rights in two sets of unpatented strawberry varieties that Shaw and Larson developed while they worked at UC.  The first set, called the "Core Strawberry Germplasm," consists of 168 strawberry varieties that Shaw identified in 2013 as having "considerable commercial potential."  UC filed a provisional patent application on all 168 varieties in 2014, and a non-provisional application in 2015 that is still pending.  The second set is called the "Transition Cultivars."  The Transition Cultivars are a set of strawberry varieties that Shaw identified as "important" for breeding.  Patent protection has not been sought for the Transition Cultivars.  As part of their agreement with CBC, Shaw and Larson assigned CBC any rights they held in the Core Strawberry Germplasm and Transition Cultivars.

The parties cross-move for summary judgment on UC's claim for a declaratory judgment that UC is currently "the sole assignee and rightful owner of the intellectual and tangible property rights to the Core Strawberry Germplasm and Transition Cultivars with the right to exclude others."  Relatedly, UC moves for summary judgment on its claim that Shaw and Larson breached their agreement with UC when they refused to assign UC any rights they held in the Core Strawberry Germplasm, and on its claim for a declaratory judgment that "CBC is not a bona fide purchaser for value of any rights in the Core Strawberry Germplasm or Transition

Cultivars."

A.     Present Ownership Rights

    1.     Tangible Property Rights in the Core Strawberry Germplasm and Transition Cultivars

Summary judgment is granted to UC on its claim for a declaratory judgment that it owns the tangible property rights in the Core Strawberry Germplasm and Transition Cultivars in its possession. The plants comprising the Core Strawberry Germplasm and Transition Cultivars were bred using existing plants in UC's Strawberry Breeding Program or acquired for the Program. CBC's argument that Shaw and Larson obtained tangible property rights in these plants by virtue of having "created" them conflates an inventor's natural or common-law right to use his invention – as in, the inventive concept or idea – with the tangible medium in which the invention is embodied. *See Banner Metals, Inc. v. Lockwood*, 178 Cal. App. 2d 643, 658 (1960) ("[E]mbodiment is not the invention and is not the subject of the patent."). It is perhaps true that, because the Plant Patent Act affords narrow protection over "a single plant and its asexually reproduced progeny," a plant patent holder cannot make practical use of the exclusive rights his patent gives him unless he also has possession and use of the tangible plant itself. *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1567 (Fed. Cir. 1995). However, adopting CBC's position would require the Court to conclude that UC's employees may convert to themselves the tangible property ownership of any plant in which they have identified and reproduced protectable, patentable characteristics. This conclusion would find no support in the case law, statutory text, or legislative history. *See Mix. v. Newland*, 273 Or. 362, 365 (1975) ("We cannot conceive of any rational system of law which would condone the conversion of an owner's goods to advance the interests of those claiming a monopoly through first discovery."); *cf.* S. Comm. on Patents, Plant Patent Act of 1930, S. Rep. No. 71-315, at 6 (1930) ("[A] plant

discovery resulting from cultivation . . . can only be made available to the public by encouraging those who *own* the single specimen to reproduce it asexually and thus create an adequate supply." (emphasis added)).[1]

Therefore, the Court grants UC's motion to the extent UC seeks a declaration of tangible property ownership in the Core Strawberry Germplasm and Transition Cultivars in its possession.  The Court also grants UC's motion for summary judgment on CBC's conversion claim, which is predicated on its assertion of ownership over the same plants, and its breach of contract claim, to the extent it is premised on UC's "refus[al] to return the Breeder's Plant Material."  This Order does not address UC's ownership of any Core Strawberry Germplasm or Transition Cultivars outside its possession, such as any it suspects to have been sent abroad, because the Court lacks sufficient information concerning these plants to determine the property rights in them.

