ORIGINAL
FILED

MAY 24 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | Case No.  16-cv-02477-VC |
| Plaintiff, | **JURY INSTRUCTIONS** |
| v. | |
| CALIFORNIA BERRY CULTIVARS, LLC, et al., | |
| Defendants. | |
| CALIFORNIA BERRY CULTIVARS, LLC, | |
| Cross-Complainant, | |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Cross-Defendant. | |

Dated: 5/23/17

_____

VINCE CHHABRIA
United States District Judge

## DUTY OF THE JURY

Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Copies of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts, you will apply the law as I give it to you. You must follow the law as I give it to you, whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

The standard of proof in this case is called "a preponderance of the evidence." When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

UC has the burden of proving its claims by a preponderance of the evidence, and CBC has a burden of proving its one claim by a preponderance of the evidence. You should base your decision on all of the evidence, regardless of which party presented it.

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits that have been placed into evidence;

(3)     any facts to which the parties have agreed; and

(4)     any facts that I have instructed you to accept as proved.

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits placed into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements other than testimony are not evidence. What the lawyers or self-represented parties have said in their opening statements and at other points in the trial, and what they will say in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers or self-represented parties have stated them, your memory of them controls.

(2)     Questions and objections are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

(3)     Testimony that was excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see, hear, or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying, considering that people react differently to testifying in court;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other

6

hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw, heard, or did.  Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which you can find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## USE OF INTERROGATORIES

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

## USE OF REQUESTS FOR ADMISSION

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

## EXPERT OPINION

You heard testimony from Mr. Small and Dr. Dellaporta who testified to opinions and the reasons for their opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the claims as to each defendant separately.  Unless otherwise stated, however, the instructions apply to all parties.

## LIABILITY OF CORPORATIONS

California Berry Cultivars is a limited liability corporation, owned by its members. The University of California is a corporation established by the California Constitution. Under the law, a corporation is considered to be a person. It can act only through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

## CHARTS AND SUMMARIES

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.

Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## ISSUES TO BE DECIDED

Before you begin your deliberations, I will give you a summary of the claims you must decide.

**ISSUE 1**:  You must decide whether CBC, Shaw, and/or Larson engaged in conversion by interfering with UC's property interests in the (1) Core Strawberry Germplasm; (2) other unreleased UC varieties; and/or (3) books and records regarding the Strawberry Breeding Program.  I have already ruled that UC owns the Core Strawberry Germplasm and other unreleased UC varieties.

**ISSUE 2**:  You must decide whether Shaw and Larson breached a duty of loyalty to UC.

**ISSUE 3**:  You must decide whether Shaw and Larson breached a fiduciary duty to UC.

**ISSUE 4**:  You must decide whether CBC intentionally interfered with UC's contracts with Shaw and/or Larson.  I have already ruled that UC had a contract (the Patent Agreement at Trial Exhibits 1 and 2) with Shaw and Larson that Shaw and Larson breached that contract when they failed to assign rights in the Core Strawberry Germplasm to UC.  I have also ruled that Shaw breached the same contract by failing to provide UC with complete information about the Core Strawberry Germplasm.

**ISSUE 5**:  You must decide whether CBC, Shaw, and/or Larson intentionally interfered with UC's contracts with Lassen Canyon or Eurosemillas.

**ISSUE 6**:  You must decide whether CBC, Shaw, and/or Larson intentionally interfered with a prospective economic relationship between UC and Lassen Canyon or Eurosemillas.

**ISSUE 7**:  You must decide whether CBC, Shaw, and/or Larson infringed UC's patents by importing seeds that were harvested from UC's patented plants, or using those seeds here in the United States.  You must also decide whether this infringement was willful.  I have already ruled that UC, to prove infringement, must show that the seeds were harvested from a UC-patented mother plant, and that the importation, or use in the United States, of any such seeds constitutes infringement.  I have also ruled that any crossing activities, or "use" of UC's patented varieties in Spain, does not constitute infringement, because the "use" must occur in the United

States.

