Tharan Gregory Lanier (SBN 138784)
tglanier@jonesday.com
Greg L. Lippetz (SBN 154228)
glippetz@jonesday.com
Nathaniel P. Garrett (SBN 248211)
ngarrett@jonesday.com
Paul C. Hines (SBN 294428)
phines@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:   +1.415.626.3939
Facsimile:   +1.415.875.5700

Sharyl A. Reisman (Admitted *Pro Hac Vice*)
sareisman@JonesDay.com
JONES DAY
250 Vesey Street
New York, NY 10281.1047
Telephone:   +1.212.326.3939
Facsimile:   +1.212.755.7306

Rick L. McKnight (SBN 55183)
fmcknight@jonesday.com
Alexis Adian Smith (SBN 274429)
asmith@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone:   +1.213.489.3939
Facsimile:   +1.213.243.2539

Attorneys for Cross-Complainant and Defendant CALIFORNIA BERRY CULTIVARS, LLC and Defendants DOUGLAS SHAW and KIRK LARSON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA BERRY CULTIVARS, LLC, DOUGLAS SHAW, AND KIRK LARSON,<br><br>Defendants.<br><br>CALIFORNIA BERRY CULTIVARS, LLC,<br><br>Cross-Complainant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Cross-Defendant. | Case No. 3:16-cv-02477-VC<br><br>**DEFENDANTS' BENCH TRIAL BRIEF** |

UC seeks far-reaching relief that would thwart CBC from developing much-needed strawberry cultivars for the public market and transforms the principle of restitution from one of disgorgement to one of plunder. Defendants respect the jury's verdict and are prepared to accede to reasonable equitable measures. But UC over-reaches by requesting relief that is divorced from the established facts and exceeds legal guideposts.

### A. UC'S REQUESTED RELIEF FAILS THE FOUR FACTOR TEST.

Much of the UC's requested equitable relief is contrary to the four factors that guide the injunctive relief analysis, as UC has not suffered an *irreparable* injury, the balance of hardships does not warrant the full extent of relief sought by UC, public interest would be disserved by a permanent injunction, and the "merits"—*i.e.*, the governing equitable standards—do not justify the panoply of relief requested. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Testimony about ongoing competition in the cultivar market and evidence of widespread use of UC patented varieties to breed new cultivars will establish that UC has not been and will not be irreparably harmed by ongoing breeding using UC varieties. DX 1, attached as Exhibit A, shows not only the breadth of third party breeding with UC varieties but the lack of impact on UC sales. And, UC cannot credibly claim to be irreparably harmed where a reasonable royalty can compensate UC for any harm caused by use of the disputed materials for breeding.

Additionally, UC's proposed injunctive relief would unfairly harm CBC and the public interest. CBC has invested millions of dollars and years of effort to create new strawberry varieties that would not otherwise exist. UC's requested injunctions would confiscate from CBC's members and destroy the substantial value created by this investment of time and money. Similarly, UC's proposed injunctions would harm the public interest by eliminating an independent developer of cultivars from the market for strawberry cultivars.

### B. *LEXMARK* SHOULD IMPACT THE PROPOSED PATENT INJUNCTION.

This very morning the Supreme Court issued its long awaited decision regarding patent exhaustion and the ability of patent owners to restrict use of patented products after an initial sale. *Impression Products, Inc. v. Lexmark International, Inc.*, 581 U.S. ___ (May 30, 2017) (attached as Exhibit B). Summarizing its holding, the Court stated: "We conclude that a patentee's

decision to sell a product exhausts all of its patent rights in the item, regardless of any restrictions the patentee purports to impose or the location of the sale." *Id*. at 2. Among other things, the Supreme Court's opinion dooms at least UC's benchmarking theory of liability. For purposes of the equity proceedings, however, the Court's opinion means that UC cannot rely upon the patent laws to restrict CBC from using or importing patented plants that have entered the stream of commerce. CBC is carefully studying this opinion and proposes to submit additional briefing.

