Tharan Gregory Lanier (SBN 138784)
tglanier@jonesday.com
Nathaniel P. Garrett (SBN 248211)
ngarrett@jonesday.com
Paul C. Hines (SBN 294428)
phines@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: +1.415.626.3939
Facsimile: +1.415.875.5700

Rick L. McKnight (SBN 55183)
fmcknight@jonesday.com
Alexis Adian Smith (SBN 274429)
asmith@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

Sharyl A. Reisman (Admitted *Pro Hac Vice*)
sareisman@JonesDay.com
JONES DAY
250 Vesey Street
New York, NY 10281.1047
Telephone: +1.212.326.3939
Facsimile: +1.212.755.7306

Attorneys for Cross-Complainant and Defendant CALIFORNIA BERRY CULTIVARS, LLC and Defendants DOUGLAS SHAW and KIRK LARSON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA BERRY CULTIVARS, LLC, DOUGLAS SHAW, AND KIRK LARSON,<br><br>Defendants. | Case No. 3:16-cv-02477-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL; MOTION TO ALTER JUDGMENT** |
| CALIFORNIA BERRY CULTIVARS, LLC,<br><br>Cross-Complainant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Cross-Defendant. | Date: July 6, 2017<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 6, 2017 at 10:00 a.m. before the Honorable Vince Chhabria, United States District Court, San Francisco, California, Defendants California Berry Cultivars, LLC, Douglas Shaw, and Kirk Larson will, and hereby do, move the Court for an Order under Rule 50(b) of the Federal Rules of Civil Procedure for judgment as a matter of law or, in the alternative, for an Order under Rule 59(a) for a new trial. Additionally, Defendants California Berry Cultivars, LLC, Douglas Shaw, and Kirk Larson will, and hereby do, move the Court for an Order under Rule 59(e) altering the judgment relating to The Regents of the University of California's patent infringement claims. This motion is based on the accompanying Memorandum of Points and Authorities, Declaration of Nathaniel P. Garrett and exhibit attached thereto, the complete files and records in this action, oral argument of counsel, and such other and further matters as the Court may consider.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   LEGAL STANDARDS ....................................................................................................... 2

III.  ARGUMENT ...................................................................................................................... 3

    A.    Judgment As A Matter Of Law Should Be Granted For Larson. ................................ 3

    B.    Judgment As A Matter Of Law Should Be Granted On The University's Interference Claim. ......................................................................................................... 6

    C.    Judgment as a Matter of Law Should be Granted on the University's Importation Theory of Infringement; At the Least, the Judgment Should be Altered Under *Lexmark*. ............................................................................................. 7

        1.    There is No Evidence Defendants Imported Patented Seeds. ................................. 7

        2.    The University's Importation Theory of Liability Does Not Survive *Lexmark*. ............................................................................................................ 9

    D.    Judgment as a Matter of Law Should be Granted on the University's Benchmarking Theory of Infringement; At the Least, the Judgment Should be Altered Under *Lexmark*. ........................................................................................... 11

        1.    The University's Benchmarking Theory of Liability Does Not Survive *Lexmark*. .......................................................................................................... 11

        2.    There is No Evidence the University Clearly Communicated a Restriction on Benchmarking to Defendants. ........................................................................ 11

    E.    Judgment as a Matter of Law Should be Granted on the Issue of Willfulness. ........... 12

IV.  CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allstate Ins. Co. v. Herron*,
  634 F.3d 1101 (9th Cir. 2011) ................................................................................................ 3

*Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*,
  421 F.3d 981 (9th Cir. 2005) ................................................................................................ 12

*Barry v. Medtronic, Inc.*,
  2017 WL 1197854 (E.D. Tex. Jan. 25, 2017) ...................................................................... 13

*Beckner v. Sears, Roebuck & Co.*,
  4 Cal.App.3d 504 (1970) ....................................................................................................... 6

*Bristol-Myers Co. v. Erbamont Inc.*,
  723 F. Supp. 1038 (D. Del. 1989) .......................................................................................... 7

*Cybiotronics, Ltd. v. Golden Source Electronics, Inc.*,
  130 F. Supp. 2d 1152 (C.D. Cal. 2001) ................................................................................. 8

*Eltolad Music, Inc. v. April Music, Inc.*,
  139 Cal. App. 3d 697 (1983) ................................................................................................. 6

