# Exhibit 9

**Non-Exclusive License Agreement**

**between**

**The Regents of the University of California**

**and**

**Lassen Canyon Nursery, Inc.**

**for the**

**University of California Strawberry Cultivars**

20090915



U.C. AGREEMENT
CONTROL NUMBER
2009-01-5013

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

| **ARTICLE** | **PAGE** |
|---|---|

Recitals .................................................................................................................... 1

1.   Definitions ........................................................................................................ 2
2.   Grant .............................................................................................................. 5
3.   Royalties ........................................................................................................ 8
4.   Use of the UC Strawberry Plant Tracking System .................................... 12
5.   Due Diligence .............................................................................................. 13
6.   Royalty Reports ........................................................................................... 14
7.   Books and Records ...................................................................................... 15
8.   Life of the Agreement ................................................................................. 15
9.   Termination by The Regents ....................................................................... 16
10.   Termination by Licensee ............................................................................. 17
11.   Sale of Licensed Products on Hand Upon Termination or Expiration ......... 17
12.   Use of Names ............................................................................................... 18
13.   Limited Warranty ......................................................................................... 19
14.   Limitation of Liability ................................................................................. 20
15.   Patent Marking ............................................................................................. 20
16.   Indemnification ............................................................................................ 21
17.   Notices ......................................................................................................... 21
18.   Assignability ................................................................................................ 22
19.   Compliance With Laws ................................................................................ 23
20.   Late Payments .............................................................................................. 23
21.   Waiver .......................................................................................................... 23
22.   Governing Laws; Venue; Attorneys' Fees ................................................... 24
23.   Government Approval or Registration ......................................................... 24
24.   Force Majeure .............................................................................................. 24
25.   Confidentiality ............................................................................................. 25
26.   Miscellaneous .............................................................................................. 27

Appendix 1

i

20090915

Non-Exclusive License Agreement
for the University of California Strawberry Cultivars

This license agreement ("Agreement") is effective this September 15, 2008, by and between The Regents of the University of California ("The Regents"), a California corporation, having its statewide administrative offices at 1111 Franklin Street, 12th Floor, Oakland, California 94607-5200, as represented by the Davis campus Technology Transfer Services, having its administrative office at 1850 Research Park Drive, Suite 100, Davis, California 95618-6134, and Lassen Canyon Nursery, Inc. ("Licensee"), having a principal place of business at 1300 Salmon Creek Road, Redding, California 96001.

Recitals

Whereas, the Licensed Cultivars, as listed in Appendix 1 below, are useful for fruit production, were produced by Royce Bringhurst and Douglas Shaw at the University of California, Davis ("UCD") and Victor Voth and Kirk Larson at the University of California, South Coast Research and Extension Center, Irvine ("Inventors"), and are claimed in Plant Protection Rights defined below;

Whereas, the Inventors have assigned to The Regents all right, title, and interest in the patent applications and resulting patents specified in Plant Protection Rights claiming the Licensed Cultivars;

Whereas, Licensee and The Regents entered into a prior license agreement, effective October 31, 2006 and having UC Control Number 2007-01-5024, granting Licensee the right to use, Sell, and have Sold certain Licensed Products ("Prior License Agreement"); and

1

20090915

U.C. AGREEMENT
CONTROL NUMBER
2009-01-5013

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY   UC_STRAW2_000092184

Whereas, The Regents desires that the Prior License Agreement be replaced with this Agreement to increase the royalty rates, to further the harmonization of the legal rights and responsibilities of Licensee with operation of the new UC Strawberry Plant Tracking System, and to ensure that the Licensed Cultivars and other benefits can be enjoyed by the general public.

- - oo 0 oo - -

The parties agree as follows:

1.      Definitions

As used in this Agreement, the following terms, whether used in the singular or plural, have the following meanings:

1.1     "Plant Protection Rights" means all United States patent applications and patents issuing thereon and assigned to The Regents, including any reissues and extensions, based on the subject matter claimed in Appendix 1 attached as hereto (or as may be amended by agreement in writing between the parties).

1.2     "Licensed Products" means plants or plant parts of the Licensed Cultivar and the seed, progeny (including seedling progeny), and derivatives of such plants and plant parts including, but not limited to:

    1.2(a)     plants or vegetative material in test tubes;

    1.2(b)     any vegetative material capable of being asexually propagated or micropropagated;

    1.2(c)     meristematic material;

    1.2(d)     bareroot plants;

    1.2(e)     plants in soil or other nutritive material; and

2

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092185

1.2(f)   plant tissue capable of being propagated either in tissue culture or by any other means;

the propagation, use, Sale, offer for Sale or import, of which, but for the license granted in this Agreement, would infringe, or contribute to or induce the infringement of, any Plant Protection Rights.

1.3   "Master Licensee Sales Territory" means those countries comprising the territory of a Master Licensee where Licensed Products are permitted to be Sold for fruit production or Sold to a sublicensee of a Master Licensee for propagation.

1.4   "Direct Sales Territory" means countries outside of the Master Licensee Sales Territory where Sale of Licensed Products is permitted for fruit production only.  The United States and Canada are excluded from the Direct Sales Territory.

