# Exhibit 43

# Exclusive License Agreement

### between

## The Regents of the University of California

### and

## Eurosemillas, S.A.

### for

## University of California Strawberry Cultivars

### in the

## European Union



HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY   UC_STRAW2_00043840

# TABLE OF CONTENTS

| ARTICLE | PAGE |
|---|---|
| RECITALS | 1 |
| 1. DEFINITIONS | 3 |
| 2. GRANT | 7 |
| 3. LICENSE ISSUE FEE | 12 |
| 4. ROYALTIES | 12 |
| 5. USE OF THE UC STRAWBERRY PLANT TRACKING SYSTEM | 16 |
| 6. DUE DILIGENCE | 18 |
| 7. ROYALTY REPORTS | 19 |
| 8. BOOKS AND RECORDS | 20 |
| 9. LIFE OF THE AGREEMENT | 21 |
| 10. TERMINATION BY THE REGENTS | 22 |
| 11. TERMINATION BY LICENSEE | 23 |
| 12. OBLIGATIONS OF LICENSEE AND DISPOSITION OF LICENSED PRODUCTS UPON TERMINATION | 23 |
| 13. USE OF NAMES/TRADEMARKS | 24 |
| 14. PROSECUTION AND MAINTENANCE OF INTELLECTUAL PROPERTY FOR THE UC CULTIVARS | 25 |
| 15. LIMITED WARRANTY | 26 |
| 16. LIMITATION OF LIABILITY | 27 |
| 17. MARKING | 28 |
| 18. INFRINGEMENT OF THE PLANT PROTECTION RIGHTS | 28 |
| 19. INDEMNIFICATION | 30 |
| 20. NOTICES | 31 |
| 21. ASSIGNABILITY | 32 |
| 22. COMPLIANCE WITH LAWS | 32 |
| 23. LATE PAYMENTS | 33 |
| 24. WAIVER | 33 |
| 25. GOVERNING LAWS; VENUE; ATTORNEYS' FEES | 33 |
| 26. GOVERNMENT APPROVAL OR REGISTRATION | 34 |
| 27. FORCE MAJEURE | 34 |
| 28. CONFIDENTIALITY | 35 |
| 29. MISCELLANEOUS | 37 |
| APPENDIX 1 | |

20090422

Exclusive License Agreement for University of California Strawberry Cultivars
in the European Union

This license agreement ("Agreement") is effective September 15, 2008 ("Effective Date of this Agreement"), by and between (1) The Regents of the University of California ("The Regents"), a California corporation, having its statewide administrative offices at 1111 Franklin Street, 12th Floor, Oakland, California 94607-5200, as represented by the Davis campus, UC Davis InnovationAccess, Technology Transfer Services, having its administrative office at 1850 Research Park Drive, Suite 100, Davis, California 95618-6134, and (2) Eurosemillas, S.A. ("Licensee"), a Spanish corporation, having a principal place of business at Paseo de la Victoria 31-1°, 14004 Cordoba, Spain.  The Regents and Licensee are on occasion referred to herein individually as "Party" and collectively as "Parties."

<u>Recitals</u>

Whereas, certain UC Cultivars (as that term is defined herein) useful for fruit production were developed at the University of California, Davis ("UCD") and at the University of California, South Coast Research and Extension Center, Irvine by the inventors specified in Appendix 1 hereto ("Inventors");

Whereas, the UC Cultivars are covered by Plant Protection Rights (as that term is defined herein);

Whereas, the UC Cultivars include both Licensed Cultivars (as that term is defined herein) and Two-Year Delay Cultivars (as that term is defined herein);

20090422

1

U.C. AGREEMENT
CONTROL NUMBER
2009 - 04 - 5051

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Whereas, the Inventors have assigned to The Regents all right, title, and interest in the Plant Protection Rights;

Whereas, the Parties previously entered license agreements ("Prior License Agreements"), which granted Licensee certain rights to Licensed Cultivars, as follows:

1. License Agreement effective January 1, 2003 (UC Control Number 2003-04-5031) for cultivar 'Camino Real' and cultivar 'Ventana', in France, Germany, Italy, The Netherlands, Portugal, Spain and the United Kingdom.

2. License Agreement effective January 14, 2004 (UC Control Number 2004-04-5032) for cultivar 'Camino Real' and cultivar 'Ventana' in Poland, Hungary, Romania, the Czech Republic, and the Slovak Republic.

3. License Agreement effective June 14, 2006 (UC Control Number 2006-04-5111) for cultivar 'Albion' in France, Germany, Italy, Poland, Portugal, Spain, The Netherlands, and the United Kingdom.

Whereas, the Parties desire that the Prior License Agreements be terminated and that, under this Agreement, The Regents provide Licensee with (1) certain license rights to the Licensed Cultivars, with such rights to the Licensed Cultivars being effective as of the Effective Date of this Agreement, and (2) certain license rights to the Two-Year Delay Cultivars, with such rights to the Two-Year Delay Cultivars being effective as of a date (as specified herein) subsequent to the Effective Date of this Agreement;

Whereas, the Parties desire that license rights granted by The Regents to Licensee under this Agreement be implemented in accordance with, and using, the Tracking System (as that term is defined herein) owned by The Regents;

Whereas, the Parties desire that no rights are granted by The Regents to Licensee under this Agreement except as expressly stated herein;

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043843

Whereas, the Parties desire that the Earned Royalty (as that term is defined herein) due under this Agreement from Licensee to The Regents will be paid based on both pending plant breeders' rights applications within the Plant Protection Rights and issued plant breeders' rights certificates within the Plant Protection Rights; and

Whereas, the Parties desire to enter this Agreement for purposes of, among other things, the following: specifying the scope of license rights granted by The Regents to Licensee for the UC Cultivars; specifying the Earned Royalty rates to be paid by Licensee to The Regents; harmonizing the rights and responsibilities of Licensee with the operation of the Tracking System; and ensuring that the UC Cultivars are made available for the public benefit.

The Parties agree as follows:

1.     <u>Definitions</u>

As used in this Agreement, the following terms, whether used in the singular or plural, will have the following meanings:

1.1     "Affiliate" of Licensee means any entity which, directly or indirectly, (a) Controls Licensee; (b) is Controlled by Licensee; or (c) is under common Control with Licensee. "Control" means (i) having the actual, present capacity to elect a majority of the directors; (ii) having the power to direct at least forty percent (40%) of the voting rights entitled to elect directors; or (iii) in any country where the local law will not permit foreign equity participation of a majority of the outstanding stock or voting rights, then ownership or control, directly or indirectly, of the maximum percentage of such outstanding stock or voting rights permitted by local law.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                              UC_STRAW2_00043844

1.2     "Direct Sales Territory" means certain of the countries which are not within any of the following: (a) United States and Canada, (b) ESA Sales Territory, and (c) Other Territories.

1.3     "Earned Royalty" means the earned royalty payments owed by Licensee to The Regents as specified in Paragraph 4.1.

1.4     "ESA Sales Territory" means (a) countries of the ESA Sublicensing Territory, plus (b) additional countries for which, under Other UC-ESA License Agreements, The Regents grants Licensee certain exclusive rights to issue sublicenses to the Licensed Cultivars.

1.5     "ESA Sublicensing Territory" means (a) countries of the European Union as of the Effective Date of this Agreement (for so long as such countries remain part of the European Union), and (b) upon written notice from The Regents, any additional countries which subsequent to the Effective Date of this Agreement become part of the European Union.

1.6     "Joint Venture" of Licensee means any entity established pursuant to an agreement between Licensee and a third party for purposes of constituting a vehicle for a joint venture, in which the entity manufactures, uses, Sells, purchases, or otherwise acquires Licensed Products, or fruit thereof, from Licensee or a Sublicensee.