2.     Intellectual Property Rights in the Core Strawberry Germplasm[2]

With respect to UC's request for a judgment that it presently owns the intellectual

---

[1] In its case management statement regarding trial scheduling, CBC cited for the first time *Six Wheel Corp. v. Sterling Motor Truck Co. of California*, a case involving whether a plaintiff was an assignee or mere licensee of the inventor's patent rights with the ability to sue for patent infringement.  50 F.2d 568 (9th Cir. 1931).  In describing the rights an inventor possesses, the Ninth Circuit stated: "[T]he irreducible quantum of the inventor's right in the res, even under the common law, is that of making, using, and vending."  *Id.* at 571.  CBC emphasizes the Ninth Circuit's use of the term "res," asserting it shows that inventors possess rights in the tangible property.  This reads too much into the term.  Black's Law Dictionary defines "res" as "[a]n object, interest, or status, as opposed to a person."  *Res*, Black's Law Dictionary (10th ed. 2014).  It seems equally likely that the Ninth Circuit used "res" to refer to an inventor's "interests," and not to the physical material embodying the invention; in any event, this language is dicta.

[2] Because neither the Core Strawberry Germplasm nor the Transition Cultivars have been patented, no one presently holds a patent-law right to exclude others from making, using, or selling these plants.  *See Gayler v. Wilder*, 51 U.S. 477, 493 (1850).  Nevertheless, the law recognizes that prior to the issuance of a patent, there is an expectancy interest or "inchoate right" to exclusivity that is valuable and assignable.  *Id.*  It is unclear whether legal title to a patent on the Core Strawberry Germplasm presently exists.  In any event, it is unnecessary to resolve this question at this stage.  The Court's discussion of "intellectual property rights" below applies equally whether those rights are still inchoate or currently in existence.

property rights in the Core Strawberry Germplasm, CBC's motion for summary judgment is granted and UC's motion is denied. UC argues that it presently owns intellectual property rights in the Core Strawberry Germplasm by virtue of California Labor Code § 2860, which provides: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer . . . ." The language of section 2860 does not upend "the general rule that rights in an invention belong to the inventor." *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 785-86 (2011); *see id.* at 786-87, 792. It does not even refer to intellectual property rights or inventions. *See Gen. Elec. Co. v. Wilkins*, No. 10-cv-0674, 2012 WL 3778865, at *12-13 (E.D. Cal. Aug. 31, 2012). It "speaks of things which the employee 'acquires,' not matters which he creates." *Williams v. Weisser*, 273 Cal. App. 2d 726, 733 (1969). As the California Court of Appeal explained in rejecting the application of section 2860 to a divest a professor of the copyright to his lecture notes, "the section has been applied principally, though not exclusively, to unfair competition carried on by former employees with the use of trade secrets and the like[,]" and "[e]ven so it has been narrowly employed." *Id.* at 734.

To the extent that section 2860 is applied in intellectual property cases, it is only for the limited proposition that employees who are "hired to invent" have a duty to assign their rights to employers. *See Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 826 (1979) (Mosk, J. concurring); *Zahler v. Columbia Pictures Corp.*, 180 Cal. App. 2d 582, 589 (1960). The "hired to invent" doctrine is a "narrow[] principle that an employee who was *hired to invent* a specific technology has a duty to assign his or her rights to his employer." *Gen. Elec. Co.*, 2012 WL 3778865, at *12-13; *see also Daniel Orifice Fitting Co. v. Whalen*, 198 Cal. App. 2d 791, 797 (1962). In its opening brief, UC disclaimed any argument that Shaw and Larson were "hired to invent."

Accordingly, UC can't rely on *Lugosi* and *Zahler* – Shaw and Larson had no statutory or common law duty to assign inventions to UC.

Nor does UC currently own any intellectual property rights in the Core Strawberry Germplasm, by operation of law or otherwise, based on its Patent Agreement with Shaw and Larson or its policies.  The California Court of Appeal has already interpreted this very agreement not to effectuate a present assignment of expectant interests.  *See Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 49 (1997) ("The clear language of the patent agreement does not, as the University argues, effect a contemporaneous and 'complete transfer of plaintiff's rights to the University.'").[3]  At oral argument, UC conceded that the Patent Agreement was an agreement to assign in the future, and not a present assignment.  UC's policies do not compel a contrary conclusion either, because the policies that UC cited all concern *tangible* property. These policies do not govern the disposition of intellectual property rights in employee inventions.