**ISSUE 8**:  You must decide whether CBC, Shaw, and/or Larson willfully infringed UC's patented plants by engaging in "benchmarking."  I have already ruled that CBC, Shaw, and Larson's use of the patented plants for benchmarking constituted infringement.  It's up to you to decide whether the infringement was "willful."

**ISSUE 9**:  CBC has one claim against UC.  For CBC's claim, you must decide whether UC breached the implied covenant of good faith and fair dealing in making its determination that the Core Strawberry Germplasm are patentable and requesting an assignment.

## DISCOVERY MISCONDUCT

The University has diligently sought, but was prevented from obtaining, evidence of CBC activities in Spain from International Semillas, Javier Cano, and David Garcia Sinova. International Semillas violated Court orders by failing to produce Javier Cano or David Garcia Sinova for deposition in the U.S. and by failing to produce documents that the University requested. While Cano was later produced for deposition by videoconference, Cano obstructed the University's ability to discover his activities by improperly refusing to answer the University's questions.

You can consider this conduct when deciding the issues in this case, to the extent you find it relevant. For example, you may infer from this conduct that it was designed to conceal the full extent of CBC's activity in Spain, although you are not required to draw that inference.

## ISSUE 1:  UC'S CLAIM AGAINST CBC, SHAW, AND/OR LARSON FOR CONVERSION

UC claims that CBC, Shaw, and/or Larson wrongfully exercised control over UC's personal property – including the Core Strawberry Germplasm, other unreleased UC varieties, and books and records regarding the Strawberry Breeding Program.  To establish this claim, UC must prove all of the following:

(1)    that UC owned, possessed, or had a right to possess the property;

(2)    that CBC, Shaw, and/or Larson intentionally and substantially interfered with UC's property by taking possession of it, transferring possession of it, preventing UC from having access to it, or refusing to return it after UC demanded its return;

(3)    that UC did not consent;

(4)    that UC was harmed; and

(5)    CBC, Shaw, and/or Larson's conduct was a substantial factor in causing UC's harm.

I have already ruled that UC owns the tangible property rights in the Core Strawberry Germplasm and other unreleased UC varieties, so the first element above – that UC owned, possessed, or had a right to possess the property – is satisfied with respect to the Core Strawberry Germplasm and other unreleased UC varieties.

## ISSUE 2:  UC'S CLAIM AGAINST SHAW AND LARSON FOR
## BREACH OF DUTY OF LOYALTY

UC claims Shaw and Larson breached their duty of loyalty to UC.  An employee owes his employer undivided loyalty.  To establish this claim, UC must prove all of the following:

(1)     that Shaw and Larson were UC's employees;

(2)     that Shaw and Larson knowingly acted against UC's interests in connection with their formation of CBC or their CBC-related activities;

(3)     that UC did not give informed consent to Shaw and Larson's conduct;

(4)     that UC was harmed; and

(5)     that Shaw and Larson's conduct was a substantial factor in causing UC's harm.

### ISSUE 3:  UC'S CLAIM AGAINST SHAW AND LARSON FOR
### BREACH OF FIDUCIARY DUTY

A fiduciary duty imposes on an agent a duty to act with the utmost good faith in the best interests of his principal.

UC claims that it was harmed by Shaw and Larson's breach of the fiduciary duty to use reasonable care.  To establish this claim, UC must prove all of the following:

    (1)     that Shaw and Larson were UC's agents;

    (2)     that Shaw and Larson acted on UC's behalf for purposes of maintaining the strawberry breeding program;

    (3)     that Shaw and Larson failed to act as reasonably careful agents would have acted under the same or similar circumstances;

    (4)     that UC was harmed; and

    (5)     that Shaw and Larson's conduct was a substantial factor in causing UC harm.

The parties agree that Shaw and Larson were UC's agents with respect to the Strawberry Breeding Program.

## ISSUE 4:  UC'S CLAIM AGAINST CBC FOR INTENTIONAL INTERFERENCE WITH THE PATENT AGREEMENTS

UC claims that CBC intentionally interfered with the Patent Agreements between UC and Shaw, and/or the Patent Agreement between UC and Larson.  To establish this claim, UC must prove all of the following:

(1)     that there was a contract between UC and Shaw, and/or a contract between UC and Larson;

(2)     that CBC knew of the contract(s);

(3)     that CBC's conduct prevented performance or made performance more expensive or difficult;

(4)     that CBC intended to disrupt the performance of the contract or knew that disruption of performance was certain or substantially certain to occur;

(5)     that UC was harmed; and

(6)     that CBC's conduct was a substantial factor in causing UC's harm.