### C. EQUITABLE RELIEF DOES NOT REACH PROGENY GENERATED THROUGH DEFENDANTS' OWN SKILL, EFFORTS, AND DILIGENCE.

Apparently, Javier Cano did not follow Doug Shaw's 2014 crossing plan, but instead substituted CSG varieties as crossing parents. This conduct did not deny UC its use of CSG for crossing, as would stealing a prize bull from its owner. Undeniably, however, it did confer a benefit on CBC, enabling CBC to use its resources and creativity over three years to observe and to select around 175 varieties from the approximately 25,000 seeds resulting from the crosses. To promote equity, CBC will share with UC that benefit, which otherwise never would have existed. But UC seeks more, specifically, an injunction and constructive trust requiring CBC to transfer to UC exclusive possession of the "progeny of all UC unreleased plants and UC patented or patent pending mother plants (no matter how many generations removed)." Dkt. 331 at 2:12-15. Neither California conversion law nor the patent law permits this sweeping demand.

As to conversion, the California legislature has codified the equitable principle that one who wrongfully acquires property of another holds the property in an involuntary constructive trust. Cal. Civ. Code §§ 2223, 2224. Cases recognize that "a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." *Weiss v. Marcus*, 51 Cal.App.3d 590, 600 (1975).

Critically, however, California has adopted the Restatement rule that the constructive trust extends only to "the direct product" of converted property, "*i.e.*, profit on and enhancement in value of property traced into the trust." *Haskel Eng'g & Supply Co. v. Hartford Acc. & Indem. Co.*, 78 Cal.App.3d 371, 375 (1978); *see also* Restatement (First) of Restitution § 205 (1937). The direct product rule thus ensures that a plaintiff seeking restitution recovers only those gains

2

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

that flow directly from an unjust benefit conferred on a defendant, not those gains that are the result of "the defendant's own investments, efforts, or enterprising attitude." *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 120 (Colo. 1995).

The phrase "direct property" means "that which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor." Restatement (First) of Restitution § 157 cmt. b (1937). For example, a defendant who converts the plaintiff's money must return both the principal and any interest thereon as the direct product. *Id.* At the same time, the constructive trust is cut off by the intervention of an independent transaction; "[i]f an artist acquired paints by fraud and used them in producing a valuable portrait we would not suggest that the defrauded party would be entitled to the portrait, or to the proceeds of its sale." *Janigan v. Taylor*, 344 F.2d 781, 787 (1st Cir. 1965); *see also Boardakan Restaurant LLC v. Atl. Pier Assocs., LLC*, 33 F. Supp. 3d 543, 551-52 (E.D. Pa. 2014) (noting that restaurant profits were "sourced from a multitude of factors" which were "independent" of lease agreement, such as the quality of the food and service, and thus were not a "direct product" of the lease agreement for the premises themselves).

In this case, the evidence already presented confirms that the progeny of UC-unreleased varieties are genetically-distinct strawberry cultivars that exist by reason of Defendants' own skill, efforts, and diligence. Extending the constructive trust to these varieties would impermissibly provide UC with "a windfall in the manner of profits … attributable to the defendant's entrepreneurship." *Siebel v. Scott*, 725 F.2d 995, 1002 (5th Cir. 1984).

Likewise improper is UC's request for an injunction or constructive trust over the progeny of UC-patented plants. Consistent with 35 U.S.C. § 283, any injunction ordered under the patent laws may enjoin only those activities "that either have infringed the ... patent or are likely to do so." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1366 (Fed. Cir. 1998).

As UC's expert admitted at trial, each of the progeny in CBC's possession "has a unique genetic composition" unlike its patented parent(s). Trial Tr. 1165:20-1166:5 (Dellaporta). CBC's use and sale of the genetically-distinct progeny of UC-patented plants—let alone progeny of the progeny—in the United States cannot violate the Plant Patent Act. The Plant Patent Act's

3

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

grant "differs from that given with respect to other inventions. Infringers must be shown to have asexually reproduced or sold or used the plant on which the patent was granted." *Application of LeGrice*, 301 F.2d 929, 944 (C.C.P.A. 1962). Thus, to violate the Plant Patent Act, a party must asexually reproduce the patented plant, or use, sell, or import the asexually reproduced patented plant or "any parts thereof." 35 U.S.C. § 163. The statute does not reach using, selling, or importing plants "of the same general kind" – only the "single plant" identified in the plant patent. *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564-65 (Fed. Cir. 1995).