*Emblaze Ltd. v. Apple Inc.*,
  2015 WL 396010 (N.D. Cal. Jan. 29, 2015) .......................................................................... 2

*Fellowes v. Michilin Prosperity Co.*,
  491 F. Supp. 2d 571 (E.D. Va. 2007) .................................................................................... 8

*Finjan, Inc. v. Sophos, Inc.*,
  --- F. Supp. 3d. ----, 2017 WL 976673 (N.D. Cal. Mar. 14, 2017) ....................................... 2

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  136 S.Ct. 1923 (2016) .......................................................................................................... 13

*Imazio Nursery, Inc. v. Dania Greenhouses*,
  69 F.3d 1560 (Fed. Cir. 1995) .............................................................................................. 13

*Impression Prod., Inc. v. Lexmark Int'l, Inc.*,
  No. 15-1189, 2017 WL 2322830 (U.S. May 30, 2017) ................................................. passim

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014) .............................................................................................. 2

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*,
  86 F. Supp. 3d 1105 (N.D. Cal. 2015) ................................................................................... 8

*Lexmark Int'l, Inc. v. Impression Prod., Inc.*,
  816 F.3d 721 (Fed. Cir. 2016) .............................................................................................. 12

*McDowell v. Calderon*,
  197 F.3d 1253 (9th Cir. 1999) ................................................................................................ 3

# TABLE OF AUTHORITIES
(continued)

Page

*Molski v. M.J. Cable, Inc.*,
 481 F.3d 724 (9th Cir. 2007) ............................................................................................... 2

*Moore v. Apple Inc.*,
 309 F.R.D. 532 (N.D. Cal. 2015) ......................................................................................... 6

*Ortiz v. Gaston County Dyeing Machine Co.*,
 277 F.3d 594 (1st Cir. 2002) ................................................................................................ 3

*United States v. 4.0 Acres of Land*,
 175 F.3d 1133 (9th Cir. 1999) .............................................................................................. 2

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
 837 F.3d 1358 (Fed. Cir. 2016) .......................................................................................... 13

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
 609 F.3d 1308 (Fed. Cir. 2010) ............................................................................................ 2

## Statutes

35 U.S.C. § 163 ........................................................................................................................ 7, 8

35 U.S.C. § 271 ........................................................................................................................ 7, 8

## Rules

Fed. R. Civ. P. 50 .......................................................................................................................... 1

Fed. R. Civ. P. 59 ..................................................................................................................... 1, 3

## Other Authorities

5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts ................................................................ 7

Chengfei Ding, *The Protection for New Plant Varieties of American Businesses in China After China Enters the WTO*, 6 DRAKE J. AGRIC. L. 333 (2001) ................................... 13

## I.  **INTRODUCTION**

Defendants California Berry Cultivars, LLC ("CBC"), Dr. Douglas Shaw, and Dr. Kirk Larson move under Federal Rule of Civil Procedure 50 for judgment as a matter of law or, in the alternative, a new trial on: (1) all claims against Dr. Kirk Larson; (2) the claim of the University of California ("University") for CBC's interference with the Shaw and Larson Patent Agreements; and (3) the University's claims for willful patent infringement.[1]  Defendants also move under Federal Rule of Procedure 59 to alter the judgment relating to the University's patent infringement claims.

The Court should grant judgment as a matter of law or, in the alternative, a new trial on all of the University's claims against Dr. Larson.  The University attempted to prove its case against Dr. Larson on the basis of various e-mails that Dr. Larson wrote or received while employed by the University.  These communications show nothing more than that Dr. Larson was involved, at the margins, in establishing CBC.  However, the exhibits do not come close to showing that Dr. Larson *knowingly* or *intentionally* interfered with the University's interests, as required.  Because this evidence of *mens rea* is lacking, Dr. Larson is entitled to judgment in his favor.

In addition, all defendants are entitled to judgment as a matter of law, or a new trial, on the University's claims for interference with contract, patent infringement, and willful patent infringement.  There is neither evidence that the University was harmed by CBC's purported interference, nor any evidence that CBC was the procuring cause of the contract breach.  And there is no evidence that Defendants "imported" patented plant parts or violated a contractual restriction on benchmarking, let alone committed any acts Defendants knew, or should have known, would infringe on the University's patents.