1.5   "Master Licensee" currently means the following:

1.5(a)   Eurosemillas, S.A.
Paseo de la Victoria 31-1°
14004 Cordoba, Spain
eurosemillas@eurosemillas.com
+34 957 421732
in Argentina, Brazil, Chile, China, Egypt, the European Union, India, Israel, Jordan, Mexico, Morocco, Romania, Tunisia, and Turkey;

1.5(b)   Zanzi Fruitgrowing Equipment, s.r.l.
Via Modena 19
44100 Ferrara, Italy
zanzifruit@zanzifruit.it
+39 053 2772288
in Bulgaria, Egypt, Italy, and Hungary;

1.5(c)   Toolangi Strawberry Runner Growers Cooperative in Australia;

1.5(d)   New Zealand Berryfruit Propagators in New Zealand; and

1.5(e)   Southern Resource Services in South Africa.

3

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1.6    "Sale" means the act of selling, leasing or otherwise transferring, distributing, providing, or furnishing for use.  Correspondingly, "Sell" means to make or cause to be made a Sale, and "Sold" means to have made or caused to be made a Sale.

1.7    "Report Year" means the year commencing January 1 and ending on December 31.

1.8    "Regents' Licensee" means a nursery (other than Licensee) in the United States and Canada that is licensed by The Regents to asexually propagate and Sell Licensed Products to growers for fruit production.

1.9    "California Funding Amount" means the annual contribution made by the California Strawberry Commission ("CSC") to the strawberry breeding program at UCD.  Such amount is equal to Eighty Cents ($.80) based on each unit comprised of One Thousand (1,000) Licensed Products and other patented strawberry cultivars with unexpired United States plant patents belonging to The Regents Sold to California growers for fruit production during the twelve (12)-month period beginning on July 1 and ending on June 30 preceding the contribution due date of the following February 28 up to a maximum of Three Hundred and Fifty Thousand Dollars ($350,000).

1.10    "UC Strawberry Plant Tracking System" means the electronic, internet-based software program located at www.ucplanttracking.net, operated by The Regents, and built to provide real-time shipping information to and from University of California strawberry licensees, Master Licensees, and The Regents.

1.11    "Final Shipping Confirmation Number" means a unique number assigned by the UC Strawberry Plant Tracking System to an individual plant shipment after final shipment details are electronically submitted by Licensee.

1.12    "Licensee Funding Amount" means the annual contribution made by Licensee to the strawberry breeding program at UCD.  Such amount is calculated at the rate of One Dollar ($1.00)

4

20090915

based on each unit comprising One Thousand (1,000) Licensed Products Sold. The annual contribution period will be the twelve (12)-month period beginning on July 1 and ending on June 30 preceding the contribution due date of the following March 31, beginning on March 31, 2009, for the combined total of Licensed Products Sold to the following parties:

> 1.12(a)   growers to whom the Licensed Products are Sold for fruit production in the United States and Canada, and the Direct Sales Territory, excluding growers within California.

Any Sale of the Licensed Products by Licensee to a customer in the Master Licensee Sales Territory, to a grower for fruit production in California, and to Regents' Licensees in the United States and Canada for further propagation, will not be included as part of the calculation of the Licensee Funding Amount paid to the strawberry breeding program at UCD.

## 2.     Grant

2.1     Subject to the limitations set forth in this Agreement, The Regents hereby grants to Licensee under Plant Protection Rights the non-exclusive right to asexually propagate Licensed Products on land owned or controlled by Licensee only in California, Idaho, Nevada, Oregon, Utah, and Washington.

2.2     Subject to the limitations set forth in this Agreement, The Regents hereby grants to Licensee under Plant Protection Rights the non-exclusive right to use, Sell, offer for Sale, and have Sold Licensed Products to growers for fruit production only in the United States, Canada, the Direct Sales Territory, and the Master Licensee Sales Territory. The countries comprising the Direct Sales Territory and Master Licensee Sales Territory will be modified from time to time based on the status of The Regents' intellectual property and licensing rights for each country and for each Licensed Cultivar. Accordingly, the countries comprising the Master Licensee Sales Territory and

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UC_STRAW2_000092188

the Direct Sales Territory, and the final authorization for shipments of Licensed Products to the Master Licensee Sales Territory and the Direct Sales Territory for fruit production, are provided to Licensee in real-time by accessing the UC Strawberry Plant Tracking System.

2.3     Subject to the limitations set forth in this Agreement, The Regents hereby grants to Licensee under Plant Protection Rights the non-exclusive right to use, Sell, offer for Sale, and have Sold Licensed Products for asexual propagation only to Regents' Licensees in the United States and Canada and to sublicensees of the Master Licensee in the Master Licensee Sales Territory.  The countries comprising the Master Licensee Sales Territory will be modified from time to time based on the status of The Regents' intellectual property and licensing rights in each country and for each Licensed Cultivar.  Accordingly, the countries comprising the Master Licensee Sales Territory, and the final authorization for shipments of Licensed Products to the Master Licensee Sales Territory for propagation, are provided to Licensee in real-time by accessing the UC Strawberry Plant Tracking System.

2.4     Subject to the limitations set forth in this Agreement, The Regents hereby grants to Licensee under Plant Protection Rights the non-exclusive right to receive Licensed Products for further propagation only from Regents' Licensees in the United States.

2.5     The rights and licenses granted to Licensee under Paragraphs 2.1, 2.2, 2.3, and 2.4 above under Plant Protection Rights are limited to those rights and licenses expressly stated in this Agreement.  No other rights are granted, and any Sale of Licensed Products not expressly authorized under this Agreement is prohibited.