1.7     "Licensed Cultivars" means the strawberry cultivars specified in Appendix 1 hereto as Licensed Cultivars.  The term Licensed Cultivars additionally includes the strawberry cultivars specified in Appendix 1 hereto as "Two-Year Delay Cultivars," but only as of the date specified in the definition of Two-Year Delay Cultivars set forth in Paragraph 1.19.

1.8     "Licensed Products" means plants or plant parts, excluding fruit thereof, of the Licensed Cultivars and the seed, progeny (including seedling progeny), and derivatives of such plants and plant parts including, but not limited to, the following:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043845

1.8(a)   plants or vegetative material in test tubes;

1.8(b)   vegetative material capable of being propagated or micropropagated;

1.8(c)   meristematic material;

1.8(d)   bareroot plants;

1.8(e)   plants in soil or other nutritive material; and

1.8(f)   plant tissue capable of being propagated either in tissue culture or by any other means;

to the extent that the propagation, use, or Sale of such plants or plant parts would be covered by or otherwise infringe (including inducement or contributory infringement) either (i) a pending plant breeders' rights application within the Plant Protection Rights, or (ii) a valid and unexpired plant breeders' rights certificate within the Plant Protection Rights.

1.9      "Licensee Funding Amount" means the annual contribution made by Licensee to the strawberry breeding program at UCD.  Such amount is calculated at the rate of One Dollar ($1.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold by Sublicensees. The annual contribution period will be the twelve (12)-month period beginning on January 1 and ending on December 31 preceding the contribution due date of each October 31 beginning on October 31, 2009.

1.10     "Other Territories" means countries not within the ESA Sales Territory, for which The Regents grants parties other than Licensee certain exclusive rights to issue sublicenses to the Licensed Cultivars.

1.11     "Other UC-ESA License Agreements" means license agreements, other than this Agreement, between The Regents and Licensee under which The Regents grants Licensee exclusive rights to issue sublicenses to the Licensed Cultivars.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                              UC_STRAW2_00043846

1.12    "Plant Protection Rights" means plant breeders' rights applications and plant breeders' rights certificates issuing thereon and assigned to The Regents which claim or cover the UC Cultivars, including any reissues, substitutions and extensions thereof.

1.13    "Regents' California Licensee" means a nursery in California licensed by The Regents to both (a) asexually propagate Licensed Products, and (b) Sell Licensed Products for fruit production.

1.14    "Report Year" means the twelve-month period beginning January 1 and ending on December 31.

1.15    "Sale" means the act of selling, leasing, or otherwise transferring.  Correspondingly, "Sell" means to make or cause to be made a Sale, and "Sold" means to have made or caused to be made a Sale.

1.16    "Sublicense" means a sublicense agreement between Licensee and a third party in which Licensee grants the third party certain sublicense rights under this Agreement, which rights include (a) the right to asexually propagate Licensed Products in the ESA Sublicensing Territory, and (b) the right to use Licensed Products for fruit production in the ESA Sublicensing Territory.

1.17    "Sublicensee" means a third party granted a Sublicense by Licensee.

1.18    "Tracking System" means the electronic, internet-based software program located at www.ucplanttracking.net, or at such other location as may be specified in writing by The Regents, owned by The Regents for purposes of providing information and instructions for shipment and sales of Licensed Cultivars.

1.19    "Two-Year Delay Cultivars" means the strawberry cultivars specified in Appendix 1 hereto as Two-Year Delay Cultivars.  For purposes of this Agreement, each Two-Year Delay

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                   UC_STRAW2_00043847

Cultivar will be deemed to be a Licensed Cultivar as of the date of expiration of the respective two(2)-year delay period for the given Two-Year Delay Cultivar as such two-year delay period is specified in Appendix 1 hereto.

    1.20   "UC Cultivars" means, collectively, Licensed Cultivars and Two-Year Delay Cultivars.

## 2.   Grant

    2.1   Subject to Paragraph 2.3 and Paragraph 2.4, The Regents hereby grants to Licensee the exclusive right under the Plant Protection Rights to issue non-exclusive or, subject to The Regents' written consent, exclusive Sublicenses which provide any or all of the following rights:

    2.1(a)   the right to asexually propagate Licensed Products in the ESA Sublicensing Territory;

    2.1(b)   the right to import or otherwise purchase Licensed Products from Sublicensees, or from sublicensees of Licensee under Other UC-ESA License Agreements, for asexual propagation in the ESA Sublicensing Territory;

    2.1(c)   the right to import Licensed Products from Regents' California Licensees for asexual propagation in the ESA Sublicensing Territory;

    2.1(d)   the right to Sell, offer for Sale, and have Sold Licensed Products to Sublicensees, or to sublicensees of Licensee under Other UC-ESA License Agreements, for asexual propagation in the ESA Sales Territory;

    2.1(e)   the right to use Licensed Products for fruit production in the ESA Sublicensing Territory;

    2.1(f)   the right to import or otherwise purchase Licensed Products from Sublicensees, or from sublicensees of Licensee under Other UC-ESA License Agreements, for fruit production in the ESA Sublicensing Territory;

    2.1(g)   the right to import Licensed Products from Regents' California Licensees for fruit production in the ESA Sublicensing Territory; and

    2.1(h)   the right to Sell, offer for Sale, and have Sold Licensed Products for fruit production in the ESA Sales Territory.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

2.2    Subject to Paragraph 2.3, The Regents hereby grants to Licensee the non-exclusive right under the Plant Protection Rights to issue Sublicenses which provide the non-exclusive right to Sell, offer for Sale, and have Sold Licensed Products for fruit production in the Direct Sales Territory.

2.3    The right of Sublicensees to Sell, offer for Sale, have Sold, import or otherwise purchase Licensed Products under this Article 2 is subject to approval by the Tracking System, on a transaction-by-transaction basis, as specified in Article 5.

2.4    The Regents reserves the right to enter license agreements with Regents' California Licensees to Sell Licensed Products to Sublicensees, or to sublicensees of Licensee under Other UC-ESA License Agreements, for asexual propagation in the ESA Sales Territory or for fruit production in the ESA Sales Territory. With respect to any nursery in the United States outside of California, or in Canada, which The Regents licenses to both (a) asexually propagate Licensed Products, and (b) Sell Licensed Products for fruit production, The Regents additionally reserves the right to enter license agreements with such licensed nursery to Sell Licensed Products to Sublicensees, or to sublicensees of Licensee under Other UC-ESA License Agreements, for asexual propagation in the ESA Sales Territory or for fruit production in the ESA Sales Territory.

2.5    The Sublicensees will have no right to further sublicense others.

2.6    Licensee will not, and Sublicensees will not, Sell, otherwise commercialize or (absent a test agreement) propagate any given Two-Year Delay Cultivar prior to the date of expiration of the respective two (2)-year delay period for the given Two-Year Delay Cultivar as specified in Appendix 1 hereto.

20090422

8

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043849

2.7     Licensee may issue Sublicenses to Affiliates of Licensee or to Joint Ventures of Licensee, subject to The Regents' written consent.

2.8     Licensee will not assess royalties or other consideration based on the Sale of fruit produced from Licensed Products under this Agreement.  Licensee will ensure that Sublicensees do not assess royalties on the Sale of fruit produced from Licensed Products under this Agreement.

2.9     Licensee will notify The Regents of each Sublicense granted hereunder and will provide The Regents with a complete copy of each Sublicense in English within thirty (30) days of issuance of the Sublicense.

2.10    Each Sublicense will include all of the rights of, and will require the performance of all the obligations due to, The Regents (and if applicable the United States Government) under this Agreement, except for those rights specified in Article 14 (Prosecution and Maintenance of Intellectual Property for the UC Cultivars) and Article 18 (Infringement of the Plant Protection Rights).  Without limitation, Sublicenses will include the following provisions, and Licensee will be responsible for ensuring compliance of Sublicensees with such provisions:

2.10(a)     A provision stating that the Sublicensee will pay royalties to Licensee in an amount sufficient to permit Licensee to meet Licensee's Earned Royalty obligations to The Regents under this Agreement.