B.    Breach of Contract

1.    Breach of Contract For Failure to Assign

Even though the Patent Agreement did not automatically cause an assignment of rights in the Core Strawberry Germplasm to UC, it did require Shaw and Larson to make such an assignment if UC determined that the Core Strawberry Germplasm was patentable.  It is undisputed that the Patent Agreement is valid and enforceable, and that when UC requested an assignment of rights in June 2014, Shaw and Larson refused to make the assignment.  *See Shaw*,

---

[3] While the parties did not brief the question, the Court concludes that state law – not federal law – governs the question whether the Patent Agreement constitutes a present assignment of future interests or an agreement to assign in the future.  There is no dispute about standing to pursue patent infringement claims in this case.  *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1320 & n.1 (Fed. Cir. 2017); *see also Grail Semiconductor v. Renesas Elecs. Am. Inc.*, No. 11-cv-03847, 2012 WL 12920690, at *9 & n.5 (N.D. Cal. Sept. 18, 2012).

58 Cal. App. 4th at 52-53.  The Court grants summary judgment to UC on its claim that Shaw and Larson breached their agreements with UC by failing to assign rights in the Core Strawberry Germplasm.

CBC contends that the proposed assignment agreement UC sent to Shaw and Larson for their signature required them to falsely attest to the PTO that they believed the Core Strawberry Germplasm was patentable, and that this justified their refusal to assign the rights.  It is debatable whether the requested assignment actually required Shaw and Larson to make the objectionable attestation.  The assignment document sent to Shaw and Larson described the "Strawberry Cultivars" invention for which UC had filed an application for a "Plant Letters Patent," and required Shaw and Larson to "request[] the Commissioner of Patents and Trademarks to issue said Plant Letters Patent ... to the ASSIGNEE, The Regents of the University of California."  But even if the document demanded that Shaw and Larson make a representation to the PTO that they could not make in good faith, Shaw and Larson's concern about that issue did not excuse them from their contractual duty to assign their rights in the Core Strawberry Germplasm to UC; it would merely have excused them from making the objectionable attestation.  CBC does not argue that Shaw and Larson's concerns amounted to impracticability, frustration of purpose, illegality, or some other defense to breach.  To the extent CBC's arguments may be construed as an illegality defense, the offending provision is severable.  The attestation provision is ancillary to the central purpose of the document to procure an assignment of rights from Shaw and Larson. *Marathon Entm't, Inc. v. Blasi*, 42 Cal. 4th 974, 996-97 (2008).

CBC also argues that UC has not offered any evidence to show that the Core Strawberry Germplasm is "possibly patentable."  But the Patent Agreement grants UC sole authority to determine whether to pursue a patent on an invention.  It specifies that "possibly patentable"

inventions "shall be examined by [UC] to determine rights and equities therein . . . ," and, "[i]n the event any such invention shall be deemed by [UC] to be patentable," the employee is required to effect the assignment.  If an employee disputes UC's determination regarding "any rights or interest in an invention," then the employee must give notice of protest and "proceed with any University requested assignment . . . ."  The evidence shows that UC made a determination that the Core Strawberry Germplasm is patentable and that it desired to seek patent protection on the Germplasm.  Shaw and Larson were therefore obligated to make an assignment (which could have been an assignment under protest).

Relatedly, Shaw and Larson claim that UC made its patentability determination in bad faith, in an effort to force Shaw and Larson to assign their rights in the Core Strawberry Germplasm when the Patent Agreement wouldn't otherwise have called for it.  That may be true. As discussed later in this ruling, there is evidence to support the contention that the University acted in bad faith.  But given the language of this agreement, if Shaw and Larson believed the University was acting in bad faith, the solution was to assign the rights under protest and then seek to undo the assignment, not to refuse to assign the rights in the first place.  Therefore, Shaw and Larson are liable for breach of contract, even if the University also acted in bad faith.  *Cf. Brawley v. J.C. Interiors, Inc.*, 161 Cal. App. 4th 1126, 1134 (2008) (one side's breach of contract did not shield the other side from liability for a subsequent breach of the same contract).[4]

    2.    Breach of Contract For Failure to Furnish Complete Information

---

[4] In a case management conference with the Court, CBC suggested that it had other defenses to the breach of contract claim, such as UC's failure to license or failure to collect royalties.  These defenses were not included in CBC's brief in opposition to the motion for summary judgment, and are therefore forfeited.  *See Janis v. Comm'r of Internal Revenue*, 461 F.3d 1080, 1085 n.3 (9th Cir. 2006).