I have already ruled that Shaw and Larson breached their Patent Agreements by failing to assign their rights in the Core Strawberry Germplasm to UC and that Shaw is liable for breach of contract because he failed to give complete information to UC regarding the Core Strawberry Germplasm.

**ISSUE 5:  UC'S CLAIM AGAINST CBC, SHAW, AND/OR LARSON FOR
INTENTIONAL INTERFERENCE WITH CONTRACTS**

UC also claims that CBC, Shaw, and/or Larson intentionally interfered with license agreements between UC and Lassen Canyon, as well as between UC and Eurosemillas.  The agreements UC alleges were interfered with are: Trial Exhibit 36 (Lassen Canyon License Agreement); Trial Exhibit 37 (Eurosemillas License Agreement); Trial Exhibit 45, 46, 69, 106 (Eurosemillas Test Agreements).  To establish this claim, UC must prove all of the following:

(1)     that there was a contract between UC and Lassen Canyon, and contracts between UC and Eurosemillas;

(2)     that CBC, Shaw, and/or Larson knew of the contract(s);

(3)     that CBC, Shaw, and/or Larson's conduct prevented performance or made performance more expensive or difficult;

(4)     that CBC, Shaw, and/or Larson intended to disrupt performance of the contract(s) or knew that disruption of performance was certain or substantially certain to occur;

(5)     that UC was harmed; and

(6)     that CBC, Shaw, and/or Larson's conduct was a substantial factor in causing UC's harm.

**ISSUE 6:  UC'S CLAIM AGAINST CBC, SHAW, AND/OR LARSON FOR
INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

UC claims that CBC, Shaw, and Larson intentionally interfered with an economic relationship between UC and Lassen Canyon, and between UC and Eurosemillas, that probably would have resulted in an economic benefit to UC.  To establish this claim, UC must prove all of the following:

(1)     that UC and Lassen Canyon, and/or UC and Eurosemillas were in an economic relationship that probably would have resulted in an economic benefit to UC;

(2)     that CBC, Shaw, and/or Larson knew of the relationship(s);

(3)     that CBC, Shaw, and/or Larson engaged in false and improper representations concerning the strawberry germplasm and improperly used UC's strawberry germplasm for CBC's purposes;

(4)     that by engaging in this conduct, CBC, Shaw, and/or Larson intended to disrupt the relationship(s) or knew that disruption of the relationship(s) was certain or substantially certain to occur;

(5)     that the relationship(s) was (or were) disrupted;

(6)     that UC was harmed; and

(7)     that CBC, Shaw, and/or Larson's conduct was a substantial factor in causing UC's harm.

## ISSUES 7-8:  INFRINGEMENT IN GENERAL

The University has asserted infringement of the Albion, Benicia, Fronteras, Grenada, Merced, Monterey, Petaluma, Portola, San Andreas, Mojave, and Palomar patents.

Anyone who, without the patent owner's permission, uses in the United States or imports into the United States the plant variety covered by a plant patent or any of its parts, which includes its seeds, infringes that patent.

**ISSUE 7:  UC'S CLAIM AGAINST CBC, SHAW, AND/OR LARSON FOR PATENT INFRINGEMENT RELATING TO SEEDS**

In this trial, UC contends that the defendants infringed its patents by importing the seeds of a patented plant and then using those seeds in the United States.  The importation or use of seeds harvested from patented plants constitutes infringement, if done in the United States without UC's permission.  I have ruled that, to prove infringement, UC must show that the seeds were harvested from a UC-patented mother plant.  I have also ruled that any crossing activities, or "use" of UC's patented varieties in Spain does not constitute infringement, because the "use" must occur in the United States.