Here, the progeny of UC-patented plants (and their progeny) in CBC's possession have their own distinct genetic characteristics, and the progeny themselves could warrant patentability under the Plant Patent Act, if a breeder recognizes them as desirable and propagates them further by asexual reproduction. 35 U.S.C. § 161. Using and selling these distinct plants in the future—as distinguished from using, selling, or importing UC's patented plants and plant parts—will not violate the Plant Patent Act because CBC will not be asexually reproducing UC-patented varieties, or using, selling, or importing UC-patented varieties or their "parts."[1]

### D. UC CANNOT COMPEL DISGORGEMENT OF CBC'S BOOKS AND RECORDS.

UC seeks a constructive trust over CBC records "sufficient to show" the pedigrees and objective observations of the progeny of UC unreleased and patented plants. Dkt. 331 at 2:15-19. While the jury found Defendants converted "books and records *relating to the Strawberry Breeding Program*" (Dkt. 330), UC never pled, let alone proved, that it owns or has a right to possess CBC's own records. Certainly, CBC's books and records are not the "direct product" of the UC unreleased varieties sent to Spain under the Test Agreements.

### E. THE SPECIFIC PERFORMANCE UC SEEKS OF SHAW & LARSON IS IMPROPER.

UC requests an order requiring Drs. Shaw and Larson to assign all rights, title, and interest in the Core Strawberry Germplasm and to assist UC in securing patent protection thereon. Dkt.

---

[1] Even if "part" a UC-patented mother plant may have been imported (i.e., the seed coat of the imported seed), that "part" ceases to exist after germination and is not part of the progeny plant or in any way present in subsequent generations.

4

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

331 at 3:11-16.  This request is contrary to the Court's guidance, in light of its finding of breach, that "the answer is that I should be ordering CBC to assign the rights in the Core Strawberry Germplasm to the University as Shaw and Larson were required to do."  Reporter's Tr. 5:12-15 (Mar. 30, 2017).  Additionally, UC cannot compel Defendants, through equity, to assist UC in securing patents on an application that "honestly and in good faith" believe to amount to fraud on the PTO. *Guth v. Minnesota Min. & Mfg. Co.*, 72 F.2d 385, 390 (7th Cir. 1934); *Deere & Co. v. Van Natta*, 660 F. Supp. 433, 435 (M.D.N.C. 1986); Trial Tr. 561:8-12 (Shaw).  And, finally, UC cannot obtain specific performance at all against Dr. Larson because of his mental condition.  Well-settled law and fundamental principles of decency do not permit one party to compel specific performance from another party that lacks the mental capacity to meaningfully perform.  *See Church v. Bruce*, 251 P. 854, 855 (Wash. 1927) (citing cases).

### F. UC MAY NOT DEDUCT ATTORNEY'S FEES FOR THIS CASE.

Finally, UC's request for a declaration permitting it to deduct its attorney's fees attributable to this case from Defendants' anticipated royalty payments finds no basis in the plain text of the parties' Patent Agreements.  *See* Dkt. 331 at 4:5-6.  The relevant contractual provision provides that "[i]n the event of litigation … The Regents may withhold distribution and impound royalties *until resolution in the matter*."  Trial Ex. 1 (emphasis added).  While this provision plainly contemplates temporarily withholding royalties during litigation to determine, for example, whether the patent is declared invalid, it does not give The Regents carte blanche to permanently deduct any fees as the result of litigation.

UC also appears to rely on a provision stating that the inventors are entitled to a share of net royalties, defined as gross royalties minus, *inter alia*, "the costs of patenting, protecting and preserving patent rights…."  Trial Ex. 1.  But that provision is a far cry from the type of fees provision typically written into contracts.  *See, e.g.*, *In re Zarate*, 567 B.R. 176, 183 (N.D. Cal. Bankr. 2017) (contract provided for fees and court costs in the event "suit is brought … to enforce the terms of this Agreement").  At best, the UC's provision is ambiguous as to whether it extends to attorney's fees in an affirmative patent infringement action against the inventor, and therefore must be interpreted against UC under the doctrine of *contra proferentem*.

5

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

Dated: May 30, 2017

Respectfully submitted,

Jones Day

By: */s/ Nathaniel P. Garrett*
    Nathaniel P. Garrett

Counsel for Cross-Complainant and Defendant CALIFORNIA BERRY CULTIVARS, LLC and Defendants DOUGLAS SHAW and KIRK LARSON

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

6