And even if there were sufficient evidence to sustain the University's patent claims under the law that existed when the University filed its complaint, the Supreme Court's intervening

---

[1] Defendants do not move under Rule 50 on the jury's verdict against CBC and Dr. Shaw for conversion, or on the jury's verdict against Dr. Shaw for breach of the duty of loyalty and breach of fiduciary duty.  However, Defendants do not hereby waive their pre-trial arguments regarding those claims, or their arguments opposing summary judgment for breach of contract.

1

Defs.' Post-Trial Mots.
Case No. 3:16-CV-02477-VC

decision in *Impression Prod., Inc. v. Lexmark Int'l, Inc.*, No. 15-1189, 2017 WL 2322830 (U.S. May 30, 2017), dooms the University's patent claims. In *Lexmark*, the Supreme Court held that a patentee who puts his product into the stream of commerce cannot enforce post-sale restrictions on purchasers, like Defendants, through the patent law. Under *Lexmark*, the University might have had a claim based in contract, but the jury already concluded that Defendants did not interfere in any license agreements or test agreements between the University and a third party. In any event, the University admitted in binding interrogatories that it does not contend that any license agreement or test agreement has been violated. As a result, the University no longer has a viable patent infringement claim, and any judgment must be altered in Defendants' favor.

## II. LEGAL STANDARDS

"A court should grant a motion for judgment as a matter of law following a jury trial where 'the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury.'" *Finjan, Inc. v. Sophos, Inc.*, --- F. Supp. 3d. ----, 2017 WL 976673, at *18 (N.D. Cal. Mar. 14, 2017) (quoting *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1338 (Fed. Cir. 2014)). "[T]o set aside the verdict, there must be an absence of substantial evidence—meaning relevant evidence that a reasonable mind would accept as adequate to support a conclusion—to support the jury's verdict." *Emblaze Ltd. v. Apple Inc.*, 2015 WL 396010, at *3 (N.D. Cal. Jan. 29, 2015).

A trial court "may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotation marks omitted); *accord Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). In considering a motion for a new trial, a court "has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks and alterations omitted).

2

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

District courts have the power to "alter or amend" a judgment under Federal Rule of Civil Procedure 59(e). The power to "alter or amend" includes the power to vacate or set aside the judgment. *See Ortiz v. Gaston County Dyeing Machine Co.*, 277 F.3d 594, 597 n.1 (1st Cir. 2002). "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (en banc) (internal quotation marks omitted). Among other reasons, a Rule 59(e) motion may be granted "if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

### III.  ARGUMENT

#### A.  Judgment As A Matter Of Law Should Be Granted For Larson.

Judgment as a matter of law—or at least a new trial—should be granted for Dr. Kirk Larson on the University's claims for conversion (Issue 1), breach of the duty of loyalty (Issue 2), and breach of fiduciary duty (Issue 3). The evidence proffered by the University as to Dr. Larson is not sufficient to sustain a verdict on any of the three claims.

Because Dr. Larson could not attend trial as a result of his mental condition, the University predicated its claims on fifteen exhibits read into the record (Trial Tr. 403:2-405:19).[2] When those exhibits are carefully examined, however, none amounts to evidence substantial enough to satisfy all the elements of the University's claims.

1. **Conversion.** In particular, Dr. Larson is entitled to judgment as a matter of law on the University's conversion claim because there is no evidence he "*intentionally and substantially*" interfered with the University's property interest in the Core Strawberry Germplasm, other unreleased varieties, or books and records regarding the strawberry breeding program. ECF No. 328 at 19 (emphasis added).

To begin, there is no evidence that Dr. Larson converted University books and records because, for example, he refused to return them to the University. The University's sole support

---

[2] These are trial exhibits 2, 54, 55, 61, 66, 68, 78, 85, 88, 94, 100, 154, 172, 176, and 193.

is a letter sent by Jacob Appelsmith to Patrick Nielson, on January 23, 2014, in which Mr. Appelsmith conditioned a proposal on a request for information. *See* Trial Ex. 140; Trial Tr. 1086:7-1087:3. But that letter was singularly addressed to Dr. Shaw, and there is no evidence Mr. Nielson represented Dr. Larson in his personal capacity. Indeed, the trial evidence is that Mr. Nielson was Dr. *Shaw*'s lawyer. Trial Tr. 248:1-8 (Delany); *id.* at 622:22-623:2 (Shaw). Thus, there is no predicate for the University's conversion claim on books and records.