2.6     Licensee may Sell Licensed Products directly or have the Licensed Products Sold by a third party.

6

20090915

2.7     If Licensee Sells Licensed Products directly or has the Licensed Products Sold by a third party, Licensee hereby warrants that all such Sales be in compliance with the geographic limitation set forth in Paragraphs 2.2 and 2.3 above.  If The Regents determines that any Sale is in breach of this warrant, then The Regents will have the right to impose a penalty on Licensee in the amount of Ten Thousand Dollars ($10,000) for each such Sale.  The Regents will notify Licensee of such penalties, and the amount owed, in writing, and Licensee will pay The Regents the amount owed within thirty (30) days of the receipt of such notice.  The UC Strawberry Plant Tracking System will provide Licensee with a Final Shipping Confirmation Number once the final shipping details are confirmed by Licensee.  After Licensee receives a Final Shipping Confirmation Number, The Regents forfeits any right to impose the $10,000 penalty described above for the individual shipment to which the Final Shipping Confirmation Number applies.

2.8     Licensee will not:

    2.8(a)     alter the Licensed Cultivars and Licensed Products through genetic engineering techniques, including introducing new genes, gene fragments, or other DNA or RNA ("Genetic Material") into the plant material comprising the Licensed Cultivar and Licensed Products;

    2.8(b)     use the Licensed Cultivars and the Licensed Products for traditional breeding purposes, e.g., using the Licensed Products for cross-pollinating with other plant genotypes to create new varieties;

    2.8(c)     alter the Licensed Cultivars and Licensed Products by inducing genetic mutations, e.g., using ethyl methyl sulfate (EMS) or gamma radiation to create new varieties; or

    2.8(d)     except as consented to in writing by The Regents for the purpose of ensuring compliance with Subparagraph 5.2(a)i, extract Genetic Material from Licensed Products for any purpose.

Licensee is further prohibited from allowing any third party to perform any action prohibited in this Paragraph 2.8.

7

20090915

2.9     Licensee is prohibited from propagating Licensed Products outside of California, Idaho, Nevada, Oregon, Utah, and Washington or from importing Licensed Products propagated outside the United States.

2.10    Nothing in this Agreement will be deemed to limit the right of The Regents to publish any and all technical data resulting from any research performed by The Regents relating to the Licensed Products or to limit the right of The Regents to propagate, use, import, offer for Sale, and Sell the Licensed Cultivars or Licensed Products and allow others to do so.

3.      Royalties

3.1     As consideration for all the rights and licenses granted to Licensee, Licensee will pay to The Regents a royalty at the following rates:

3.1(a)  For the Sale of Licensed Products to a grower for fruit production in California:

(i)     For the time period commencing September 15, 2008 and ending September 14, 2009, Licensee will pay to The Regents a royalty at the rate of Four Dollars ($4.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.  Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Six Dollars ($6.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should the CSC not pay the California Funding Amount to The Regents.

(ii)    For the time period commencing September 15, 2009 and ending September 14, 2010, Licensee will pay to The Regents a royalty at the rate of Five Dollars ($5.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.  Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Seven Dollars ($7.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should the CSC not pay the California Funding Amount to The Regents.

(iii)   For the time period commencing September 15, 2010 and continuing thereafter during the term of this Agreement, Licensee will pay to The Regents a royalty at the rate of Six Dollars ($6.00) based on each unit

8

20090915

comprised of One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Eight Dollars ($8.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should the CSC not pay the California Funding Amount to The Regents.

3.1(b)    For the Sale of Licensed Products to a grower for fruit production in Canada and the United States outside of California:

(i)    For the time period commencing September 15, 2008 and ending September 14, 2009, Licensee will pay to The Regents a royalty at the rate of Six Dollars ($6.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Seven Dollars and Fifty Cents ($7.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should Licensee not pay the Licensee Funding Amount to The Regents.

(ii)    For the time period commencing September 15, 2009 and continuing thereafter during the term of this Agreement, Licensee will pay to The Regents a royalty at the rate of Seven Dollars and Fifty Cents ($7.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Nine Dollars ($9.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should Licensee not pay the Licensee Funding Amount to The Regents.

3.1(c)    For the Sale of Licensed Products to a grower for fruit production in the Direct Sales Territory:

(i)    For the time period commencing September 15, 2008 and ending September 14, 2009, Licensee will pay to The Regents a royalty at the rate of Ten Dollars and Ten Cents ($10.10) based on each unit comprised of One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Twelve Dollars and Fifty Cents ($12.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should Licensee not pay the Licensee Funding Amount to The Regents.

(ii)    For the time period commencing September 15, 2009 and ending September 14, 2010, Licensee will pay to The Regents a royalty at the

9

20090915

UC_STRAW2_000092192

rate of Twelve Dollars and Ten Cents ($12.10) based on each unit comprised on One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Fourteen Dollars and Fifty Cents ($14.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should Licensee not pay the Licensee Funding Amount to The Regents.

(iii)    For the time period commencing September 15, 2010 and continuing thereafter during the term of this Agreement, Licensee will pay to The Regents a royalty at the rate of Fourteen Dollars and Ten Cents ($14.10) based on each unit comprised on One Thousand (1,000) Licensed Products Sold.  Notwithstanding the foregoing, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Sixteen Dollars and Fifty Cents ($16.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold should Licensee not pay the Licensee Funding Amount to The Regents.

3.2     The Sale of Licensed Products to Regents' Licensees in the United States and Canada for further asexual propagation will be royalty free.  Licensee will verify with The Regents that such Regents' Licensees are licensed in good standing.

3.3     Royalties on the Sale of Licensed Products to a sublicensee of a Master Licensee or to a grower for fruit production in the Master Licensee Sales Territory will be collected in the respective Master Licensee Sales Territory by the Master Licensee.