2.10(b)     A provision stating that the Sublicensee will report to Licensee any substantial infringement of the Plant Protection Rights in the ESA Sublicensing Territory.

2.10(c)     A provision stating that if a Sublicensee Sells Licensed Products to a third party or engages others to Sell Licensed Products on the Sublicensee's behalf, then all recipients of the Licensed Products will be contractually bound to comply with the obligations due from the Sublicensee to Licensee and to The Regents specified herein with respect to the limitations on the Sale and asexual propagation of the Licensed Products.

2.10(d)     A provision stating that all third parties who Sell the Licensed Products on behalf of the Sublicensees will provide reports to the Sublicensee on

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043850

the details of the Sale of Licensed Products in accordance with Article 7 (Royalty Reports).

2.10(e)    A provision stating the obligations of the Sublicensee with respect to royalties on the Sale of fruit, as specified under Paragraph 2.8.

2.10(f)    A provision stating the obligations of the Sublicensee with respect to alteration of the UC Cultivars, as specified under Paragraph 2.12.

2.10(g)    A provision stating The Regents' right to examine facilities of the Sublicensee, as specified under Paragraph 8.1.

2.10(h)    A provision stating the obligations of the Sublicensee with respect to use of names, as specified under Article 13 (Use of Names/Trademarks).

2.10(i)    A provision stating the obligations of the Sublicensee with respect to marking, as specified under Article 17 (Marking).

2.10(j)    A provision stating the obligations of the Sublicensee with respect to compliance with laws, as specified under Paragraph 22.1.

2.11    Licensee will guarantee, collect, and pay all Earned Royalties due The Regents from Sales by Sublicensees.  Licensee will require Sublicensees to provide royalty reports to Licensee, and Licensee will collect and summarize for The Regents all such royalty reports due from Sublicensees in accordance with Article 7 (Royalty Reports).

2.12    Licensee will not, and Licensee will ensure that Sublicensees will not, conduct any of the following activities:

2.12(a)    alter the UC Cultivars or Licensed Products, or fruit thereof, through genetic engineering techniques, including without limitation introducing new genes, gene fragments, or other DNA or RNA ("Genetic Material") into the plant material comprising the UC Cultivars or Licensed Products, or fruit thereof;

2.12(b)    alter the UC Cultivars or Licensed Products, or fruit thereof, to create new varieties by inducing genetic mutations, including without limitation through the use of (i) chemical mutagenesis, including without limitation by using ethyl methyl sulfate (EMS), (ii) radiation mutagenesis, including without limitation by using gamma radiation, or (iii) tissue culture-induced somaclonal variation; or

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          UC_STRAW2_00043851

> 2.12(c)    except as consented to in writing by The Regents for the purpose of ensuring compliance with Paragraph 6.2(a), extract Genetic Material from Licensed Products, or fruit thereof.

Licensee and Sublicensees will not allow any third party to perform any action prohibited in this Paragraph 2.12.

2.13    For the purposes of this Agreement, the operations of all Sublicensees will be deemed to be the operations of Licensee, for which Licensee will be responsible.

2.14    Licensee will provide The Regents with prompt written notice of any litigation or threatened litigation based on disputes between Licensee and any Sublicensee.

2.15    On termination of this Agreement for any reason, The Regents, at its sole discretion, will determine whether any or all of the Sublicenses will be canceled or assigned to The Regents, or to The Regents' designee, in accordance with the procedures of Article 12.

2.16    The Regents reserves the right to (a) publish any technical data resulting from research performed by The Regents relating to the UC Cultivars or the Licensed Products, or fruit thereof, (b) propagate, use, import, offer for Sale and Sell the UC Cultivars or Licensed Products, or fruit thereof, under terms consistent with the terms of this Agreement, and (c) to allow others to do any of the foregoing activities covered by this Paragraph 2.16.

2.17    No rights are granted by The Regents to Licensee under this Agreement except as expressly stated herein, including with respect to strawberry cultivars other than UC Cultivars or otherwise.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043852

### 3.    License Issue Fee

3.1    Licensee will pay to The Regents license issue fees ("License Issue Fees") as specified in Appendix 1 hereto.  License Issue Fees will be paid within thirty (30) days after the full execution of this Agreement by the Parties.

3.2    The License Issue Fees are non-refundable, non-creditable, and not an advance against Earned Royalties.

### 4.    Royalties

4.1    Licensee will pay to The Regents an Earned Royalty, as set forth below in this Paragraph 4.1.

4.1(a)  For the Sale of Licensed Products (x) by a Sublicensee to a grower for fruit production in the ESA Sales Territory or in the Direct Sales Territory, or (y) by a Regents' California Licensee to a Sublicensee for fruit production in the ESA Sublicensing Territory, Licensee will pay The Regents as follows:

(i)    For the time period commencing September 15, 2008 and ending September 14, 2009, Licensee will pay to The Regents a royalty at the rate of Five Dollars and Fifty Cents ($5.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, if Licensee does not pay the License Funding Amount to The Regents, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Seven Dollars ($7.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

(ii)   For the time period commencing September 15, 2009 and ending September 14, 2010, Licensee will pay to The Regents a royalty at the rate of Six Dollars and Fifty Cents ($6.50) based on each unit comprised on One Thousand (1,000) Licensed Products Sold. Notwithstanding the foregoing, if Licensee does not pay the License Funding Amount to The Regents, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Eight Dollars ($8.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

20090422

12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          UC_STRAW2_00043853

(iii)    For the time period commencing September 15, 2010 and continuing thereafter during the term of this Agreement, Licensee will pay to The Regents a royalty at the rate of Seven Dollars and Fifty Cents ($7.50) based on each unit comprised on One Thousand (1,000) Licensed Products Sold.  Notwithstanding the foregoing, if Licensee does not pay the License Funding Amount to The Regents, The Regents, in its sole discretion, will be entitled to raise the royalty rate to Nine Dollars ($9.00) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

4.1(b)  For the Sale of Licensed Products (x) by a Sublicensee to a grower for fruit production in the ESA Sales Territory or in the Direct Sales Territory, or (y) by a Regents' California Licensee to a Sublicensee for fruit production in the ESA Sublicensing Territory, Licensee will pay The Regents as follows, in addition to payments owed under Subparagraph 4.1(a):

(i)    For the time period commencing September 15, 2008 and ending September 14, 2009, Licensee will pay to The Regents fifty percent (50%) of any royalty income received by Licensee from Sublicensees in excess of the threshold amount of Twelve Dollars and Fifty Cents ($12.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

(ii)    For the time period commencing September 15, 2009 and ending September 14, 2010, Licensee will pay to The Regents fifty percent (50%) of any royalty income received by Licensee from Sublicensees in excess of the threshold amount of Fourteen Dollars and Fifty Cents ($14.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

(iii)    For the time period commencing September 15, 2010 and continuing thereafter during the term of this Agreement, Licensee will pay to The Regents fifty percent (50%) of any royalty income received by Licensee from Sublicensees in excess of the threshold amount of Sixteen Dollars and Fifty Cents ($16.50) based on each unit comprised of One Thousand (1,000) Licensed Products Sold.

For purposes of this Subparagraph 4.1(b), if currency conversion to U.S. dollars is applicable to the determination of any amount referred to as the "threshold amount," such determination will be made as specified in Paragraph 4.8.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043854

4.2     Subject to the Earned Royalty obligations set forth above in this Article 4, the Sale of Licensed Products from one Sublicensee to another Sublicensee, or from a Regents' California Licensee to a Sublicensee, for asexual propagation will be royalty-free.