Relatedly, UC is entitled to summary judgment on its breach of contract claim arising from Shaw's failure to provide data from the strawberry program.  The Patent Agreement required inventors to "promptly furnish [UC] with complete information" with respect to their disclosed inventions.  There is no genuine dispute of material fact that Shaw has withheld information regarding the pedigrees and performance data for the Core Strawberry Germplasm.  Shaw admitted during his deposition in December 2016 that he has not provided UC the "complete pedigrees" and "evaluation data for each of those [Core Strawberry Germplasm] genotypes" in his possession, notwithstanding UC's request for the information.  CBC offered no evidence to rebut these statements – it pointed only to Shaw's original 2013 email disclosing to UC certain pedigree information and a description of genetic and commercial potential for the Core Strawberry Germplasm.  But this email cannot have disclosed complete information regarding the Core Strawberry Germplasm pedigrees and performance, because if it had, Shaw would not have subsequently admitted that there remained information in his possession that he had not disclosed.  The failure to disclose this information violates Shaw's duty to provide "complete information" regarding the invention.

C.      Bona Fide Purchaser

UC's motion for summary judgment on its claim for a declaratory judgment that CBC is not a bona fide purchaser for value of intellectual and tangible property rights in the Core Strawberry Germplasm and the Transition Cultivars is granted.  35 U.S.C. § 261.  "The bona fide purchaser rule exists to protect innocent purchasers of property from competing equitable interests in the property . . . ."  *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1329 (Fed. Cir. 2002).  To satisfy the requirements of section 261, a bona fide purchaser must show that he lacked notice of a prior claim of interest in the property.  *Id.*  Although UC's

Patent Agreement with Shaw and Larson does not contemplate an immediate transfer of title, it gave UC an equitable interest in the title to patents on Shaw and Larson's inventions. *See Phoenix Mut. Life Ins. Co. v. Birkelund*, 29 Cal. 2d 352, 362 (1946); *see also Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580-81 (Fed. Cir. 1991).[5] There is no dispute that CBC, when it entered into the assignment agreement with Shaw and Larson, had actual notice that UC had asserted, and was continuing to assert, its equitable claim to the rights to the Core Strawberry Germplasm. In addition to the fact that the assignment agreement itself acknowledges in Schedule 4 that UC asserts a claim of ownership over all "transition cultivars" and "Core Strawberry Germplasm," UC also sent Shaw, Larson, and CBC's attorney a letter in June 2014 containing the language of the Patent Agreement and asserting UC's rights to the germplasm under the Agreement.

## II.

CBC is currently engaged in a number of activities that UC claims infringes its patents. CBC agrees to assume for the purposes of this motion that its member entity in Spain, International Semillas, has used UC-patented plants to breed new strawberry varieties. CBC imports into the United States the seeds developed from the breeding activities in Spain. CBC germinates and grows these seeds alongside UC-patented plants acquired from Lassen Canyon Nursery, a California nursery licensed to sell UC-patented plants. CBC uses the UC-patented plants "as a point of comparison," to evaluate the performance of the seedlings it is developing. CBC and UC cross-move for summary judgment on whether these activities infringe UC's

---

[5] The Court cites *Arachnid* as persuasive authority only. Although federal law governs the requirements of the bona fide purchaser defense in patent cases, the question whether UC possessed an equitable interest is governed by state law. *See Banner Metals, Inc. v. Lockwood*, 178 Cal. App. 2d 643, 659 (1960) ("[F]ederal cases are of course persuasive authority because of the experience of the federal courts in the area of patents and patent licenses." (quoting *Farmland Irrigation Co. v. Dopplmaier*, 48 Cal. 2d 208, 221 (1957))); *cf. Rhone-Poulenc Agro, S.A.*, 284 F.3d at 1328-29.

patents.