Therefore, your job is to determine whether CBC, Shaw, and/or Larson imported into the United States seeds that were harvested from the University's patented plants, and/or used those seeds in the United States without UC's permission.  To prove infringement of any of its patents, the University must persuade you that it is more likely than not that these requirements have been met.

You may draw an inference about the number of patented mother plants used in CBC's 2014 cross plan (and the number of imported seeds that came off those plants) based on all the evidence, as well as the discovery abuses in this case.

You must also determine whether such any infringement was willful.  You will receive a separate instruction on willfulness.

26

## PROVISIONAL RIGHTS

CBC, Shaw, and/or Larson may be liable to the University for infringement that occurred before a patent was issued, where CBC, Shaw, and/or Larson had actual notice of the published patent application for that patent.

The parties have stipulated that Shaw and Larson have known of the applications for the asserted patents since the application for the patents were published.

## INDUCED PATENT INFRINGEMENT

The University claims that CBC, Shaw, and/or Larson have actively induced Eurosemillas or its affiliate International Semillas, Javier Cano, and/or David Garcia Sinova to infringe the University's asserted plant patents by importing seeds from UC-patented plants. For CBC, Shaw, and/or Larson to have induced infringement, CBC, Shaw, and/or Larson must have induced another to directly infringe an asserted plant patent; if there is no direct infringement by anyone, there can be no induced infringement. In order to be liable for inducing infringement, CBC, Shaw, and/or Larson must:

    (1)    have intentionally taken action that actually induced direct infringement;

    (2)    have been aware of the asserted plant patent; and

    (3)    have known that the acts it was causing would infringe the plant patent.

CBC, Shaw, and/or Larson may be considered to have known that such importation by another person or entity would infringe the asserted plant patents if they willfully blinded themselves to the infringing nature of the direct infringer's acts.

28

**ISSUE 8:  UC'S CLAIM AGAINST CBC, SHAW, AND/OR LARSON FOR PATENT INFRINGEMENT RELATING TO BENCHMARKING**

I have already ruled that CBC, Shaw, and/or Larson infringed UC's patents by "benchmarking" new strawberry varieties against UC's patented plants without authorization. Your job is to determine whether CBC, Shaw, and/or Larson's use of the patented plants for "benchmarking" was willful infringement.

**ISSUES 7-8:  UC'S CLAIM THAT THE DEFENDANTS INFRINGED WILFULLY**

With respect to both patent infringement claims, UC contends that CBC, Shaw, and/or Larson willfully infringed its patents.  To prove willful infringement, UC must first establish that CBC, Shaw, and/or Larson infringed.  The requirements for proving infringement based on the importation or use of seeds of patented plants, and my ruling about infringement through benchmarking, were discussed in prior instructions.

To prove that CBC, Shaw, and/or Larson infringed willfully, UC must establish by a preponderance of the evidence that CBC, Shaw, and/or Larson had knowledge of one or more of the patents at issue, and that the infringing conduct was wanton, malicious, in bad faith, deliberate, consciously wrongful, or flagrant.  To determine whether CBC, Shaw, and/or Larson acted willfully, you may consider all the facts, including, but not limited to:

(1)     whether CBC, Shaw, and/or Larson acted consistently with the standards of behavior for its/their industry;

(2)     whether CBC, Shaw, and/or Larson intentionally imported or used seeds harvested from a patented plant or benchmarked using a patented plant;

(3)     whether CBC, Shaw, and/or Larson acted with reckless disregard of the asserted plant patents;

(4)     whether CBC, Shaw, and/or Larson reasonably believed their conduct did not infringe;

(5)     whether CBC, Shaw, and/or Larson made a good faith effort to avoid infringing the patent; and

(6)     whether CBC, Shaw, and/or Larson tried to cover up its/their alleged infringement.

## LIABILITY OF CBC FOR THE CONDUCT OF AGENTS

UC contends that Shaw and Larson acted as agents of CBC once CBC was formed, and that CBC is therefore liable for their conduct. CBC denies this. If you conclude that Shaw and/or Larson were acting as agents of CBC, and if you conclude that their conduct was within the scope of their agency relationship with CBC, and if you find Shaw and Larson liable on Issues 1, 5-6, or 7, then you must also conclude that CBC is liable on those issues.