With respect to unreleased varieties, the University admitted two emails from Dr. Larson in April 2012, in which Dr. Larson inquired about the variety of plants held by Eurosemillas in Spain and reports on the health of UC plants growing in Spain. Trial Exs. 54, 55. These emails, however, were almost one year before anyone traveled to Spain to talk to Eurosemillas about conducting crosses on behalf of CBC. Trial Tr. 456:6-21 (Shaw). And it is undisputed that the University's strawberry breeding program worked with Eurosemillas for years before anyone thought of starting a private-public partnership to breed strawberries. *Id.* at 332:8-15 (Carriere); *id.* at 441:12-20, 509:12-25 (Shaw). The two communications thus do not come close to supporting the conclusion that Dr. Larson intended, as early as 2012, to convert UC unreleased varieties; they establish only that Dr. Larson was investigating the health of UC plants in Spain for purposes of the University's strawberry breeding program.

Next, the University relies on two emails showing that Dr. Larson identified unreleased varieties for testing in Spain by Eurosemillas and Lassen Canyon in September 2012. Trial Exs. 66, 68. Again, however, it is undisputed that Dr. Larson was responsible, for years, for identifying UC varieties to be tested under Test Agreements in Spain. Trial Tr. 332:8-333:3 (Carriere). The University's evidence merely shows that Dr. Larson was responsible for identifying certain plants ultimately included in the 2012 Test Agreements. *See* Trial Ex. 69. The University's evidence does not show that Dr. Larson *intended* in 2012 for CBC to later use these unreleased varieties in the United States.

That leaves the University to rely on Exhibit 85 – an email from Dr. Shaw to Javier Cano on which Dr. Larson was only carbon copied. In that March 2013 email, Dr. Shaw identified certain unreleased varieties, and told Mr. Cano, "[w]e need a better management of the genetic

4

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

1   materials than we now have, I may need tthe [*sic*] selections from this list as parents next year."
2   Trial Ex. 85.  Dr. Shaw testified that when he sent the email, he was "thinking about where we
3   would go next pending a license from the University to use unreleased materials."  Trial Tr.
4   513:5-14 (Shaw).  Whatever Dr. Shaw intended, that intent cannot be attributed to Dr. Larson
5   merely because he was carbon copied on an email.  No reasonable juror could find, from that
6   email, that Dr. Larson intended to convert the University's property.

       2.  **Breach of Fiduciary Duty & Duty of Loyalty.**  Dr. Larson is also entitled to judgment as a matter of law on the University's breach of duty claims.  There is no evidence—or at least the clear weight of evidence refutes—that Dr. Larson "*knowingly* acted against UC's interests in connection with the[] formation of CBC or [his] CBC-related activities" (as required to establish breach of the duty of loyalty), or that Dr. Larson failed to act as a "*reasonably* careful agent" (as required to establish breach of fiduciary duty).  ECF No. 328 at 20-21.

       The University offered a smorgasbord of disparate exhibits, none of which reveal a plan by Dr. Larson to knowingly interfere with the University's interests.  Thus, the University proffered exhibits showing that Dr. Larson told Javier Cano *not* to have his staff visit California in 2013 (Trial Ex. 100), that Dr. Larson told Lassen Canyon he intended to germinate seeds for CBC in July 2014 (Trial Ex. 154), and that Dr. Larson did not disclose his work with CBC on a University form (Trial Ex. 61).  But the University proffered no evidence that Dr. Larson believed his relationship with CBC was contrary to the University's interests.

       At most, the University has identified emails where Dr. Larson admits to not trusting the University (Trial Ex. 55), and expresses a desire to keep CBC communications from "end[ing] up at UC Davis" (Trial Ex. 172).  But as this Court already recognized, the theory that Dr. Larson breached his duties by having private communications with CBC "begs the question."  Trial Tr. 1093:24-25.  Without evidence that Dr. Larson knew his work at CBC was interfering with the University, the mere fact that Dr. Larson sought to keep his University- and CBC-emails separate does nothing to prove that Dr. Larson knowingly interfered with UC's interests.

5

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

**B.    Judgment As A Matter Of Law Should Be Granted On The University's Interference Claim.**

The Court should also grant judgment as a matter of law—or, at the least, a new trial—on the University's claim against CBC for interference with contract (Issue 4) as there is neither evidence of harm, nor evidence that CBC was the procuring cause of any interference with the Doctors' Patent Agreements.