3.4     Failure of Licensee to pay the Licensee Funding Amount by March 31 of the year in which such amount is due and owing will be considered an election by Licensee not to contribute funds to the strawberry breeding program at UCD.  In such event, the royalty rates will be the higher rates specified in the applicable Subparagraphs 3.1(b) and 3.1(c) above for the Report Year in which Licensee Funding Amounts were due and owing and in each subsequent year in which the Licensee Funding Amounts are not paid.

10

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092193

3.5     The Regents may increase the California Funding Amount and the Licensee Funding Amount ("Funding Amounts") once every three (3) years by an amount equal to the increase in the Consumer Price Index as maintained by the United States Bureau of Labor Statistics for the prior three (3)-year period.

3.6     The Regents may raise the royalty rates specified in Paragraph 3.1 above by giving notice to the Licensee at least six (6) months prior to the date in which such increased royalty rates will become effective.

3.7     For the duration of this Agreement, royalties will accrue to The Regents when Licensed Products are propagated and will be payable to The Regents when Licensed Products are invoiced, or if not invoiced, when Sold to a third party.  When the Licensee uses Licensed Products for fruit production, then The Regents will be entitled to collect a royalty on such use of Licensed Products in accordance with the royalty rates, bases, and times set forth in this Article 3 (Royalties).

3.8     Royalties accruing to The Regents will be reported and paid to The Regents semiannually on or before the following dates of the Report Year:

- November 30 for the period commencing on January 1 and ending on June 30; and

- May 31 for the period commencing on July 1 and ending on December 31.

3.9     In the event that any patent or any claim thereof included within the Plant Protection Rights is held invalid in a final decision by a court of competent jurisdiction and last resort and from which no appeal has or can be taken, all obligation to pay royalties based on such patent or claim, or any claim patentably indistinct therefrom, will cease as of the date of such final decision. Licensee will not, however, be relieved from paying any royalties that accrued before such decision.

11

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UC_STRAW2_000092194

3.10    Licensee is granted a waiver of royalties on up to two percent (2%) of its total annual Sales for uncollectible debt.  Written evidence of the uncollected debt will be provided by Licensee to The Regents at the time of submission of the associated royalty report.

3.11    Licensee is granted a waiver of royalties on up to five percent (5%) of its total annual Sales for providing replacement plants when both the original and replacement plants were provided by Licensee at no charge to its customers.  Written evidence of having provided replacement plants will be provided by Licensee to The Regents at the time of submission of the associated royalty report.

## 4.    Use of the UC Strawberry Plant Tracking System

4.1    Licensee will submit for approval to the UC Strawberry Plant Tracking System for all Sales of Licensed Products outside of the United States and Canada.  Licensee will not ship Licensed Products to a customer outside of the United States and Canada until receiving authorization in electronic format from the UC Strawberry Plant Tracking System.   In the event of unavailability of the UC Strawberry Plant Tracking System, and only in such event, Licensee may seek electronic or written authorization from the respective Master Licensee (at the contact information provided in Paragraph 1.5) or The Regents (in the manner specified in Article 17 (Notices)) when shipping to the Master Licensee Sales Territory, or similarly from The Regents when shipping to the Direct Sales Territory.

4.2    After receiving authorization for a plant shipment and within forty-eight (48) hours from the time of departure of the shipment from Licensee's facilities, Licensee will submit shipping details including shipping date, plant number by variety, and destination, to the UC Strawberry Plant Tracking System.  Once the final customer destination and exact number of plants is known,

12

20090915

Licensee will electronically submit the information as a "Final Shipping Confirmation." The "Final Shipping Confirmation" will be submitted by Licensee within one week from the time of departure of the shipment from Licensee's facilities. After submitting the Final Shipping Confirmation, the UC Strawberry Plant Tracking System will then automatically provide a Final Shipping Confirmation Number.

4.3     Once a Final Shipping Confirmation Number is obtained, The Regents forfeits any right to impose the $10,000 penalty described in Paragraph 2.7 for the individual shipment to which the Final Shipping Confirmation Number applies.

## 5.     Due Diligence

5.1     Licensee, upon execution of this Agreement, will diligently proceed with asexual propagation and Sale of Licensed Products and will diligently market the same after execution of this Agreement.

5.2     If Licensee is unable to:

    5.2(a)     Meet quality assurance provisions specifying that all Licensed Products Sold:

        i     are true to cultivar;

        ii     have been asexually propagated and handled in a manner consistent with any mandatory local, regional, national, or international certification programs for the intended market governing the asexual propagation of plant varieties where Licensed Products have been propagated and have been Sold; and

        iii     have been propagated and handled in a manner consistent with the current industry standard to prevent infestation with disease-causing or disease-transmitting organisms or pests harmful to the commercial quality of the Licensed Products; and

    5.2(b)     Sell at least three million (3,000,000) Licensed Products in a Report Year;

13

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UC_STRAW2_000092196

then The Regents will have the right to terminate this Agreement under the provisions of Paragraph 9.1.  The exercise of this right by The Regents supersedes the rights granted in Article 2 (Grant).

6.      <u>Royalty Reports</u>

6.1     After execution of this Agreement, Licensee will provide The Regents with semiannual royalty reports on or before November 30 for the period commencing on January 1 and ending on June 30, and May 31 for the period commencing on July 1 and ending on December 31, as specified in Paragraph 3.8 above.