4.3     Failure of Licensee to pay the Licensee Funding Amount to The Regents by October 31 of the year in which such amount is due and owing will be considered an election by Licensee not to contribute funds to the strawberry breeding program at UCD.  In such event, the Earned Royalty rates will be the higher rates specified in the applicable Subparagraphs of Paragraph 4.1(a) for the Report Year in which the Licensee Funding Amount was due and owing and in each subsequent year in which the Licensee Funding Amount is not paid.

4.4     The Regents will be entitled to increase the Licensee Funding Amount once every three (3) years by an amount equal to the increase in the Consumer Price Index ("CPI") as maintained by the United States Bureau of Labor Statistics for the prior three (3)-year period.  The Regents will inform Licensee of the increase in the Licensee Funding Amount due to inflation by April 15 prior to the next Report Year in which the increase will be due and owing.

4.5     The Regents will be entitled to increase the Earned Royalty on six months' written notice to Licensee, provided that,

      (a)     there will be no increase in the Earned Royalty prior to September 15, 2014; and,

      (b)     in the event of a first increase in the Earned Royalty on or after September 15, 2014, any further increase in the Earned Royalty will be at least five years subsequent to the effective date of the most recent increase in the Earned Royalty.

4.6     Earned Royalties will accrue as of the date the Sale of Licensed Products is invoiced, or if the Sale is not invoiced, as of the date when Sold.  When Licensed Products are used by a Sublicensee for fruit production by the Sublicensee, then such use will be deemed to be a Sale, and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043855

The Regents will be entitled to collect an Earned Royalty on such deemed Sale of the Licensed Products in accordance with the Earned Royalty schedule set forth in Paragraph 4.1.

4.7     The consideration specified in this Article 4 will be paid to The Regents by the October 1 immediately following the end of each Report Year.

4.8     All monies due The Regents will be paid in United States funds collectible at par in San Francisco, California.  Licensee will be responsible for paying all bank transfer charges.  For consideration received by Licensee from Sublicensees in a currency other than United States Dollars, then as applicable under this Agreement, the conversion to equivalent United States dollars will be according to the rate quoted in the Wall Street Journal on the last business day of the Report Year.

4.9     Earned Royalties, and other payments owed to The Regents under this Article 4, will not be reduced by any taxes, including value-added taxes, fees, or other charges imposed by the government of any country.  If taxes are assessed on income due The Regents by the government of any country, Licensee will pay the amounts owed by The Regents.  Licensee will be entitled to credit the amount of such income taxes of The Regents against, respectively, the Earned Royalty payments, and other payments under this Article 4, owed to The Regents for the Report Year in which such income taxes owed by The Regents were paid by Licensee.

4.10     In the event that any plant breeders' rights included in the Plant Protection Rights are held invalid in a final decision by a court of competent jurisdiction and last resort and from which no appeal has or can be taken, all obligation to pay Earned Royalties based on such plant breeders' rights will cease as of the date of such final decision.  The foregoing notwithstanding, Licensee will not be relieved from paying any Earned Royalties that accrued before such decision.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                           UC_STRAW2_00043856

4.11    If a Sublicensee Sells the Licensed Products at no charge to a customer to replace defective Licensed Products, then The Regents will waive Earned Royalties due The Regents on the replacement Licensed Products, provided that (a) Licensee also waives such Earned Royalties due from the Sublicensee, and (b) the Sublicensee provides Licensee with written documentation of the replacement of the defective Licensed Products.  Notwithstanding the foregoing, Licensee may not allow a Sublicensee to claim a waiver of Earned Royalties for defective Licensed Products Sold to the extent the Sublicensee receives an insurance adjustment or insurance payment for such Earned Royalties.

5.    Use of the UC Strawberry Plant Tracking System

5.1    With respect to Sales of Licensed Products by or to Sublicensees where such Sales are otherwise permitted under this Agreement, Licensee will use the Tracking System, on a transaction-by-transaction basis, for purposes of approval of such Sales.  Such use of the Tracking System by Licensee will be in accordance with applicable procedures as specified in this Article 5 or as otherwise be specified from time to time by The Regents.

5.2    All Sales of Licensed Products by Sublicensees under this Agreement either (a) to the ESA Sales Territory outside the ESA Sublicensing Territory, or (b) to the Direct Sales Territory, will be in accordance with the following:

5.2(a)  Licensee is responsible for ensuring that all requests for such Sales are submitted to the Tracking System for approval.

5.2(b)  Licensee will use best efforts to ensure that Sublicensees submit directly to the Tracking System all requests for such Sales.

5.2(c)  Licensee is responsible for ensuring that any such Sale is not made until approval from the Tracking System is obtained.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043857

5.2(d)   With respect to each request for such Sale submitted to the Tracking System, Licensee and The Regents will cooperate (and keep each other informed) to ensure that approval or non-approval by the Tracking system is promptly obtained.

5.2(e)   In the event the Tracking System does not approve a request for any such Sale, Licensee is responsible for ensuring that such Sale does not take place.

5.2(f)   In the event the Tracking System does not approve a request for any such Sale, and the given Sublicensee nonetheless makes, or attempts to make, such Sale, Licensee will immediately notify The Regents so that appropriate remedial action may be taken.

5.2(g)   In the event the Tracking System is unavailable to a Sublicensee at any given time for purposes of approving a request for any such Sale, but the Tracking System is available to Licensee, Licensee will, if such Sale is approved by the Tracking System, provide the Sublicensee with electronic or written approval for such Sale of Licensed Products.

5.3      All Sales of Licensed Products to Sublicensees by Regents' California Licensees

under this Agreement will be in accordance with the following:

5.3(a)   Licensee will use the Tracking System to approve or disapprove all requests from Regents' California Licensees for such Sales.

5.3(b)   Licensee will not interfere with approval by the Tracking System of any request from Regents' California Licensees for such Sales, unless the Sublicensee specified for a given request is not in good standing under the applicable Sublicense.

5.3(c)   In the event Licensee determines that the Tracking System is unavailable to provide approval for any given request from Regents' California Licensees for any such Sale, Licensee will, after consultation with The Regents as appropriate, provide Regents' California Licensees with electronic or written approval for such Sale if Licensee determines that such Sale would otherwise be approved by the Tracking System.

5.3(d)   Licensee will acknowledge requests for approval from Regents' California Licensees for such Sales as soon as practical, but in any event within two(2) business days of each such request.

5.3(e)   Licensee will on a regular basis, or as otherwise requested by The Regents, provide each Regents' California Licensee with status updates for each

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                            UC_STRAW2_00043858

pending but not yet approved request from such Regents' California Licensee for any such Sale.

5.3(f)  With respect to each request for such Sale from Regents' California Licensees submitted to the Tracking System, Licensee and The Regents will cooperate (and keep each other informed) to ensure that approval or non-approval by the Tracking system is promptly obtained.

5.3(g)  In the event a request from Regents' California Licensees for any such Sale is not approved by the Tracking System then, concurrent with such non-approval, Licensee will provide written explanation to the given Regents' California Licensee via the Tracking System.

5.3(h)  In the event a Sublicensee in good standing under the applicable Sublicense ceases to be in good standing, Licensee will provide written notice to Specified Regents' California Licensees, as that term is defined below in this Subparagraph 5.3(h), of such change in status as soon as practical but in any event within two (2) business days from the date of Licensee's knowledge of such change in status.  For purposes of this Subparagraph 5.3(h), "Specified Regents' California Licensees" means any of Regents' California Licensees which during the five (5)-year period prior to such change in status used the Tracking System for Sales to such Sublicensee no longer in good standing.

5.4     In the event the Tracking System is unavailable to Licensee at any given time, Licensee will immediately inform The Regents so that appropriate remedial steps may be taken.

5.5     Except to the extent necessary to implement Sales approved by the Tracking System as called for under this Agreement, Licensee will not provide third parties with access to the Tracking System or its content.