A.      Asexual Reproduction

CBC moves for summary judgment on all of UC's infringement claims on the basis that asexual reproduction is a prerequisite to infringement and UC lacks evidence that CBC asexually reproduced any of its patented plants.  But unauthorized "use" constitutes a discrete act of infringement.  Like the utility patent statute, the Plant Patent Act describes the list of infringing acts in the disjunctive:  "using, offering for sale, *or* selling."  35 U.S.C. § 163 (emphasis added).  CBC emphasizes that the Plant Patent Act excludes others from "asexually reproducing the plant, and from using, offering for sale, or selling the plant *so reproduced.*"  *Id.* (emphasis added).  But it's clear that this language merely requires UC to prove that the plants CBC was "using" in its breeding activities were asexually reproduced – not that CBC itself both reproduced and used the plants.  CBC's motion for summary judgment on this ground is therefore denied.

B.      Extraterritoriality

CBC next moves for summary judgment on UC's infringement claims arising from CBC's breeding activities in Spain, noting correctly that a patent holder's exclusive right to his patent does not apply abroad.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).  UC argues that the "situs of infringement" is actually domestic because control over the breeding activities was exercised in the United States and CBC receives the benefit of its infringing use here.  But the control-and-benefit test on which UC relies applies to system patents.  *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316-17 (Fed. Cir. 2005).  The Federal Circuit has explained that, when it comes to a system, the location of "use" is "the place at which the system as a whole is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained."  *Id.* at 1317.  UC has provided

no justification or case law to support the application of *NTP* to the plant patents at issue in this case.  The more logical "situs of infringement" is Spain, the location "where the offending act is committed."  *See id.* at 1316.

UC also argues that CBC is liable for infringement under section 271(f)(1) of the Patent Act, which imposes liability for infringement on anyone who, without authority, supplies "all or a substantial portion of the components of a patented invention" abroad to "actively induce" combining the components abroad.  35 U.S.C. § 271(f)(1).  Strawberry plants do not have "components" that can be combined.  *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 742 (2017); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1364 (Fed. Cir. 2009). Therefore, the Court grants CBC's motion for summary judgment of non-infringement with respect to CBC's breeding activities in Spain.

C.      Importation of Seeds

CBC's motion for summary judgment of non-infringement with respect to its importation of seeds grown from UC-patented plants is denied.  The Plant Patent Act grants patent-holders the right to exclude others from "asexually reproducing the plant, . . . or from importing the plant so reproduced, or any parts thereof, into the United States."  35 U.S.C. § 163.  The Act does not define the term "parts."  However, both parties agree that fruit is considered a "part" of the plant within the meaning of this statute.  They agree that the 1998 Plant Patent Act Amendments, which added the statutory language about plant "parts," were intended to protect domestic patent-holders from the importation of flowers and fruits taken from asexually reproduced plants cultivated abroad.  CBC contends that seeds are not plant "parts" because seeds necessarily result from "sexual reproduction" and primarily comprise genetic material that is unique from either of their parent plants.  By "sexual reproduction," CBC really means pollination; until a new plant

grows from the seed, nothing has been reproduced.  Fruits, like seeds, are necessarily the result

of pollination.  And seeds do not cease being "parts" of a plant simply because they possess

unique genetic material.  Fruit is part of the plant, and seeds are part of the fruit, so seeds are part

of the plant.

D.     Benchmarking

CBC and UC cross-move for summary judgment on UC's infringement claims arising

from CBC's use of UC-patented plants purchased from Lassen Canyon Nursery.  Lassen's license

authorizes it to asexually reproduce UC's patented plants and sell these plants "to growers for

fruit production only."  CBC acknowledges that it purchases UC's patented varieties from

Lassen, plants them alongside the seedlings it grows from the seeds imported from Spain, and

measures and observes the characteristics of both plants to "benchmark" the progress of its new

breeds.  Once the fruit has matured, CBC sells the fruit to juice makers and destroys the plants.

UC argues that CBC's activities exceed the scope of Lassen's license and therefore

infringe its patents.  As an initial matter, the exhaustion doctrine does not bar UC's infringement

claim because the sale of a patented item subject to a valid license does not exhaust the patent-

holder's right to assert infringement based on a buyer's unlicensed use of that item.  *See Lexmark*

*Int'l, Inc. v. Impression Prod., Inc.*, 816 F.3d 721, 735 (Fed. Cir.) ("A sale made under a clearly

communicated, otherwise-lawful restriction as to post-sale use or resale does not confer on the

buyer and subsequent purchaser the 'authority' to engage in the use or resale that the restriction

precludes."), *cert. granted*, 137 S. Ct. 546 (2016).