UC also contends that International Semillas and Javier Cano acted as CBC's agents, and that CBC is therefore liable for their conduct. CBC denies this. If you conclude that International Semillas and/or Javier Cano were acting as agents of CBC, and if you conclude that their conduct was within the scope of their agency relationship with CBC, and if you conclude that International Semillas and/or Javier Cano committed conversion and/or patent infringement (Issues No. 1 and 7), then you must also conclude that CBC is liable on that issue.

Agency authority may be shown by words or may be implied by the parties' conduct. Conduct is within the scope of authorization if: (a) it is reasonably related to the kinds of tasks the agent was employed to perform; or (b) it is reasonably foreseeable in light of the principal's business or the agent's job responsibilities.

31

## LIABILITY OF CO-CONSPIRATORS

UC contends that CBC, Shaw, Larson, International Semillas, and Javier Cano (among others) were part of a conspiracy to commit some of the acts that UC alleges in this lawsuit. Specifically, the University contends that the acts committed in connection with Issues 1-6 were in furtherance of a conspiracy.  The defendants deny this.

You may conclude that all, or some, or none of these actors was part of a conspiracy.  If you find liability for any one of the defendants in connection with Issues 1, 2, 3, 4, 5, or 6, and if you conclude that the violation was committed in furtherance of a conspiracy, then any other defendant you find to be part of the conspiracy must be liable as well.

A conspiracy is an agreement by two or more people to commit a wrongful act.  Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.  A conspiracy may be inferred from the circumstances, including the nature of the acts done, the relationships between the parties, and the interests of the alleged co-conspirators.  However, mere knowledge of a wrongful act, without cooperation or an agreement to cooperate, is insufficient to establish a conspiracy.

### ISSUE 9: CBC'S CLAIM AGAINST UC FOR BREACH OF THE
### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

CBC claims that UC violated the duty to act fairly and in good faith in making its determination that the Core Strawberry Germplasm are patentable and requesting an assignment of rights in the Core Strawberry Germplasm from Shaw and Larson. To establish this claim, CBC must prove all of the following:

(1)     that Shaw and/or Larson entered into the Patent Agreements with UC;

(2)     that Shaw and/or Larson did all, or substantially all of the significant things that the Patent Agreement required them to do before UC made its patentability determination and requested the assignment, or that they were excused from having to do those things;

(3)     that all conditions required for UC's performance had occurred or were excused;

(4)     that UC unfairly interfered with Shaw and Larson's right to receive the benefits of the contract by filing a patent application for the Core Strawberry Germplasm and requesting an assignment of rights; and

(5)     that CBC was harmed by UC's conduct.

I have already ruled that Shaw and Larson subsequently breached their Patent Agreements with UC by failing to assign to UC patent rights in the Core Strawberry Germplasm and not executing the appropriate documents and other things necessary to assist UC in securing patent protection. I ruled that their agreements did not permit them to refuse to assign their rights if they disagreed with UC's patentability determination; it required instead that they assign

33

their rights under protest, which they did not do.  I have also ruled that Shaw breached the Patent Agreement by failing to provide complete information relating to the Core Strawberry Germplasm.  But it is for you to decide whether UC breached the implied covenant of good faith and fair dealing beforehand.

## PLANT PATENTS

The process of obtaining a patent is called patent prosecution.  To obtain a plant patent, one must file an application with the United States Patent and Trademark Office (sometimes called "the PTO").  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes what is called a "specification," which describes the plant variety, the plant name, and characteristics that distinguish it from other plants known at the time the application is filed.  The specification concludes with one sentence called a claim, which states that the plant patent covers the plant variety disclosed in the specification.

In this case, UC filed an application containing more than one distinct claimed invention within the meaning of the Plant Patent Act.  In response, the Patent Examiner issued what is called a "restriction requirement."  This requires a patent applicant to elect a single claimed invention for examination.  The remaining claimed inventions can be pursued by "divisional" or "continuation" applications.

## COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your foreperson. The foreperson will preside over the deliberations and serve as the spokesperson for the jury in court.

You should strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.