**1.**  To establish its claim for interference with contract, the University bore the burden of proving it was harmed by CBC's purported interference with the Doctors' patent agreements. *See* ECF No. 328 at 22. There is no evidence, however, that the University suffered any harm as a result of the breach of their Patent Agreements with Drs. Shaw and Larson.

To the contrary, the University's witnesses testified that, notwithstanding the Doctors' refusal to assign their interests in the CSG or to turn over records in their possession (the latter unproven as to Larson), the University had sufficient data to determine whether the varieties in the CSG were or were not eligible for a U.S. Plant Patent. Trial Tr. 656:11-19. The University *claimed* that the Doctors' contract breaches delayed its ability to prioritize the varieties for commercial release, *id.* at 659:22-660:21, but Dr. Knapp *conceded* that the data provided by Dr. Shaw in November 2013 was sufficient to allow him to prioritize varieties within the CSG, *id.* at 815:24-817:16.

**2.**  The University also bore the burden of proving that CBC prevented performance of the Doctors' Patent Agreements or made performance more expensive or difficult, and that CBC's conduct was a substantial factor in causing harm to the University. ECF No. 328 at 22. "'It is the settled rule in actions for wrongful interference with contract rights that an essential element of the cause of action is that the conduct charged be the procuring cause of the interference and the harm.'" *Moore v. Apple Inc.*, 309 F.R.D. 532, 547 (N.D. Cal. 2015) (quoting *Beckner v. Sears, Roebuck & Co.*, 4 Cal.App.3d 504, 507 (1970)); *see also Eltolad Music, Inc. v. April Music, Inc.*, 139 Cal. App. 3d 697, 706 (1983) (holding that trial court erred in "instructing the jury that plaintiff had the obligation to prove that defendant was 'a' moving cause" rather than 'the' moving cause" of the contractual interference). Put otherwise, the University was obligated to

6

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

prove that in the absence of conduct by CBC, "the contract would have been performed." 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 738.

At trial, however, Dr. Shaw testified that he refused to assign his rights in the CSG not because of any conduct by CBC, but on his own volition. Specifically, Dr. Shaw explained that *he* refused to sign the University's assignment because, in his own head, "I felt there was no chance whatsoever to obtain the kind of information that we would need to do plant patents or a big plant patent on 168, 169 items. And that I would essentially be committing fraud on the Patent Office." Trial Tr. 561:6-12. That testimony is entirely consistent with what Dr. Shaw told the University in writing at the time. Trial Ex. 165 at 2-3. The University offered no evidence to controvert Dr. Shaw's own explanation for why he refused to sign the assignment form proffered by the University.

And the University offered no evidence at all as to the reasons why Dr. Larson refused to sign an assignment form. There is thus no evidence that would permit a reasonable conclusion that CBC was the procuring cause of any breach of Dr. Larson's Patent Agreement.

**C. Judgment as a Matter of Law Should be Granted on the University's Importation Theory of Infringement; At the Least, the Judgment Should be Altered Under *Lexmark*.**

**1. There is No Evidence Defendants Imported Patented Seeds.**

The Plant Patent Act entitles a patentee to exclude others from asexually reproducing a plant or "importing the plant so reproduced, or any parts thereof, into the United States." 35 U.S.C. § 163. The jury found that CBC, Dr. Shaw, and Dr. Larson either imported eleven patented plant parts into the United States or induced Eurosemillas or its affiliates to import patented plant parts into the United States. But there is insufficient evidence to support either theory of unlawful importation.

**a.** *First*, there is insufficient evidence that Defendants imported patented plant parts. The term "import[]" is used in several patent statutes, including § 163 and 35 U.S.C. § 271 (Infringement of patent). Although the term is not defined by statute, courts have recognized that "import" should be interpreted according to its "plain ordinary meaning of bringing goods into the United States from another country." *Bristol-Myers Co. v. Erbamont Inc.*, 723 F. Supp. 1038,

7

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

1    1044 (D. Del. 1989).

2    The trial record establishes that International Semillas and its representatives—not CBC—
3    brought seeds from Spain into the United States. For example, International Semillas
4    representative Javier Cano delivered the 2014 seeds by hand. Trial Tr. 412:14-16, 471:15-18.
5    Half of the 2015 seeds were delivered by courier, arranged by International Semillas. *See* Trial
6    Ex. 247. The other half were delivered by International Semillas representative David Garcia
7    Sinova by hand. *Id.* at 412:10-13. The 2016 varieties were delivered by International Semillas to
8    CBC via courier. *Id.* at 412:8-9. CBC never went to Spain to obtain the seeds for use in the
9    United States, and there is no evidence CBC ever paid for or contracted with any courier. *Id.* at
10   963:17-964:8.