6.2     Each royalty report will include the following information:

6.2(a)     the semiannual reporting period above;

6.2(b)     the name of the Licensed Cultivars used or Sold;

6.2(c)     the total number of Licensed Products used by Licensee or Sold to growers for fruit production; the total number of Licensed Products Sold for propagation; and a total of all Licensed Products used or Sold;

6.2(d)     the names of the Regents' Licensees and the sublicensees of the Master Licensee to whom Licensed Products have been Sold and the date of Sale, and number of Licensed Products, by cultivar name, Sold to Regents' Licensees and sublicensees of the Master Licensee;

6.2(e)     the state or country of destination where Licensed Products have been Sold;

6.2(f)     any applicable written evidence pursuant to Paragraphs 3.10 and 3.11 above; and

6.2(g)     the total royalties payable hereunder with respect to Licensed Products Sales and plants Sold.

6.3     If Licensee has not Sold any Licensed Products during a reporting period, then Licensee will make a statement to this effect on its report for that reporting period.

14

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY        UC_STRAW2_000092197

## 7.   Books and Records

7.1     Licensee will keep books and records accurately showing all Licensed Products propagated, used, and Sold under the terms of this Agreement.  Such books and records will be preserved for at least five (5) years after the date of the royalty payment to which they pertain and will be open to inspection by representatives or agents of The Regents during normal business hours to determine the accuracy of the books and records, and to determine compliance by Licensee with the terms of this Agreement.

7.2     The Regents' representatives or agents will also have the right to inspect, during normal business hours, fields, greenhouses, laboratories, storage buildings, warehouses, etc. of the Licensee to verify quality standards and quantities of Licensed Products propagated and Sold with respect to the reported information in Licensee's books and records, and to determine compliance by Licensee with the terms of this Agreement.

7.3     The fees and expenses of representatives of The Regents for performing such examinations will be borne by The Regents.  If, however, an error in royalties of more than five percent (5%) of the total royalties due for any Report Year or any material breach of the terms of this Agreement is discovered, then the fees and expenses of these representatives will be borne by Licensee.  The Licensee will remit any underpayment to The Regents within thirty (30) days of the examination result.

## 8.   Life of the Agreement

8.1     Unless otherwise terminated by operation of law or by acts of the parties in accordance with the terms of this Agreement, this Agreement will be in force from the effective date recited on

15

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092198

page one and will remain in effect until the expiration of the last-to-expire patent or last-to-be-abandoned patent application contained in Plant Protection Rights, whichever is later.

8.2    Any termination or expiration of this Agreement will not affect the rights and obligations set forth in the following Articles:

| Article | 1 | Definitions; |
|---|---|---|
| Article | 3 | Royalties; |
| Article | 7 | Books and Records; |
| Article | 8 | Life of the Agreement; |
| Article | 11 | Sale of Licensed Products on Hand Upon Termination or Expiration; |
| Article | 12 | Use of Names; |
| Article | 13 | Limited Warranty; |
| Article | 14 | Limitation of Liability; |
| Article | 16 | Indemnification; |
| Article | 17 | Notices; |
| Article | 20 | Late Payments; |
| Article | 22 | Governing Laws; Venue; Attorneys' Fees; and |
| Article | 25 | Confidentiality. |

8.3    The termination or expiration of this Agreement will not relieve Licensee of its obligation to pay any fees or royalties owed to The Regents at the time of such termination or expiration and will not impair any accrued right of The Regents.

## 9.    Termination by The Regents

9.1    If Licensee should violate or fail to perform any material term of this Agreement, including, but not limited to, the provisions of Article 5 (Due Diligence), then The Regents may give written notice of such default ("Notice of Default") to Licensee.  If Licensee should fail to repair such default within sixty (60) days after the date such notice takes effect, The Regents will have the right to terminate this Agreement and the licenses herein by a written notice ("Notice of

16

20090915

Termination") to Licensee.  If a Notice of Termination is sent to Licensee, this Agreement will automatically terminate on the date such notice takes effect.

9.2     The Regents also has the right to terminate this Agreement and the licenses herein with respect to the Plant Protection Rights without cause at any time upon one hundred and eighty (180) days' written notice to Licensee.

## 10.     Termination by Licensee

10.1     Licensee will have the right, at any time, to terminate this Agreement, in whole or as to any portion of Plant Protection Rights, by giving notice in writing to The Regents.  Termination of this Agreement will be effective sixty (60) days after the effective date thereof.

## 11.     Sale of Licensed Products on Hand Upon Termination or Expiration

11.1     Upon expiration or upon receipt of a Notice of Termination by either party, Licensee will not plant any additional plants of Licensed Products.  Licensee will have the privilege of growing, harvesting, and Selling all previously planted Licensed Products and their immediate progeny and will have the privilege of marketing the harvested Licensed Products, including the Licensed Products harvested prior to the expiration or receipt of a Notice of Termination, but no more, within a period of two hundred and forty (240) days from the expiration or termination of this Agreement or until the following September 15, whichever is sooner, provided however, that the Sale of such Licensed Products will be subject to the terms of this Agreement including, but not limited to, the payment of royalties at the rates and at the times provided herein and the rendering of reports in connection therewith.  Thereafter, Licensee will destroy its entire remaining inventory of Licensed Products.