## 6.     Due Diligence

6.1     Licensee, upon execution of this Agreement, will diligently proceed with sublicensing third parties in the ESA Sublicensing Territory for the propagation of the Licensed Products therein and the Sale of the Licensed Products to fruit producers in the ESA Sales Territory.  Licensee will insure that the Licensed Products are propagated and Sold in the ESA Sublicensing

20090422                                                                                          18

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043859

Territory in quantities that when combined with the amount of Licensed Products imported from other sources are sufficient to meet the market demand for the ESA Sublicensing Territory.

    6.2    If Licensee is unable to perform any of the following:

        6.2(a)  meet quality assurance provisions specifying that all the Licensed Products Sold:

            i        are true to cultivar;

            ii       have been asexually propagated and handled in a manner consistent with any mandatory local, regional, national, or international certification programs for the intended market governing the asexual propagation of plant varieties where the Licensed Products have been propagated and have been Sold; and

            iii      are not infested with disease-causing or disease-transmitting organisms or pests harmful to the commercial quality of the Licensed Products;

        6.2(b)  sublicense the Licensed Products in the ESA Sublicensing Territory within eight (8) months from the date of execution of this Agreement by both parties; and

        6.2(c)  fill the market demand for the Licensed Products in the ESA Sublicensing Territory following commencement of marketing at any time during the life of this Agreement;

then The Regents will have the right and option to terminate this Agreement.  The exercise of this right and option by The Regents supersedes the rights granted in Article 2 (Grant).

7.   <u>Royalty Reports</u>

    7.1    After execution of this Agreement, Licensee will provide The Regents with annual royalty reports in accordance with the provisions of Article 4 (Royalties).

    7.2    For each Report Year, the royalty report for Licensed Products will include the following information:

        7.2(a)  the Report Year;

20090422

19

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043860

7.2(b)   for each Licensed Cultivar, the total quantity of Licensed Products Sold by Sublicensees for fruit production in the ESA Sales Territory and in the Direct Sales Territory, and the country where the Licensed Products were Sold;

7.2(c)   for each Licensed Cultivar, the total quantity of Licensed Products Sold by Sublicensees for asexual propagation in the ESA Sublicensing Territory, and the country where the Licensed Products were Sold;

7.2(d)   for each Licensed Cultivar, the total quantity of Licensed Products purchased by Sublicensees from Regents' California Licensees for fruit production or for asexual propagation, and the country where such fruit production or asexual propagation took place;

7.2(e)   any applicable deductions pursuant to Paragraph 4.11 (defective plant replacement); and

7.2(f)   Earned Royalty owed hereunder with respect to the Licensed Products Sold or received by Sublicensees for fruit production.

7.3     If no Licensed Products are Sold during any Report Year, then a statement to this effect for the applicable Report Year will be provided by Licensee in the immediately subsequent royalty report.

## 8.     Books and Records

8.1     Licensee will keep books and records accurately showing all the Licensed Products asexually propagated, used, or Sold under the terms of this Agreement. Such books and records will be preserved for at least five (5) years after the date of the Earned Royalty payment to which they pertain and will be open to examination by representatives or agents of The Regents during normal business hours to determine the accuracy of the books and records and to determine compliance by Licensee with the terms of this Agreement. The Regents' representatives or agents also will have the right to examine, during normal business hours, any facilities of the Sublicensees (fields, greenhouses, laboratories, storage buildings, warehouses, etc.) to verify quality standards and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          UC_STRAW2_00043861

quantities of the Licensed Products asexually propagated or Sold and reported in Licensee's books and records.

8.2    The Regents will bear the fees and expenses of representatives of The Regents performing such examinations, except, however, if such examinations reveal an error of more than five percent (5%) in Licensee's payment of the total Earned Royalties and other consideration due for any calendar year or Licensee's breach of any other material term of this Agreement, then Licensee will bear the cost of the examination.  Licensee will remit the amount of any underpayment, and any examination costs, if appropriate, to The Regents within thirty (30) days of the examination result.

8.3    The Regents will have the right to require Licensee(and Licensee will have the right) to inspect the books, records, and facilities of its Sublicensees to determine the accuracy of such books and records and to verify the quality standards and quantities of the Licensed Products Sold by Sublicensees.  If The Regents requires Licensee to examine the books, records, and facilities of the Sublicensees, then Licensee will conduct such examination using certified public accountant(s) from an independent accounting firm within sixty (60) days of a written request from The Regents. The Regents will not bear any of Licensee's fees or expenses for performing such examinations.

9.    Life of the Agreement

9.1    Unless terminated by operation of law or otherwise in accordance with the terms of this Agreement, this Agreement will expire on the date of the last-to-expire or last-to-be-abandoned plant breeders' right application or plant breeders' right certificate within the Plant Protection Rights, whichever is later.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          UC_STRAW2_00043862

9.2     Any termination of this Agreement will not affect the rights and obligations set forth in the following Articles:

| Article | 1 | Definitions |
|---|---|---|
| Article | 3 | License Issue Fee |
| Article | 4 | Royalties |
| Article | 8 | Books and Records |
| Article | 9 | Life of the Agreement |
| Article | 12 | Obligations of Licensee and Disposition of Licensed Products Upon Termination |
| Article | 13 | Use of Names/Trademarks |
| Article | 14 | Prosecution and Maintenance of Intellectual Property for the UC Cultivars |
| Article | 15 | Limited Warranty |
| Article | 16 | Limitation of Liability |
| Article | 19 | Indemnification |
| Article | 20 | Notices |
| Article | 23 | Late Payments |
| Article | 25 | Governing Laws; Venue; Attorneys' Fees |
| Article | 28 | Confidentiality |

9.3     The termination or expiration of this Agreement will not relieve Licensee of its obligation to pay any fees, Earned Royalties, or other payments owed to The Regents at the time of such termination or expiration, and will not impair any accrued right of The Regents, including without limitation under Article 12 (Obligations of Licensee and Disposition of Licensed Products Upon Termination).

10.     Termination by The Regents

10.1     If Licensee violates or fails to perform any material term of this Agreement, then The Regents may give written notice of such default to Licensee.  If Licensee fails to repair such default within sixty (60) days subsequent to the date such notice takes effect, The Regents will have the right to terminate this Agreement and the licenses herein by a second written notice to Licensee.

10.2     This Agreement will automatically terminate, on written notice from The Regents,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043863

without the obligation to provide sixty (60) days' notice as set forth in Paragraph 10.1, upon the

filing of a petition for relief under the United States Bankruptcy Code (or applicable non-United

States bankruptcy law) by or against Licensee as a debtor or alleged debtor.

11.    Termination by Licensee

11.1    Licensee has the right at any time to terminate this Agreement by providing written

notice of termination to The Regents and termination of this Agreement will be effective sixty (60)

days subsequent to the effective date of of such notice.

12.    Obligations of Licensee and Disposition of Licensed Products Upon Termination

12.1    Upon termination of this Agreement for any reason, (a) Licensee will immediately

provide each Sublicensee with notice that this Agreement has been terminated; (b) Licensee will

inform each Sublicensee that, in order to obtain future rights to grow or Sell the Licensed Cultivars,

the Sublicensee needs to request continued rights from The Regents or its designee; and (c) Licensee

will cease to grant new Sublicenses under this Agreement.  Absent written notification from The

Regents of its decision to accept assignment of the Sublicenses, as permitted under the provisions of

Paragraph 2.15, Licensee will notify each Sublicensee in writing that the Sublicensee will

immediately cease asexual propagation of Licensed Products. Upon termination of this Agreement

for any reason, Licensee will, if requested by The Regents, take any action required by The Regents

to assign Sublicenses to The Regents or its designee.

12.2    The provisions of Paragraph 12.1 notwithstanding, Licensee may provide that for a

period of one year Sublicensees will have the right to Sell Licensed Products asexually propagated

prior to the receipt of notice from Licensee as specified in Paragraph 12.1.  The Sale of such

Licensed Products by Sublicensees will be subject to the terms of this Agreement and the applicable

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043864

Sublicense, including, but not limited to, the payment of Earned Royalties and the rendering of royalty reports.  Licensees and Sublicensees may not otherwise use, Sell, offer for Sale, import or export Licensed Products after the date of termination of this Agreement.