With respect to the scope of the license, UC has the better of the arguments.  The

restriction of sales to "growers for fruit production" suggests that a purchaser's use of the

patented plants is limited to growing fruit.  The license agreement authorizes only those uses of

its plants which are expressly permitted, and prohibits all other uses.  It provides that "[t]he rights and licenses granted to Licensee . . . are limited to those rights and licenses expressly stated in this Agreement.  No other rights are granted, and any Sale of Licensed Products not expressly authorized under this Agreement is prohibited."

CBC's use of the patented plants indisputably exceeds the scope of the license restriction. CBC admits it uses these plants at least in part to compare their progress against the new varietals it is developing – it acknowledged using these patented plants "as a point of comparison" to the plants grown from the seeds it developed in Spain.  This is a use of the plants for something other than fruit production.

CBC argues that its "mere observation" of the plants is *de minimis*.  However, the courts have construed the *de minimis* exception narrowly, suggesting it applies only to fleeting, "unofficial" observation or scientific inquiry.  *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000); *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1298 (C.D. Cal. 1994).  The exception does not apply to CBC's systematic, commercially-motivated conduct relating to the plants.

The Court therefore grants UC's motion for summary judgment on its claims that CBC infringes its patents when it uses patented plants for benchmarking purposes, and denies CBC's motion for summary judgment of noninfringement based on benchmarking.

III.

UC seeks summary judgment on each of the other claims asserted in CBC's complaint.

A.      Breach of Fiduciary Duty

UC's motion for summary judgment on CBC's breach of fiduciary duty claim is granted. It is unclear whether the licensing program described in the MOU can be described as an

"enterprise" or "common business undertaking," as it consisted of a funding arrangement between UC, Shaw, and Larson. *See Conner v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 863 (1968). To the extent the program did give rise to a business undertaking, no joint venture existed because UC, Shaw, and Larson had an employer-employee relationship. *See Wiltsee v. Cal. Emp't Comm'n*, 69 Cal. App. 2d 120, 127-28 (1945). Accordingly, no joint venture existed giving rise to a fiduciary duty on the part of UC.

B.      Breach of Contract and Implied Covenant

      1.      Breach of Contract

UC's motion for summary judgment on CBC's claim that UC breached the Patent Agreement is granted. The Patent Agreement's terms do not impose any requirements on UC to license inventions to the inventors, generate a royalty stream for inventions, "discuss" releasing inventions to the public, or "recognize" the rights of inventors. *See Kucharczyk v. Regents of the Univ. of Cal.*, 946 F. Supp. 1419, 1431 (N.D. Cal. 1996).[6] Therefore, the motion for summary judgment is granted as to the breach of contract claim.

      2.      Breach of Implied Covenant

UC's motion for summary judgment on CBC's claim for breach of the implied covenant of good faith and fair dealing is granted in part and denied in part.

It is granted with respect to CBC's claim for breach of the implied covenant based on UC's failure to license, collect interest or fees for late royalty payments, charge reasonable royalty rates, and delay in releasing patented cultivars. There is no basis, in this context, for

---

[6] It is unclear whether CBC points to Guideline 10 of UC's "Guidelines on University-Industry Relations" because it believes these Guidelines are part of the Patent Agreement, or because it believes the Guidelines constitute extrinsic evidence regarding the Patent Agreement's meaning. In either event, the guideline describes licensing as "permissible," subject to various limitations – it does not give rise to a duty to license.