11   The only evidence linking CBC to importation was Kyle VandenLangenberg's testimony
12   that he organized dates for delivery and the handoff to CBC in the United States in 2015 and
13   2016. Trial Tr. 977:2-11. But courts interpreting § 271's analogous "importation" prohibition
14   have held that "only the actual entity" that imports the allegedly offending goods may be held
15   liable for infringement. *Cybiotronics, Ltd. v. Golden Source Electronics, Inc.*, 130 F. Supp. 2d
16   1152, 1172 (C.D. Cal. 2001). Merely organizing the date of delivery is not sufficient to transform
17   CBC, the recipient of seeds, into their importer. Rather, to determine which party imported an
18   offending product, courts look to who holds legal title when goods cross border, and which party
19   controlled the manner and means of importation. *See, e.g.*, *id.*; *Fellowes v. Michilin Prosperity
20   Co.*, 491 F. Supp. 2d 571, 583 (E.D. Va. 2007); *Largan Precision Co, Ltd v. Genius Elec. Optical
21   Co.*, 86 F. Supp. 3d 1105 (N.D. Cal. 2015).

22   Here, International Semillas retained title to the seeds even after they crossed the United
23   States border. *See* Trial Ex. 542 § 7; Trial Tr. 488:1-489:7. And International Semillas plainly
24   controlled the manner or means of importation when it brought the seed by hand, and when it
25   arranged for a courier to bring the seeds to CBC. It is thus International Semillas—not CBC or
26   Drs. Shaw and Larson—that the University should have sued for *importing* patented plant parts.

27   **b.** *Second*, the University cannot defend the jury's verdict on the alternate ground that
28   Defendants induced International Semillas to violate § 163 by importing patented plant parts. To

8

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

find induced patent infringement, the jury would have been obligated to find that Defendants *knew* "the acts it was causing would infringe the plant patent." ECF No. 328 at 28.

The testimony at trial, however, was undisputed that Defendants believed it was lawful to cross with patented strawberry varieties in Spain and ship the resulting seeds into the United States. Trial Tr. 517:19-520:3 (Shaw); *id.* at 964:15-966:4 (VandenLangenberg); ECF No. 304-1 at 22:19-22, 23:07-23:12 (Hansen). Witnesses from both parties agreed that it is permissible to breed with patented plants in Spain under UPOV regulations. Trial Tr. at 680:3-7 (Carriere); *id.* at 964:15-966:4 (VandenLangenberg). And the University's witness acknowledged there is no restriction on breeding with University-patented varieties in the University's license agreement with Eurosemillas in Spain. *Id.* at 680:12-681:2 (Carriere); Trial Ex. 37 § 2.8. There is no evidence—or at least the clear weight of evidence refutes—that Defendants knew International Semillas was violating the Plant Patent Act by importing into the United States the sexual progeny of patented plants. Accordingly, the jury's finding of patent infringement for importation cannot be upheld on the theory of induced infringement.

### 2. The University's Importation Theory of Liability Does Not Survive *Lexmark*.

The University's judgment for patent infringement must be amended for a second, independently sufficient reason: the jury's May 25 verdict does not survive the Supreme Court's intervening decision in *Impression Prod., Inc. v. Lexmark Int'l, Inc.*, No. 15-1189, 2017 WL 2322830 (U.S. May 30, 2017).

In *Lexmark*, the Supreme Court addressed whether a patentee that sells or licenses an item under an express post-sale restriction may enforce that restriction through an infringement lawsuit. The Supreme Court held not, reasoning that "a patentee's decision to sell a product exhausts all of its patent rights in that item, regardless of any restrictions the patentee purports to impose or the location of the sale." *Id.* at *5. The Court held that post-sale restrictions may be enforceable under contract law, but such restrictions "do not entitle [the patentee] to retain patent rights in an item that it has elected to sell." *Id.* at *7.