17

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092200

## 12.    Use of Names

12.1    The use of the name "University of California," any contractions thereof or reference thereto by Licensee in any advertisement, labeling, or publicity relating to Licensed Products will be allowed only in the following manner:

12.1(a)    with respect to Licensee being a non-exclusive propagator of the Licensed Cultivars in California, Idaho, Nevada, Oregon, Utah, and Washington, Licensee will have the right to use the name, "University of California," only in the following prescribed manner: "Lassen Canyon Nursery, Inc. is a non-exclusive licensee of the University of California in California and is granted the right to propagate the cultivar '(name of Licensed Cultivar)' in California, Idaho, Nevada, Oregon, Utah, and Washington.";

12.1(b)    with respect to describing the origination and characteristics of Licensed Products for advertising purposes, Licensee will be entitled to use the name, "University of California," only to provide factual and truthful information and will not use the name to imply endorsement by the University of California of either Licensee or of the performance of the Licensed Products and Licensed Cultivars;

12.1(c)    further, with respect to exercise of any of the other Subparagraphs of this Paragraph 12.1, the use of the name, "University of California," will be restricted to the text of any advertisement relating to Licensed Products and will not be set apart from said text by either bold-faced print or dissimilar lettering. The use of the name, "University of California," in either titles, subtitles, or apart from other text is prohibited;

12.1(d)    should Licensee use any advertisement relating to Licensed Products or to the University of California which The Regents finds objectionable for any reason, Licensee will promptly stop the use of such advertisement upon written notification by The Regents; and

12.1(e)    any other use of the name, "The Regents of the University of California," or, "University of California," is expressly prohibited.

12.2    In the event The Regents chooses to identify Licensed Cultivars with a trademark ("UC Trademark"), and if The Regents so requests in writing, Licensee agrees (a) to use the UC Trademark on or with Licensed Products Sold by or offered for Sale by Licensee, and in related promotional materials produced or used by Licensee, in the manner requested by The Regents, and

18

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UC_STRAW2_000092201

(b) with respect to any such Sales, offers for Sale or promotional materials, to not use any name or trademark that is confusingly similar to or suggestive of, or that would otherwise conflict with or dilute, the UC Trademark.

### 13.    Limited Warranty

13.1    The Regents warrants to Licensee that it has the lawful right to grant this license.

13.2    This license, the Plant Protection Rights, the Licensed Products, and the Licensed Cultivars are provided WITHOUT WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED.  THE REGENTS MAKES NO REPRESENTATION OR WARRANTY THAT THE PLANT PROTECTION RIGHTS, LICENSED PRODUCTS, OR LICENSED CULTIVARS WILL NOT INFRINGE ANY PATENT OR OTHER PROPRIETARY RIGHT.

13.3    Nothing in this Agreement will be construed as:

13.3(a)    a warranty or representation by The Regents as to the validity, enforceability, or scope of any Plant Protection Rights;

13.3(b)    a warranty or representation that anything made, used, Sold, or otherwise disposed of under any license granted in this Agreement is or will be free from infringement of patents of third parties;

13.3(c)    an obligation to bring or prosecute actions or suits against third parties for patent infringement;

13.3(d)    conferring by implication, estoppel, or otherwise any license or rights under any patents or other intellectual property rights of The Regents other than Plant Protection Rights; or

13.3(e)    an obligation to furnish any know-how.

19

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    UC_STRAW2_000092202

14.    Limitation of Liability

14.1    THE REGENTS WILL NOT BE LIABLE FOR ANY LOST PROFITS, COSTS OF PROCURING SUBSTITUTE GOODS OR SERVICES, LOST BUSINESS, ENHANCED DAMAGES FOR INTELLECTUAL PROPERTY INFRINGEMENT, OR FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER SPECIAL DAMAGES SUFFERED BY LICENSEE ARISING OUT OF OR RELATED TO THIS AGREEMENT FOR ALL CAUSES OF ACTION OF ANY KIND (INCLUDING TORT, CONTRACT, NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY) EVEN IF THE REGENTS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

15.    Patent Marking

15.1    Licensee will attach to Licensed Products Sold under the terms of this Agreement, or their boxes, pallets, or containers, a durable and legible label or tag specifying:

15.1(a)    the correct name of the Licensed Cultivars; and

15.1(b)    the corresponding patent number.

15.2    The Licensee will provide written notice to its customers of the following limitations set forth in this Agreement: "NOTICE TO PURCHASER: Use of the University of California strawberry cultivar '(name of Licensed Cultivar)' for fruit production in countries not authorized by the University of California and for propagation to parties not licensed by the University of California or its business partners IS PROHIBITED." This notice will be placed prominently on a bill of lading or invoice, and boxes, pallets, or containers of Licensed Products.

20

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

16.    Indemnification

16.1    Licensee will indemnify, hold harmless, and defend The Regents, its officers, employees, and agents; the sponsors of the research that led to the Plant Protection Rights, Licensed Products and Licensed Cultivars; the Inventors of any invention covered by Plant Protection Rights (including the Licensed Products or the Licensed Cultivars claimed thereunder) and their employers against any and all claims, suits, losses, damage, costs, fees, and expenses resulting from or arising out of exercise of this license. This indemnification will include, but will not be limited to, any product liability. If The Regents, in its sole discretion, believes that there will be a conflict of interest or it will not otherwise be adequately represented by counsel chosen by the Licensee to defend The Regents in accordance with this Paragraph 16.1, then The Regents may retain counsel of its choice to represent it, and the Licensee will pay all expenses for such representation.

16.2    The Regents will promptly notify Licensee in writing of any claim or suit brought against The Regents in respect of which The Regents intends to invoke the provisions of this Article 16 (Indemnification).  Licensee will keep The Regents informed on a current basis of its defense of any claims pursuant to this Article 16 (Indemnification).