12.3    Within thirty (30) days after receipt by Licensee of notice of termination, or receipt by The Regents of notice of termination, in accordance with the terms of this Agreement, Licensee will deliver to The Regents a written summary identifying the current names and addresses of all Sublicensees, and an accounting of the Licensed Products in the possession of each Sublicensee.

## 13.    Use of Names/Trademarks

13.1    The use by Licensee of the name "University of California," contractions thereof,  or reference thereto in any advertisement, labeling, or publicity relating to the Licensed Products, or fruit thereof, will be in accordance with the following:

13.1(a)    With respect to Licensee being an authorized sublicensor of the Licensed Cultivars in the ESA Sublicensing Territory, Licensee will have the right to use the name, "University of California," only in the following prescribed manner:  "Licensee is the exclusive licensee of the University of California in the European Union and is granted the right to sublicense Licensed Cultivars for asexual propagation and sale."

13.1(b)    With respect to describing the origination and characteristics of the Licensed Products, or fruit thereof, for advertising purposes, Licensee will be entitled to use the name, "University of California," only to provide factual and truthful information and will not use the name to imply endorsement by the University of California of either Licensee or of the performance of the Licensed Products, or fruit thereof, and Licensed Cultivars.

13.1(c)    With respect to exercise of any of the other Subparagraphs of this Paragraph 13.1, the use by Licensee of the name, "University of California," will be restricted to the text of any advertisement relating to the Licensed Products, or fruit thereof, and will not be set apart from said text by either bold-faced print or dissimilar lettering. The use of the name, "University of California," in either titles, subtitles, or apart from other text is prohibited.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043865

13.1(d)   If Licensee uses any advertisement relating to the Licensed Products, or fruit thereof, or to the University of California which The Regents finds objectionable for any reason, Licensee will promptly stop the use of such advertisement upon written notification by The Regents.

Licensee will not use the name "The Regents of the University of California" or "University of California" except as stated above in this Paragraph 13.1.

13.2   In the event The Regents chooses to identify Licensed Cultivars with a trademark ("UC Trademark"), and if The Regents so requests in writing, Licensee agrees (a) to use the UC Trademark on or with Licensed Products Sold, or fruit thereof, by or offered for Sale by Licensee, and in related promotional materials produced or used by Licensee, in the manner requested by The Regents, and (b) with respect to any such Sales, offers for Sale or promotional materials, to not use any name or trademark that is confusingly similar to or suggestive of, or that would otherwise conflict with or dilute, the UC Trademark.

14.   <u>Prosecution and Maintenance of Intellectual Property for the UC Cultivars</u>

14.1   The Regents will diligently prosecute and maintain Plant Protection Rights using counsel of The Regents' choice.

14.2   All past, present, and future costs incurred for preparing, prosecuting, filing, and maintaining the Plant Protection Rights for the Licensed Cultivars in the ESA Sublicensing Territory ("Plant Protection Costs") will be paid by Licensee. Plant Protection Costs include the costs of defending any oppositions to the Plant Protection Rights in the ESA Sublicensing Territory. Licensee will obtain commercial registration for the UC Cultivars, and The Regents will cooperate with Licensee in this effort by providing supporting documentation as required. Licensee will cooperate with The Regents in obtaining variety examination for UC Cultivars by providing Licensed Products for testing and ensuring their proper delivery to the authorities conducting such

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043866

examination.  All costs for obtaining commercial registration and variety examination will be deemed to be Plant Protection Costs and will be borne by Licensee.  Licensee will reimburse The Regents for all Plant Protection Costs for Licensed Cultivars incurred by The Regents within thirty (30) days following receipt of an itemized invoice from The Regents for same.  Licensee will pay appropriate parties directly for all other Plant Protection Costs.

14.3    Licensee may terminate its obligations to pay Plant Protection Costs with respect to any of the Licensed Cultivars upon three (3)-months' written notice to The Regents.  The Regents may continue prosecution and/or maintenance of the intellectual property for such Licensed Cultivars at The Regents' sole discretion and expense, provided that, Licensee will have no further right or licenses to such Licensed Cultivars.

14.4    Licensee's obligation to make payments for Plant Protection Costs will continue until three (3) months after receipt by either Party of a notice of termination under this Agreement, even if invoices for such Plant Protection Costs are received by The Regents after receipt by either Party of such notice of termination.

14.5    Payments made by Licensee for the Plant Protection Costs are not refundable, not creditable, and not an advance against Earned Royalties.

15.    Limited Warranty

15.1    The Regents warrants to Licensee that it has the lawful right to grant this license.

15.2    Except as expressly set forth in this Agreement, the licenses and the associated UC Cultivars, Licensed Cultivars, Plant Protection Rights, and Licensed Products (and fruit thereof) are provided by The Regents WITHOUT WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY OF ANY KIND, EITHER

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    UC_STRAW2_00043867

EXPRESS OR IMPLIED.  THE REGENTS MAKES NO EXPRESS OR IMPLIED

REPRESENTATION OR WARRANTY THAT USE OF THE UC CULTIVARS, LICENSED

CULTIVARS, PLANT PROTECTION RIGHTS, OR LICENSED PRODUCTS (AND FRUIT

THEREOF) WILL NOT INFRINGE ANY PATENT, COPYRIGHT, TRADEMARK OR OTHER

RIGHTS.

15.3    Nothing in this Agreement is or will be construed as:

15.3(a)    a warranty or representation by The Regents as to the validity, enforceability, or scope of any Plant Protection Rights;

15.3(b)    a warranty or representation by The Regents that anything made, used, Sold, or otherwise exploited under any license granted in this Agreement is or will be free from infringement of patents, copyrights, or other rights of third parties;

15.3(c)    an obligation by The Regents to bring or prosecute actions or suits against third parties for infringement of Plant Protection Rights;

15.3(d)    conferring by implication, estoppel, or otherwise any license or rights under any patents or other rights of The Regents other than Plant Protection Rights, regardless of whether such patents or other rights are dominant or subordinate to Plant Protection Rights; or

15.3(e)    an obligation by The Regents to furnish any know-how, technology, or technological information or plant materials not provided in Plant Protection Rights, UC Cultivars or the Licensed Cultivars.

16.    Limitation of Liability

16.1    THE REGENTS WILL NOT BE LIABLE FOR ANY LOST PROFITS, COSTS OF

PROCURING SUBSTITUTE GOODS OR SERVICES, LOST BUSINESS, ENHANCED

DAMAGES FOR INTELLECTUAL PROPERTY INFRINGEMENT, OR FOR ANY INDIRECT,

INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR OTHER SPECIAL DAMAGES SUFFERED

BY LICENSEE, SUBLICENSEES, BY AFFILIATES OF LICENSEE, OR BY JOINT VENTURES

OF LICENSEE ARISING OUT OF OR RELATED TO THIS AGREEMENT FOR ALL CAUSES

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                              UC_STRAW2_00043868

OF ACTION OF ANY KIND (INCLUDING TORT, CONTRACT, NEGLIGENCE, STRICT

LIABILITY AND BREACH OF WARRANTY) EVEN IF THE REGENTS HAS BEEN ADVISED

OF THE POSSIBILITY OF SUCH DAMAGES.

### 17.   Marking

17.1   Licensee will require its Sublicensees to attach either to Licensed Products Sold

under this Agreement, or to the boxes, pallets, or containers of such Licensed Products, a durable

and legible label or tag specifying:

> 17.1(a)   the correct name of the Licensed Cultivar;
>
> 17.1(b)   the corresponding plant breeders' rights number for the Licensed Cultivar;
>
> 17.1(c)   a warning that unlicensed propagation of the Licensed Cultivar is prohibited under the plant breeders' rights; and
>
> 17.1(d)   a warning that sale of the Licensed Cultivar for fruit production outside of the territories specified in this Agreement is prohibited.