deviating from *Kucharczyk*. *Id.* (concluding that imposing a duty on UC to seek royalties for its employee-inventors would be "inconsistent" with the language and purpose of the agreement). Like the Patent Agreements in *Kucharczyk*, the Patent Agreements that Shaw and Larson signed contemplate that UC will equitably distribute "royalties, *if any*," and "expressly acknowledges UC's obligation to manage patents 'for the broad public benefit.'" *Id.* at 1432. The cases CBC cited in support of its argument that such a duty should be implied in the Patent Agreement are distinguishable. *Cf. Brawley v. Crosby Research Found.*, 73 Cal. App. 2d 103, 110-11 (1946) (contract providing for minimum royalty payments regardless of the amount of sales made); *Ladd v. Warner Bros. Entm't, Inc.*, 184 Cal. App. 4th 1298, 1306-07 (2010) (defendant conceded that company had an obligation to act in good faith toward its profit participants, and that this duty required it to fairly and accurately allocate license fees). *Kucharczyk*'s rationale extends to all of CBC's claims that are based on the theory that Shaw and Larson have been deprived of royalties, including the failure to collect license royalties due, charge reasonable royalty rates, and delay in releasing patented cultivars. It also applies to CBC's claim for breach of the implied covenant based on UC's refusal to license. Like a requirement to generate royalties, imposing a licensing requirement on UC would be inconsistent with the express terms of the Patent Agreement.

The motion for summary judgment is denied with respect to CBC's claim that UC breached the implied covenant by filing a patent application on the Core Strawberry Germplasm to prompt assignments from Shaw and Larson. The Patent Agreement grants UC sole authority to determine whether an employee's invention is patentable. But California law implies an obligation to exercise such decision-making power in good faith. *Carma Dev., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992) ("The covenant of good faith finds particular

application in situations where one party is invested with a discretionary power affecting the rights of another.  Such power must be exercised in good faith.").  There is evidence that UC's decision to seek patent protection for all the Core Strawberry Germplasm was made in bad faith. CBC submitted evidence that when Shaw disclosed the Core Strawberry Germplasm to UC, he believed there was insufficient information to pursue plant patent protection and told UC as much.  After the UC Plant Sciences Department concluded it was not feasible to pursue a patent on the Core Strawberry Germplasm, the Dean of the College of Agricultural and Environmental Sciences took the unusual step of disagreeing with the Department's recommendation and opting instead to pursue plant patent protection.  UC then filed an omnibus application on all 168 varieties together and was later informed by the PTO that "it is improper to claim more than one plant in an application."  UC has continued to pursue its plant patent application, notwithstanding that the current head of the strawberry breeding program admits UC is continuing to evaluate varieties in the Core Strawberry Germplasm and he cannot recommend that UC seek individual patents on these varieties.

The fact that Shaw and Larson subsequently committed their own breach does not mean they are precluded from pursuing a claim for the alleged prior breach by UC.  *Brawley*, 161 Cal. App. 4th at 1134.  To be sure, this raises the possibility that both sides will see judgment entered against them for breach of contract:  judgment will definitely be entered against Shaw and Larson for breaching their obligation to assign the rights in the Core Strawberry Germplasm, and judgment may (depending on the jury's verdict) be entered against UC for breaching the implied covenant in connection with its decision to seek patent protection for the Core Strawberry Germplasm.  But on these facts, and given the language of this contract, from a legal standpoint it would be acceptable for the judgment to "sock it" to both sides, *id.* at 1130, and it may make

sense from an equitable standpoint as well.[7]

C.      Unfair Competition

UC's motion for summary judgment on CBC's unfair competition claim is denied, except

to the extent CBC seeks money damages.  Cal. Gov't Code §§ 814, 815; *Schooler v. California*,

85 Cal. App. 4th 1004, 1013-14 (2000).

        **IT IS SO ORDERED.**

Dated:  April 27, 2017

_____
VINCE CHHABRIA
United States District Judge

---

[7] The consequence of this ruling is presumably that both sides will be able to seek damages (if any) at trial – UC for the breach of contract claim on which it is entitled to summary judgment, and CBC for the implied covenant claim that it will be asserting at trial.  Furthermore, the evidence presented at trial on these questions, and the jury's verdict on the implied covenant claim, may be relevant to the Court's decision about the appropriate equitable remedy for Shaw and Larson's breach of their obligation to assign the rights in the Core Strawberry Germplasm. But to the extent this ruling generates questions or disagreement about what may be presented to the jury on these two claims, the Court will allow one additional motion in limine per side, and will consider a stipulation extending the deadline to file those extra motions.