Importantly, the Court also ruled that the result is the same where the patentee licenses to

9

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

another to sell, rather than selling itself; a patentee may not "use licenses to impose post-sale restrictions on *purchasers* that are enforceable through the patent laws." *Id.* at *12 (emphasis in original). Rather, if the licensee complies with the license when selling an item, the sale exhausts the patentee's rights in that item. *Id.* Again, if the purchaser does not comply with the post-sale restriction, "the only recourse for the licensee is through contract law." *Id.*

The Court recognized a limited exception where a licensee knowingly makes sales outside the scope of the license and the purchaser participates in the licensee's infringement, *i.e.*, the purchaser "knew about the breach." *Id.* In that limited case, the patentee can sue both the licensee and the purchaser for infringement. *Id.*

Here, however, the exception does not apply and *Lexmark* spells the end of UC's theory of liability for importation of seeds. At trial, the University proffered evidence—and strenuously argued—that Defendants obtained patented plant parts from the University's licensee, Eurosemillas. *See, e.g.*, Trial Tr. 183:12-14 (Krevans), 471:6-18 (Shaw), 496:16-497:2 (Shaw), 1150:7-10 (Shaw), 1213:16-22 (Krevans). As *Lexmark* held, the patentee (UC) cannot pursue patent infringement claims against the purchaser (Defendants) in that scenario unless the licensee (Eurosemillas) provided the material outside the scope of the licensee, and Defendants knowingly participated in that infringement.

In its binding interrogatory responses, however, the University took the position that Eurosemillas did *not* infringe its Master License Agreement with the University. *See* Decl. of Nathaniel P. Garrett Ex. A (responding to interrogatory asking UC to identify all breached license agreements by stating that "it does not currently allege … that test agreements or license agreements between the University and third parties were breached").[3] That concession—which is consistent with the jury's verdict rejecting the University's claims for interference with third-party contracts—follows naturally from the terms of the University's license with Eurosemillas.

---

[3] Defendants do not contend that this interrogatory response is "newly discovered evidence" or, on its own, justifies altering the judgment. Rather, Defendants proffer the interrogatory response because it bears directly on the Supreme Court's reasoning in *Lexmark* and precludes the University from arguing—as the University has indicated it intends to do—that Eurosemillas or Lassen Canyon breached their license with the University. *See* ECF No. 341.

In its license agreement with Eurosemillas, the University licensed each of the patented plants at issue here in exchange for a "License Issue Fee" and a future royalty payment. *See* Trial Ex. 37. Notably, the license agreement with Eurosemillas did *not* prohibit traditional breeding. Trial Tr. 680:12-681:2 (Carriere). The reason is straightforward: breeding of the University's patented strawberry varieties is legal in Spain. *See id.* at 964:22-965:1; ECF No. 339-1 ¶¶ 16-21.

The University thus seeks to pursue in this case the type of patent infringement claim *Lexmark* expressly extinguishes. Despite the fact that the University's patent rights have been exhausted through the sale via license by Eurosemillas, the University seeks to hold CBC liable for post-sale conduct, such as importation of patented plant parts. This, *Lexmarks* holds, the University may not do.

### D. Judgment as a Matter of Law Should be Granted on the University's Benchmarking Theory of Infringement; At the Least, the Judgment Should be Altered Under *Lexmark*.

#### 1. The University's Benchmarking Theory of Liability Does Not Survive *Lexmark*.

The Supreme Court's decision in *Lexmark* also dooms the University's benchmarking theory of patent liability. The University maintained that Defendants committed patent infringement by benchmarking with plants they purchased from Lassen Canyon. Trial Tr. 719:14-720:22; Trial Ex. 311. Again, however, *Lexmark* holds that "if a licensee complies with the license when selling an item, the patentee has, in effect, authorized the sale," and "[t]he sale exhausts the patentee's rights in that item." 2017 WL 2322830, at *12. The University has conceded that Lassen Canyon never breached its license agreement with the University, and there is no evidence to the contrary. Garrett Decl. Ex. A. Accordingly, the University cannot impose any post-sale restriction—such as a supposed restriction on benchmarking—against Defendants "through the patent laws." 2017 WL 2322830, at *12. The Court's judgment should be amended to enter judgment for Defendants on the University's benchmarking theory of liability.

#### 2. There is No Evidence the University Clearly Communicated a Restriction on Benchmarking to Defendants.

Even if the University's claim was measured against pre-*Lexmark* jurisprudence, judgment would have to be entered for Defendants because there is no evidence the University

11

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

clearly communicated a restriction on benchmarking to its licensees or to Defendants.