17.    Notices

17.1    Any notice or payment required to be given to either party will be deemed to have been properly given and to be effective:

        17.1(a)    on the date of delivery if delivered in person; or

        17.1(b)    on the date of mailing if mailed by first class certified mail, postage paid; or

        17.1(c)    on the date of mailing if mailed by any global express carrier service that requires the recipient to sign the documents demonstrating the delivery of such notice or payment;

21

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                          UC_STRAW2_000092204

to the respective addresses given below, or to another address as designated by written notice given by the party changing its address.

| | |
|---|---|
| In the case of Licensee: | Lassen Canyon Nursery, Inc.<br>1300 Salmon Creek Road<br>Redding, CA 96001<br>Attention:    Liz Ponce |
| For notices to The Regents: | University of California, Davis<br>UC Davis InnovationAccess<br>Technology Transfer Services<br>1850 Research Park Drive, Suite 100<br>Davis, CA  95618-6134<br>Attention: Director<br>Referring to:  UC Case No. (as indicated in Appendix 1) |
| For payment to The Regents: | The Regents of the University of California<br>1111 Franklin Street, 5th Floor<br>Oakland, CA 94607-5200<br>Attention:    Executive Director,<br>             Research Administration and<br>             Technology Transfer<br>Referring to:  UC Case No. (as indicated in Appendix 1) |

### 18.   Assignability

18.1   This Agreement is personal to Licensee.  Licensee will not assign or transfer this Agreement, including by merger, operation of law, or otherwise, without The Regents' prior written consent.  This Agreement is binding upon and will inure to the benefit of The Regents, its successors and assigns.

22

20090915

UC_STRAW2_000092205

## 19.    Compliance With Laws

19.1    The Licensee will comply with all applicable international, national, state, regional and local laws and regulations in performing its obligations hereunder and in its use and licensing of Licensed Products.   The Licensee will observe all applicable United States and foreign laws with respect to the transfer of Licensed Products and related technical data to foreign countries, including, without limitation, the International Traffic in Arms Regulations (ITAR) and the Export Administration Regulations.

## 20.    Late Payments

20.1    In the event royalty payments or fees are not received by The Regents when due, Licensee will pay to The Regents interest charges at a rate of ten percent (10%) simple interest per annum.  Such interest will be calculated from the date payment was due until actually received by The Regents.  Such accrual of interest will be in addition to, and not in lieu of, enforcement of any other rights of The Regents due to such late payment.  Acceptance by The Regents of any late payment interest from Licensee under this Article 20 (Late Payments) will in no way affect the provision of Article 21 (Waiver) herein.

## 21.    Waiver

21.1    It is agreed that no waiver by either party hereto of any breach or default of any of the agreements herein set forth will be deemed a waiver as to any subsequent and/or similar breach or default.  No waiver will be valid or binding upon the parties unless made in writing and signed on behalf of each party.

23

20090915

22.    Governing Laws; Venue; Attorneys' Fees

22.1    THIS AGREEMENT WILL BE INTERPRETED AND CONSTRUED IN

ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, excluding any choice of

law rules that would direct the application of the laws of another jurisdiction, but the scope and

validity of any Plant Protection Rights will be governed by the applicable laws of the country of

such Plant Protection Rights.

22.2    Any legal action related to this Agreement will be conducted in San Francisco,

California.

22.3    The prevailing party in any suit related to this Agreement will be entitled to recover its

reasonable attorneys' fees in addition to its costs and necessary disbursements.


23.    Government Approval or Registration

23.1    If this Agreement or any associated transaction is required by the law of any country to

be either approved or registered with any governmental agency, Licensee will assume all legal

obligations to do so.  Licensee will notify The Regents if Licensee becomes aware that this

Agreement is subject to a reporting or approval requirement.  Licensee will make all necessary

filings and pay all costs including fees, penalties, and all other out-of-pocket costs associated with

such reporting or approval process.


24.    Force Majeure

24.1    Except for Licensee's obligation to make any payments to The Regents hereunder, the

parties will not be responsible for any failure to perform due to the occurrence of any events beyond

their reasonable control which render their performance impossible or onerous, including, but not

24

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092207

limited to: accidents (environmental, toxic spill, etc.); acts of God; biological or nuclear incidents; casualties; earthquakes; fires; floods; governmental acts, orders or restrictions; inability to obtain suitable and sufficient labor, transportation, fuel and materials; local, national, or state emergency; power failure and power outages; acts of terrorism; strike; and war.  When such events have abated, the parties' respective obligations hereunder will resume.

24.2    Either party to this Agreement, however, will have the right to terminate this Agreement upon thirty (30) days' prior written notice if either party is unable to fulfill its obligations under this Agreement due to any of the causes mentioned above and such inability continues for a period of one (1) year.

## 25.    Confidentiality

25.1    The Licensee and The Regents will treat and maintain the other party's proprietary business, process and technical information, information relating to the prosecution of Plant Protection Rights, and other proprietary information ("Proprietary Information") in confidence using at least the same degree of care as the receiving party uses to protect its own proprietary information of a like nature from the date of disclosure until five (5) years after the termination or expiration of this Agreement.