### 18.   Infringement of the Plant Protection Rights

18.1   In the event that Licensee learns of substantial infringement of the Plant Protection

Rights by a third party in the ESA Sublicensing Territory, Licensee will inform The Regents in

writing, and Licensee will provide The Regents with reasonable written evidence of such

infringement.  Neither Party will notify the third party of such infringement without first obtaining

the written consent of the other Party.  The Parties will endeavor to cooperate in order to terminate

such infringement without litigation.

18.2   If Licensee desires that the Plant Protection Rights be enforced with respect to

infringement of the Plant Protection Rights in the ESA Sublicensing Territory, Licensee either may

request that The Regents take legal action against such infringement or may request the right from

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043869

The Regents to allow Licensee to take such legal action.  Such request by Licensee will be made in writing and will include reasonable evidence of such infringement and damages to Licensee or to The Regents.  In the event of such request by Licensee, The Regents will have the right to elect to (a) commence legal action on The Regents' own account, or (b) refuse to participate in such legal action.  The Regents will provide Licensee with written notice of such election by the date one hundred (100) days after the date The Regents receives such request from Licensee.  If The Regents elects not to commence legal action on The Regents' own account, and if such infringement occurred in the ESA Sublicensing Territory during a time period when Licensee has exclusive license rights from The Regents in the ESA Sublicensing Territory, then to the extent permitted by applicable law, Licensee may thereafter bring legal action for infringement of the Plant Protection Rights.  In the event Licensee elects to bring legal action in accordance with this Article 18, The Regents may thereafter, in The Regents' sole discretion, join such legal action at the expense of The Regents.

18.3    Such legal action as is decided upon will be at the expense of the Party on account of whom suit is brought, and all recoveries therefrom will belong to such Party, provided that if the legal action is brought jointly by The Regents and Licensee and participated in by both, the legal action will be at the joint expense of the Parties and all recoveries will be allocated in the following order:  a) to each Party reimbursement in equal amounts of the attorney's costs, fees, and other related expenses to the extent each Party paid for such costs, fees, and expenses, until all such costs, fees, and expenses are reimbursed to each Party; and b) any remaining amount shared jointly by the Parties in proportion to the share of expenses paid by each Party.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                          UC_STRAW2_00043870

18.4    Each Party will cooperate with the other Party, as requested by the other Party, in any legal action instituted hereunder.  In the event the legal action is not participated in by both Parties, the costs incurred by the non-participating Party will be reimbursed by the Party bringing the legal action.  Such a legal action will be controlled by the Party bringing the legal action, provided that, The Regents may be represented by counsel of The Regents' choice in any legal action brought by Licensee.  In no event may either Party admit liability or wrongdoing on behalf of the other Party without the other Party's prior written consent.

19.    Indemnification

19.1    Licensee will, and will require its Sublicensees to, indemnify, hold harmless, and defend The Regents, the officers, employees, and agents of The Regents, the sponsors of the research that led to development of the UC Cultivars, Licensed Cultivars, the Inventors, and the employers of any of the foregoing, against any and all claims, suits, losses, damage, costs, fees, and expenses resulting from, or arising out of, the exercise of this license or any Sublicense.  This indemnification will include, but will not be limited to, any product liability.  If The Regents, in its sole discretion, believes that there will be a conflict of interest or it will not otherwise be adequately represented by counsel chosen by Licensee to defend The Regents in accordance with this Paragraph 19.1, then The Regents may retain counsel of its choice to represent it, and Licensee will pay all expenses for such representation.

19.2    The Regents will promptly notify Licensee in writing of any claim or suit brought against The Regents for which The Regents intends to invoke the provisions of this Article 19. Licensee will keep The Regents informed on a current basis of its defense of any claims pursuant to this Article 19.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          UC_STRAW2_00043871

## 20.   Notices

20.1    Any notice or payment required to be given to either Party will be deemed to have

been properly given and to be effective:

20.1(a)    on the date of delivery if delivered in person;

20.1(b)    on the date of mailing if mailed by first class certified mail, postage paid; or

20.1(c)    on the date of mailing if mailed by any global express carrier service that requires the recipient to sign the documents demonstrating the delivery of such notice or payment;

to the respective addresses given below, or to another address as a Party may designate by written

notice given to the other Party.

In the case of Licensee:

Eurosemillas, S.A.
Paseo de la Victoria 31-1°
14004 Cordoba
Spain
Attention:  Mr. Juan Cano and/or Mr. Javier Cano

In the case of The Regents:

For notices to The Regents:

University of California, Davis
UC Davis InnovationAccess
Technology Transfer Services
1850 Research Park Drive, Suite 100
Davis, CA  95618-6134
Attention:  Director
Referring to:  UC Case Nos. (as specified in Appendix 1)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                           UC_STRAW2_00043872

For payment to The Regents: The Regents of the University of California
Office of Technology Transfer
1111 Franklin Street, 5th Floor
Oakland, CA 94607-5200
Attention: Chief Financial Officer
Referring to: UC Case Nos. (as specified in Appendix 1)

### 21.   Assignability

21.1   This Agreement is personal to Licensee.  Licensee may not assign or transfer this Agreement, including by merger, operation of law, or otherwise, without The Regents' prior written consent.  This Agreement is binding upon and will inure to the benefit of The Regents, its successors and assigns.

21.2   In the event there is a change of ownership of Licensee where the new owner acquires over fifty percent ownership of Licensee and the new owner has business activities in the United States in the strawberry industry apart from its ownership of Licensee, then The Regents will have the right to terminate this Agreement on written notice.

### 22.   Compliance With Laws

22.1   Licensee will, and will require its Sublicensees to, comply with all applicable international, national, state, regional, and local laws, regulations and requirements in performing its obligations hereunder and in its receipt, use, asexual propagation, or Sale of Licensed Products and fruit thereof.  Without limitation, Licensee will observe, and will require its Sublicensees to observe, all applicable United States and foreign (i.e., non-United States) laws, regulations and requirements with respect to (a) the transfer by Licensee or Sublicensees of Licensed Products and fruit thereof, and related technical data, and (b) the receipt by Licensee or Sublicensees of Licensed

20090422

32

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043873

Products and fruit thereof, and related technical data, including with respect to such laws, regulations and requirements as they may apply to quarantine of received plant materials.

## 23.   Late Payments

23.1     In the event that Earned Royalties, fees, reimbursements for Plant Protection Costs, or other monies owed to The Regents by Licensee are not received by The Regents when due, Licensee will pay to The Regents interest at a rate of  five percent (5%) simple interest per annum. Such interest will be calculated from the date payment was due until actually received by The Regents.  Such accrual of interest will be in addition to, and not in lieu of, enforcement of any other rights of The Regents due to such late payment.

## 24.   Waiver

24.1     No waiver by either Party of any breach or default of any of the agreements contained herein will be deemed a waiver as to any subsequent and/or similar breach or default.  No waiver will be valid or binding upon the Parties unless made in writing and signed by a duly authorized officer of each Party.

## 25.   Governing Laws; Venue; Attorneys' Fees

25.1     THIS AGREEMENT WILL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, excluding any choice of law rules that would direct the application of the laws of another jurisdiction, but the scope and validity of any Plant Protection Rights will be governed by the applicable laws of the country of such Plant Protection Rights.

25.2     Any legal action related to this Agreement will be conducted in San Francisco, California.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                              UC_STRAW2_00043874

25.3    The prevailing Party in any suit related to this Agreement will be entitled to recover its reasonable attorneys' fees in addition to its costs and necessary disbursements.

## 26.    Government Approval or Registration

26.1    If this Agreement or any associated transaction is required by the law of any nation to be either approved or registered with any governmental agency, Licensee will assume all legal obligations to do so.  Licensee will notify The Regents if Licensee becomes aware that this Agreement is subject to a United States reporting or approval requirement.  Licensee will make all necessary filings and pay all costs including fees, penalties, and all other out-of-pocket costs associated with such reporting or approval process.

## 27.    Force Majeure

27.1    Except for Licensee's obligation to make any payments to The Regents hereunder, the Parties will not be responsible for any failure to perform due to the occurrence of any events beyond their reasonable control which render their performance impossible or onerous, including, but not limited to:  accidents (environmental, toxic spill, etc.); acts of God; biological or nuclear incidents; casualties; earthquakes; fires; floods; governmental acts, orders or restrictions; inability to obtain suitable and sufficient labor, transportation, fuel and materials; local, national, or state emergency; power failure and power outages; acts of terrorism; strike; and war.

27.2    Either Party to this Agreement, however, will have the right to terminate this Agreement upon thirty (30) days' prior written notice if either Party is unable to fulfill its obligations under this Agreement due to any of the causes specified in Paragraph 27.1 for a period of one (1) year.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                          UC_STRAW2_00043875

28.   Confidentiality

28.1   Subject to the provisions of this Article 28, Licensee and The Regents will treat and maintain the other Party's proprietary business, process and technical information, information relating to the prosecution of Plant Protection Rights, and other proprietary information ("Proprietary Information") in confidence using at least the same degree of care as the receiving Party uses to protect its own proprietary information of a like nature, from the date of disclosure until the date five (5) years subsequent to the termination or expiration of this Agreement.

28.2   Licensee and The Regents may use and disclose Proprietary Information to their employees, agents, consultants, and contractors, provided that such parties are bound by a like duty of confidentiality as that found in this Article 28.  Notwithstanding anything to the contrary contained in this Agreement, The Regents may release this Agreement, including any terms contained herein, and information regarding royalty payments or other income received in connection with this Agreement to the Inventors, senior administrative officials employed by The Regents, and individual Regents upon their request.  If such release is made, The Regents will request that such terms be kept in confidence in accordance with the provisions of this Article 28.

28.3   All written Proprietary Information will be labeled or marked confidential or proprietary.  If the Proprietary Information is orally disclosed, it will be reduced to writing or some other physically tangible form, marked and labeled as confidential or proprietary by the disclosing Party and delivered to the receiving Party within thirty (30) days after the oral disclosure.

28.4   Nothing contained herein will in any way restrict or impair the right of Licensee or The Regents to use or disclose any Proprietary Information:

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043876

28.4(a)    that the receiving Party can demonstrate by written records was previously known to the receiving Party prior to disclosure to the receiving Party by the disclosing Party;

28.4(b)    that the receiving Party can demonstrate by written records is at the time of disclosure, or subsequently becomes, public knowledge other than through acts or omissions of the receiving Party;

28.4(c)    that the receiving Party can demonstrate by written records was lawfully obtained without restrictions on the receiving Party from sources independent of the disclosing Party; or

28.4(d)    that The Regents is required to disclose pursuant to the California Public Records Act or other applicable law.

Licensee or The Regents may use or disclose Proprietary Information that is required to be disclosed (i) to a governmental entity or agency in connection with seeking any governmental or regulatory approval, governmental audit, or other governmental requirement or (ii) by law, provided that the receiving Party uses reasonable efforts to give the disclosing Party sufficient notice of such required disclosure to allow the disclosing Party reasonable opportunity to object to, and to take legal action to prevent, such disclosure.  The Regents also may disclose the existence of this Agreement, the extent of the grant in Article 2 (Grant), and the name of Licensee to a third party.

28.5    Upon termination of this Agreement, Licensee and The Regents will destroy or return any of the disclosing Party's Proprietary Information in its possession within fifteen (15) days following termination of this Agreement.  Licensee and The Regents will provide the other Party, within thirty (30) days following termination of this Agreement, with written notice that such Proprietary Information has been returned or destroyed.  Each Party may retain one copy of such Proprietary Information for archival purposes in non-working files.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    UC_STRAW2_00043877

29.     <u>Miscellaneous</u>

29.1    The headings of the several sections are inserted for convenience of reference only and are not intended to affect the meaning or interpretation of this Agreement.

29.2    No amendment or modification of this Agreement will be valid or binding upon the Parties unless made in writing and signed on behalf of each Party.

29.3    This Agreement (including Appendix 1 hereto) embodies the entire understanding of the Parties and will supersede all previous communications, representations or understandings, either oral or written, between the Parties relating to the subject matter hereof.  The Prior License Agreements specified in the Recitals of this Agreement are hereby terminated.

29.4    If any of the provisions contained in this Agreement are held to be invalid, illegal, or unenforceable in any respect, then such invalidity, illegality, or unenforceability will not affect any other provisions hereof, and this Agreement will be construed as if such invalid, illegal or unenforceable provisions had never been contained herein

29.5    This Agreement has been negotiated and prepared jointly by both parties and will not be construed for or against any party.

29.6    No provisions of this Agreement are intended or will be construed to confer upon or give to any person or entity other than The Regents and Licensee any rights, remedies, or other benefits under, or by reason of, this Agreement.

29.7    In performing their respective duties under this Agreement, each of the Parties will be operating as an independent contractor.  Nothing contained herein will in any way constitute any association, partnership, or joint venture between the Parties, or be construed to evidence the intention of the Parties to establish any such relationship.  Neither Party will have the power to bind

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                              UC_STRAW2_00043878

the other Party or incur obligations on the other Party's behalf without the other Party's prior written

consent.

In witness whereof, The Regents and Licensee have executed this Agreement, in duplicate

originals, by their respective officers hereunto duly authorized, on the date and year hereinafter

written.


EUROSEMILLAS, S.A.                    THE REGENTS OF THE UNIVERSITY OF
                                      CALIFORNIA

By _____                  By _____

Name  Manuel Cano Pecci               Name    David R. McGee

Title  Manager                        Title    Executive Director
                                               UC Davis InnovationAccess

Date  15-June-2009                    Date    6/22/09


20090422                                                              38

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                    UC_STRAW2_00043879

Appendix 1

List of UC Cultivars for the September 15, 2008
Exclusive License Agreement
between
The Regents of the University of California
and
Eurosemillas, S.A.
for University of California Strawberry Cultivars
in the
European Union

## Licensed Cultivars

| UC Case | Cultivar | Plant Protection Rights (EU CPVO grant #) | Inventor(s) | License Issue Fee | Two-Year Delay Period |
|---|---|---|---|---|---|
| 2001-125 | 'Camino Real' | 14781 | Douglas Shaw, Kirk Larson | n/a | n/a |
| 2001-126 | 'Ventana' | 14780 | Kirk Larson, Douglas Shaw | n/a | n/a |
| 2004-323 | 'Albion' | 20099 | Douglas Shaw, Kirk Larson | n/a | n/a |

## Two-Year Delay Cultivars

| UC Case | Cultivar | Plant Protection Rights (EU CPVO application file #) | Inventor(s) | License Issue Fee | Two-Year Delay Period |
|---|---|---|---|---|---|
| 2007-274 | 'Palomar' | 2007/1465 | Douglas Shaw, Kirk Larson | $1,000 | January 1, 2007 – December 31, 2008 |
| 2008-332 | 'Monterey' | 2008/1506 | Douglas Shaw, Kirk Larson | $1,000 | January 1, 2008 – December 31, 2009 |
| 2008-333 | 'San Andreas' | 2008/1504 | Douglas Shaw, Kirk Larson | $1,000 | January 1, 2008 – December 31, 2009 |
| 2008-334 | 'Portola' | 2008/1505 | Douglas Shaw, Kirk Larson | $1,000 | January 1, 2008 – December 31, 2009 |

Appendix 1 - page 1 of 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UC_STRAW2_00043880

20090422