Before the Supreme Court invalidated patent infringement suits based on post-sale contractual restrictions, the law in the Federal Circuit was that a patentee may preserve its patent rights "through *clearly communicated*, otherwise-lawful restrictions." *Lexmark Int'l, Inc. v. Impression Prod., Inc.*, 816 F.3d 721, 742 (Fed. Cir. 2016) (emphasis added). This formulation reflected the settled rule that the customer must have notice of the post-sale restriction at the time of purchase. *See Arizona Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 987 n.6 (9th Cir. 2005). The purchaser, in other words, must "know[] of the restriction at the time of purchase." *Lexmark*, 816 F.3d at 744.

Here, however, Lassen Canyon never clearly communicated the restriction on benchmarking to Defendants, and the University never told Lassen Canyon to do so. Trial Tr. at 981:7-20 (VandenLangenberg). Indeed, it is not apparent that Lassen Canyon was even aware that the University intended for it to communicate restrictions on benchmarking to downstream purchasers, as the word benchmarking does not appear in the Lassen Canyon license agreement. *Id.* at 670:17-19, 671:9-11 (Carriere). While the University required Lassen Canyon to warn purchasers that "Use of the University of California strawberry cultivar '(name of Licensed Cultivar)' for fruit production in countries not authorized by the University of California and for propagation to parties not licensed by the University of California or its business partners IS PROHIBITED," Trial Ex. 36 § 15.2, Defendants never propagated the plants purchased from Lassen Canyon. Trial Tr. 979:10-980:1. And Defendants only "used" the plants for fruit production in the United States, a country authorized by the University. Trial Ex. 36 § 2.2.

In short, even if benchmarking *can* constitute "use" under the Plant Patent Act, pre-*Lexmark* law permitted a patentee to sue a purchaser only where restrictions on that use were "clearly communicated." Having failed to clearly communicate any prohibition on benchmarking to Defendants, the University cannot now be rewarded with a verdict for infringement.

**E.     Judgment as a Matter of Law Should be Granted on the Issue of Willfulness.**

Finally, judgment as a matter of law should be granted on the University's remaining claim of *willful* patent infringement (as to importation) because there is no evidence Defendants

12

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

knew, or should have known, their actions constituted infringement of a valid patent.

In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016), the Supreme Court held that willfulness turns on the *subjective* intent of the defendant, *i.e.*, whether the defendant acted despite a risk of infringement that was either known or so obvious that it should have been known to the infringer. *Id.* at 1930. Thus, willfulness required the University to prove by a preponderance of the evidence that Defendants knew, or it was so obvious Defendants should have known, that their actions constituted infringement of a valid and enforceable patent. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1364-65 (Fed. Cir. 2016); *Barry v. Medtronic, Inc.*, 2017 WL 1197854, at *12 (E.D. Tex. Jan. 25, 2017).

There is no evidence Defendants knew that importing seeds—created through lawful sexual reproduction in Spain—could constitute infringement under United States patent law. To the contrary, Defendants' witnesses uniformly testified that they bred in Spain precisely because they believed doing so immunized their conduct. *See, e.g.*, Trial Tr. 517:19-520:3 (Shaw); *id.* at 964:15-966:4 (VandenLangenberg).

Nor can the University credibly argue that it was obvious Defendants' conduct amounted to patent infringement. It is undisputed that the act of breeding in Spain is lawful, and there is ample authority that supports Defendants' reading of the Plant Patent Act to exclude seeds generated through sexual reproduction. *See Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1569-70 (Fed. Cir. 1995); Chengfei Ding, *The Protection for New Plant Varieties of American Businesses in China After China Enters the WTO*, 6 DRAKE J. AGRIC. L. 333, 343 (2001) (stating view that the PPA does not cover "the seeds that are produced sexually" from asexually reproduced plants). Even if the Court did not adopt Defendants' interpretation of the Plant Patent Act, the issue—which has never before been litigated—was not so obvious as to render Defendants' conduct willful.

### IV.   CONCLUSION

For these reasons, the Court should grant Defendants' motion for judgment as a matter of law or, in the alternative, motion for new trial, and should grant Defendants' motion to alter the judgment.

13

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC

Dated: June 9, 2017

Respectfully submitted,

Jones Day

By: */s/ Nathaniel P. Garrett*
    Nathaniel P. Garrett

Counsel for Cross-Complainant and Defendant CALIFORNIA BERRY CULTIVARS, LLC and Defendants DOUGLAS SHAW and KIRK LARSON

14

Defs.' Bench Tr. Brief
Case No. 3:16-CV-02477-VC