25.2    The Licensee and The Regents may use and disclose Proprietary Information to their employees, agents, consultants, and contractors, provided that such parties are bound by a like duty of confidentiality as that found in this Article 25 (Confidentiality).  Notwithstanding anything to the contrary contained in this Agreement, The Regents may release this Agreement, including any terms contained herein, and information regarding royalty payments or other income received in connection with this Agreement to the Inventors, senior administrative officials employed by The

25

20090915

Regents, and individual Regents upon their request.  If such release is made, The Regents will request that such terms be kept in confidence in accordance with the provisions of this Article 25 (Confidentiality).

25.3    All written Proprietary Information will be labeled or marked confidential or proprietary.  If the Proprietary Information is orally disclosed, it will be reduced to writing or some other physically tangible form, marked and labeled as confidential or proprietary by the disclosing party and delivered to the receiving party within thirty (30) days after the oral disclosure.

25.4    Nothing contained herein will in any way restrict or impair the right of the Licensee or The Regents to use or disclose any Proprietary Information:

25.4(a)    that recipient can demonstrate by written records was previously known to it prior to its disclosure by the disclosing party;

25.4(b)    that recipient can demonstrate by written records is now, or becomes in the future, public knowledge other than through acts or omissions of recipient;

25.4(c)    that recipient can demonstrate by written records was lawfully obtained without restrictions on the recipient from sources independent of the disclosing party; or

25.4(d)    that The Regents is required to disclose pursuant to the California Public Records Act or other applicable law.

The Licensee or The Regents may use or disclose Proprietary Information that is required to be disclosed (i) to a governmental entity or agency in connection with seeking any governmental or regulatory approval, governmental audit, or other governmental requirement or (ii) by law, provided that the recipient uses reasonable efforts to give the party owning the Proprietary Information sufficient notice of such required disclosure to allow the party owning the Proprietary Information reasonable opportunity to object to, and to take legal action to prevent, such disclosure.  The Regents also may disclose the existence of this Agreement, its terms and conditions, and the name of Licensee to a third party.

26

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

25.5    Upon termination of this Agreement, the Licensee and The Regents will destroy or return any of the disclosing party's Proprietary Information in its possession within fifteen (15) days following the termination of this Agreement.  The Licensee and The Regents will provide each other, within thirty (30) days following termination, with written notice that such Proprietary Information has been returned or destroyed.  Each party may, however, retain one (1) copy of such Proprietary Information for archival purposes in non-working files.

26.    <u>Miscellaneous</u>

26.1    The headings of the several sections are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

26.2    This Agreement will not be binding upon the parties until it has been signed below on behalf of each party, in which event, it will be effective as of the date recited on page one.

26.3    No amendment or modification of this Agreement will be valid or binding upon the parties unless made in writing and signed on behalf of each party.

26.4    This Agreement (including Appendix 1) embodies the entire understanding of the parties and will supersede all previous communications, representations or understandings, either oral or written, between the parties relating to the subject matter hereof.  The Prior License Agreements are hereby terminated.

26.5    In case any of the provisions contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provisions hereof, but this Agreement will be construed as if such invalid or illegal or unenforceable provisions had never been contained herein.

27

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092210

26.6    In performing their respective duties under this Agreement, each of the parties will be operating as an independent contractor.  Nothing contained herein will in any way constitute any association, partnership, or joint venture between the parties hereto, or be construed to evidence the intention of the parties to establish any such relationship.  Neither party will have the power to bind the other party or incur obligations on the other party's behalf without the other party's prior written consent.

26.7    Appendix 1 attached hereto is a part of this Agreement.

The Regents and Licensee have executed this Agreement in duplicate originals by their respective authorized officers on the date indicated.

LASSEN CANYON NURSERY, INC.

By _____
    Liz Ponce

Title: _Vice-President_

Date: _10/3/08_

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA:

By _____
    David R. McGee
    Executive Director,
    UC Davis InnovationAccess

Date: _10/13/08_

28

20090915

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

UC_STRAW2_000092211

Appendix 1

List of Licensed Cultivars under Plant Protection Rights
for Non-Exclusive License Agreement
between
Lassen Canyon Nursery, Inc.
and
The Regents of the University of California

| Case | Cultivar | Patent No | Inventor(s) |
|------|----------|-----------|-------------|
| 1988-202 | 'Irvine' | 7,172 | Royce Bringhurst, Victor Voth |
| 1989-306 | 'Seascape' | 7,614 | Royce Bringhurst, Victor Voth |
| 1989-307 | 'Capitola' | 7,615 | Royce Bringhurst, Victor Voth |
| 1992-363 | 'Cuesta' | 8,662 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1992-364 | 'Sunset' | 8,661 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1992-365 | 'Anaheim' | 8,659 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1992-366 | 'Laguna' | 8,663 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1992-367 | 'Camarosa' | 8,708 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1992-368 | 'Carlsbad' | 8,660 | Royce Bringhurst, Victor Voth, Douglas Shaw |
| 1997-083 | 'Gaviota' | 10,461 | Douglas Shaw |
| 1997-084 | 'Aromas' | 10,451 | Douglas Shaw |
| 1997-085 | 'Diamante' | 10,435 | Douglas Shaw |
| 1997-086 | 'Pacific' | 10,436 | Douglas Shaw |
| 2001-125 | 'Camino Real' | 13,079 | Douglas Shaw, Kirk Larson |
| 2001-126 | 'Ventana' | 13,469 | Kirk Larson, Douglas Shaw |
| 2004-323 | 'Albion' | 16,228 | Douglas Shaw, Kirk Larson |

Lassen Canyon Nursery, Inc.

By _____     Date: _10/3/08_____
    Liz Ponce

20090915 - Appendix 1

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY